UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>1 MIN, LLC; HOTEL AT SOUTHPORT, LLC; and TWELFTH FLOOR, LLC,<br><br>Debtors. | Chapter 11<br><br>Lead Case No. 24-01519<br><br>(Jointly Administered) |
| LAN CAI, SHUJIE CHEN, TIANRAN CHEN, WEIJUN CHEN, JIE CHU, ZHAOJUN CONG, HE CUI, JIANYING DING, JICHUN DU, QING DU, JIEYING FENG, YUPENG GAO, YIRAN HAN, JINYANG HU, NAIXIN HU, XIAO HUANG, JUNMEI JIN, XIN MENG, WEIHONG LU, YUANYUAN MA, MIN PAN, LEI PEI, HAO QI, XIAO RONG, JUAN SHAO, HUI WANG, JINGYI WANG, YUQUAN WANG, ZIDONG WANG, RONGRONG WU, ZHAOHUI XU, QI XU, JIE YAN, KE YANG, QIN YANG, HONGYUN YU, SHUXIAN ZENG, XIAOHONG ZHANG, YING ZHAO, MINBO ZHOU, NAN ZHOU, HUIQING ZHU, ZILING ZENG, LUYI ZHANG, JUNDI LIANG, TAO LI, YUN CAI, HONGLIANG TANG, JIE TANG, WENLUNG CHEN, SHI ZHANG, JUN CHE, DAHE ZHANG, SHAN WAN, XIAOHONG | Adv. Proc. No. 25-80007<br><br>**AP DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT** |

SUN, YAN LYU A/K/A YAN LU, WENYAN WANG, JIALIN TIAN, RUI TANG, XINHAN LIN, SIYU LIU, JIANYING MENG, PHUONG NGUYEN, YEQING PAN, XUERONG QI, QIANG WANG, JUNLI WEI, YUNFEI WU, HONGYING YU, DONGLI ZHANG,

Plaintiffs,

v.

HOTEL AT SOUTHPORT, LLC, TWELFTH FLOOR, LLC, 1 MIN, LLC.,

Defendants,

and

WF CREL 2020 GRANTOR TRUST,

Intervenor-Defendant.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 6

    A.    The Hotel and Ownership Structure ....................................................... 6

    B.    Plaintiffs Invest in the EB-5 Lender Pursuant to Offering Documents that Disclose that the EB-5 Loan Will Be Subordinated ..................... 6

    C.    As a Result of Cost Overruns, the EB-5 Debtor Changes Its Corporate and Capital Structure ......................................................................... 9

    D.    Plaintiffs File the State Court Action Against Michael Christ, the Debtor-Defendants, and Other Entities ................................................. 11

    E.    The Debtor-Defendants' Chapter 11 Cases and Subsequent Adversary Proceeding ........................................................................................... 12

APPLICABLE STANDARDS ........................................................................................... 14

    A.    Federal Rule of Civil Procedure 12(b)(6) Applies to the Complaint ........................... 14

    B.    Federal Rule of Civil Procedure 9(b) Applies to the Fraud and Breach of Fiduciary Duty Claims ....................................................................... 15

ARGUMENT ..................................................................................................................... 16

I.    PLAINTIFFS DO NOT AND CANNOT PLAUSIBLY PLEAD THE ELEMENTS OF ALTER EGO AGAINST THE DEBTOR-DEFENDANTS ................................. 16

    A.    Plaintiffs Do Not Adequately and Plausibly Allege that the Debtor-Defendants Are Alter Egos of Michael Christ or the EB-5 Lender ....................... 16

    B.    Plaintiffs Should Not Be Permitted to Abuse the Alter-Ego Doctrine to Prejudice the Rights of the Mezz Lender, an Innocent Third Party ..................... 20

II.    INDEPENDENTLY, THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ADEQUATELY PLEAD THEIR CENTRAL FRAUD CLAIMS ............................................................................................................ 21

    A.    The Complaint Lacks Any Individualized Factual Allegations of Fraud ................. 22

    B.    Plaintiffs Fail to Adequately and Plausibly Allege the Elements of Fraud Under Washington Common Law ............................................................... 24

    C.    Plaintiffs Fail to State a Claim for Securities Fraud Under RCW § 21.20.010 ........... 25

    D.    By Extension, Plaintiffs Fail to Adequately Allege a Conspiracy to Commit Fraud ......................................................................................................... 27

III.    PLAINTIFFS HAVE ALSO FAILED TO STATE A PLAUSIBLE CLAIM AGAINST THE DEBTOR-DEFENDANTS WITH RESPECT TO THE REMAINING CAUSES OF ACTION ......................................................................................................... 27

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page i

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC   Doc 14   Filed 02/19/25   Entered 02/19/25 15:09:54   Pg 3 of 42

A.  Plaintiffs Fail to Plausibly Allege a Prima Facie Claim for Breach of Fiduciary Duty............................................................................................................27

B.  By Extension, Plaintiffs Fail to Allege a Plausible Claim for Aiding and Abetting Breaches of Fiduciary Duty or Conspiracy to Commit Such Breaches........29

C.  Plaintiffs Fail to State a Claim Under the Washington Consumer Protection Law ...................................................................................................................31

IV.  DISCLOSURES IN THE OFFERING DOCUMENTS CONTRADICT PLAINTIFFS' CLAIMS ................................................................................................................32

CONCLUSION.................................................................................................................34

AP DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS
THE COMPLAINT—Page ii

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC    Doc 14    Filed 02/19/25    Entered 02/19/25 15:09:54    Pg 4 of 42

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*All Star Gas, Inc. of Wash. v. Bechard*,
    100 Wn. App. 732 (2000) .......................................................................11

*Andresen v. Hunt*,
    No. 90-35455, 1991 U.S. App. LEXIS 30267, at *10-11 (9th Cir. Dec. 16, 1991) ...............22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................13

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) .............................................................15

*Boeing Co. v. KB Yuzhnoye*,
    No. CV 13-00730, 2016 U.S. Dist. LEXIS 63630 (C.D. Cal. May 13, 2016)........................20

*Brashkis v. Hyperion Capital Group, LLC*,
    2011 WL 6130787 (W.D. Wash. Dec. 8, 2011) .......................................29

*Brewster 9, LP v. Trout-Blue Chelan-Magi, LLC*,
    No. 39507-3-III, 2024 Wash. App. LEXIS 1673 (Ct. App. Aug. 15, 2024) ...........................28

*In re Brugnara Props. VI*,
    606 B.R. 371 (Bankr. N.D. Cal. 2019) .................................................20

*Brummett v. Washington's Lottery*,
    171 Wash. App. 664, 288 P.3d 48 (2012)..............................................23

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ...............................................................24

*Federal Sav. and Loan Ins. Corp. v. Musacchio*,
    695 F.Supp. 1053 (N.D. Cal. 1988) ...............................................14, 33

*Grayson v. Nordic* ...............................................................................17

*Helm v. Calhoun*,
    No. 57878-6-II, 2024 Wash. App. LEXIS 2115 (Ct. App. Oct. 15, 2024).............................29

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page iii

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

*Janton Constr., LLC v. Royal Concentrates, LLC,*
    No 57776-3-II, 2024 Wash. App. LEXIS 1433 (Ct. App. July 16, 2024) ..............................27

*Katzir's Floor and Home Design, Inc. v. M-MLS.com,*
    394 F.3d 1143, 1149 (9th Cir. 2004) ........................................................19, 22, 23

*LA USA Dyeing & Finishing S.A. v. Young Won Kong,*
    No. CV 09-5931 AHM, 2010 U.S. Dist. LEXIS 152024 (C.D. Cal. Jan. 28, 2010) ..............20

*Lindsay Credit Corp. v. Skarperud,*
    33 Wash. App. 766 (1983)....................................................................................16

*Meisel v. M & N Modern Hydraulic Press Co.,*
    97 Wash. 2d 403 (1982) .......................................................................................16

*Neubronner v. Milken,*
    6 F.3d 666 (9th Cir. 1993) ....................................................................................15

*Orvold v. Kotelevskiy,*
    2024 Wash. App. LEXIS 426 (Ct. App. Wash. Sept. 11, 2023)........................................16, 17

*Pearse v. First Horizon Home Loan Corp.,*
    No. C16-5627 BHS, 2016 U.S. Dist. LEXIS 141474 (W.D. Wash. Oct. 12, 2016)...........3, 26

*Postal Instant Press, Inc. v. Kaswa Corp.,*
    162 Cal. App. 4th 1510, 77 Cal. Rptr. 3d 96 (2008)....................................................20

*In re Schmalenberg,*
    2016 Bankr. LEXIS 247 ........................................................................................17

*Shinn v. Thrust IV, Inc.,*
    56 Wash. App. 827 (1990) .....................................................................................25

*Siegal v. Gamble,*
    No. 13-cv-03570-RS, 2016 U.S. Dist. LEXIS 88269 (N.D. Cal. July 7, 2016) ...............15, 24

*Standard Fire Ins. v. Blakeslee,*
    54 Wash. App. 1 (1989)........................................................................................17

*Ten Bridges, Ltd. Liab. Co. v. Midas Mulligan, Ltd. Liab. Co.,*
    Nos. 21-35896, 21-35921, 2022 U.S. App. LEXIS 31763 (9th Cir. Nov. 17, 2022) .............31

*United States ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods.,*
    2013 U.S. Dist. LEXIS 27913 (S.D. Cal. Feb. 28, 2013) ..........................................19, 22, 23

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ...........................................................................14, 15

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page iv

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC   Doc 14   Filed 02/19/25   Entered 02/19/25 15:09:54   Pg 6 of 42

**Statutes**

RCW § 21.20.005 ............................................................................................25

RCW § 21.20.010 ......................................................................................21, 25

Rule 501(a) under the Securities Act of 1933 ............................................32

RCW § 19.86.020 ...........................................................................................31

Washington Partnership Act ..........................................................................33

**Other Authorities**

Fed. R. Civ. P. 12(b) ..................................................................................1, 13

Federal Rule of Bankruptcy Procedure 7009 ..............................................14

Federal Rule of Bankruptcy Procedure 7012 .........................................1, 13

Federal Rule of Bankruptcy Procedure 7041 ................................................1

Federal Rule of Civil Procedure 9(b) .............................................14, 22, 26

Federal Rule of Civil Procedure 12(b)(6) ....................................................13

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page v

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Defendants 1 Min, LLC (the "EB-5 Debtor"), Hotel at Southport, LLC (the "Hotel Debtor"), Twelfth Floor, LLC (the "Mezz Debtor" and, together with the EB-5 Debtor and the Hotel Debtor, the "Debtor-Defendants"), by and through their undersigned counsel, Bush Kornfield LLP, and WF CREL 2020 Grantor Trust ("WF Trust" or the "Mezz Lender" and, together with the Debtor-Defendants, the "AP Defendants"), by and through its undersigned counsel, Eisenhower Carlson PLLC and Mayer Brown LLP, respectfully submit this memorandum of law in support of their Joint Motion to Dismiss the Complaint,[1] with prejudice, pursuant to Federal Rule of Civil Procedure 12(b), incorporated herein by Federal Rule of Bankruptcy Procedure 7012, and respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      The present dispute constitutes a straightforward case of buyer's remorse, even though the "buyers" (or more precisely, investors) received exactly what they bargained for, and are now seeking to recoup any losses from entirely innocent third parties unaffiliated with their investment.

2.      Specifically, Plaintiffs, a group of 70 foreign nationals, purchased partnership units in Southport Hotel EB-5 LP, a limited liability partnership (the "EB-5 Lender") as a means of facilitating their immigration into the United States through the specialized "EB-5 Program," under which foreign investors receive a pathway to permanent residence in exchange for investing $500,000 or more in a qualified project in the United States. In connection with an offering that concluded in 2016 (the "Offering"), Plaintiffs invested approximately $38.5 million into the EB-5 Lender and in turn became limited partners in the partnership. The transaction proved mutually beneficial: the EB-5 Lender raised enough money to lend funds to the EB-5 Debtor for the development and construction of the Hyatt

---

[1] A copy of the Complaint is attached to the accompanying *Declaration of Jason I. Kirschner in Support of AP Defendants' Motion to Dismiss the Complaint* (the "Kirschner Declaration") as Exhibit 1.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Regency Lake Washington (the "Hotel") while Plaintiffs satisfied the requirements for the EB-5 Program.

3.     Plaintiffs admit that, in connection with the Offering, they received and reviewed certain "Offering Documents"—namely, a Private Placement Memorandum ("PPM") and its exhibits, including a Subscription Agreement, Limited Partnership Agreement, and Loan Agreement[2]—which expressly disclosed (on countless occasions, often in bold or capitalized font) (i) the structure and organization of the limited partnership and (ii) the inherently risky and speculative nature of the investment, including the risks that the EB-5 Lender's loan to the EB-5 Debtor (the "EB-5 Loan") would be subordinated to other indebtedness and that there could be a total loss of Plaintiffs' investment. Plaintiffs expressly assumed these risks at the time of the Offering.

4.     Nevertheless, after the forewarned risks (such as higher than projected construction costs and the need to incur additional indebtedness) materialized, rather than accept any losses in connection with a speculative investment, Plaintiffs decided instead to file specious tort and other claims against not only Michael Christ, the developer of the project, but also entirely innocent third parties such as the Debtor-Defendants—entities that have *no* affiliation with the partnership or its Offering—based on an abusive interpretation of the alter-ego doctrine. Specifically, in the State Court Action (defined below), Plaintiffs asserted an amorphous fraud claim and six other causes of action premised on the sweeping allegation that *all seven* Defendants "misrepresented that the EB-5 Loan would be secured by a Deed of Trust" and that "the EB-5 Loan would only be subordinated to a senior loan of no more than $19 million" (Third Amended Complaint ¶ 85 [Docket No. 156-2]). The Complaint in this adversary proceeding is a modified version of the Third Amended Complaint in the

---

[2] A copy of these Offering Documents (*i.e.,* the PPM, as amended, and its exhibits) is attached to the Kirschner Declaration as Exhibit 2.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

State Court Action in which the sole defendants are the Debtor-Defendants, but it is based on the same generalized and implausible allegations. (*See, e.g.,* Compl. ¶ 86).

5.  Plaintiffs' baseless claims have already damaged the AP Defendants by preventing a consensual sale of the Hotel outside of bankruptcy—a sale that would have resulted in a substantial distribution to Plaintiffs. Although the Debtor-Defendants were ultimately able to sell the Hotel pursuant to this Chapter 11 proceeding, Plaintiffs' claims are still preventing the release of escrowed sale proceeds to the Mezz Lender, an innocent secured creditor that purchased the Mezz Loan *years* after Plaintiffs' investment and is not alleged to have engaged in any misconduct.

6.  As detailed herein, since the Complaint is facially defective on multiple grounds, Plaintiffs should not be permitted to hold the sale proceeds hostage for any longer.

7.  *First*, Plaintiffs' bedrock alter-ego claim—which seeks to hold the Debtor-Defendants liable for Mr. Christ's alleged conduct via so-called "reverse veil-piercing"—fails to state a claim because Plaintiffs do not adequately and plausibly plead the requisite elements of alter ego under Washington Law: namely, that (i) each individual Debtor-Defendant was used intentionally to evade a duty and (ii) disregarding the corporate entity of each individual Debtor-Defendant is necessary to prevent an unjust loss. Instead, Plaintiffs solely offer the conclusory allegation that "[e]ach of the Defendants, Michael Christ, and the General Partner, are alter egos of each other" (Compl. ¶ 77) followed by a formulaic recitation of certain unsupported and boilerplate elements (Compl. ¶¶ 78-83).

8.  In addition to being inadequately plead, Plaintiffs' alter-ego claim is flatly implausible given that two of the three Debtor-Defendants (the Mezz Debtor and the Hotel Debtor) *were not even formed* until after the conclusion of the Offering, when the need for supplemental funds became apparent and the Mezz Debtor entered into a supplemental loan agreement for $40 million, which was eventually assigned to WF Trust three years later. The remaining Debtor-Defendant, the EB-5 Debtor,

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 3

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

is simply the successor Borrower under that certain Loan Agreement with the EB-5 Lender and, like the other Debtor-Defendants, is not affiliated with the partnership in any way. Yet Plaintiffs appear to believe that, without first prevailing on any claims against Mr. Christ or the partnership (or even adequately *alleging* such claims), they can hold the Debtor-Defendants liable for his imagined sins.

9.      Notably, even if Plaintiffs' alter-ego claim had been adequately plead, it would still fail as a matter of law since Ninth Circuit precedent bars the application of the alter-ego doctrine to prejudice the rights of innocent third parties, such as creditors. Here, Plaintiffs are attempting to abuse the doctrine of reverse veil piercing to shred the principles of corporate separateness and thereby prioritize their claims above those of the Mezz Lender, an innocent secured creditor that is not accused of any misconduct.

10.      *Second*, the Complaint should also be dismissed because Plaintiffs fail to state claims for fraud, which are fundamental to their other causes of action. Indeed, Plaintiffs do not even attempt to satisfy the heightened pleading standard for their fraud and securities fraud claims; instead, they nearly exclusively refer to all three Debtor-Defendants collectively (just as Plaintiffs did with respect to the *seven* defendants in the State Court Action), and they also improperly and repeatedly lump together the purported conduct of the Debtor-Defendants, Michael Christ, and the General Partner (defined below). In addition to being riddled with impermissible group pleading, the Complaint describes the alleged fraud in extraordinarily vague terms, failing to quote or even cite *any* specific statement in the Offering Documents that was purportedly fraudulent, let alone identifying "the who, what, when, where, and how" that would suggest fraud. The Complaint's commingling of the Defendants' conduct and lack of specificity renders it unclear as to the nature of the purported fraud and each Defendant's alleged role, despite being Plaintiffs' fifth attempt at fashioning a pleading.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC     Doc 14     Filed 02/19/25     Entered 02/19/25 15:09:54     Pg 11 of 42

11. *Third*, Plaintiffs' remaining duplicative claims—which amount to an "everything but the kitchen sink" and "speak now, prove later" approach—similarly fail because they are dependent on the deficient fraud claims, lack any individualized factual allegations against any Debtor-Defendants, and fail to state a plausible claim against the Debtor-Defendants.

12. *Finally*, the central factual allegation underlying all of Plaintiffs' claims—namely, that Defendants purportedly misrepresented that the EB-5 Loan would only be subordinated to a senior loan of no more than $19 million (Compl. ¶ 86)—is flatly contradicted by the Offering Documents, which Plaintiffs admit they reviewed (Compl. ¶¶ 33, 35). Specifically, the PPM expressly disclosed that "Borrower will have the right to incur additional indebtedness that will not be subordinated to the Loan and to which the Loan may be subordinated" (PPM at p. 14) and the First Amendment to the PPM disclosed that "This Deed of Trust [securing the EB-5 Loan] may be subordinated to a senior construction loan" (*Id*. at p. 2). Plaintiffs flatly ignore these unambiguous disclosures and fail to identify any specific communication, whether written or oral, in which any Defendant (or even Mr. Christ or the General Partner) claimed that the subordination would be capped at $19 million.

13. In short, while Plaintiffs are free to pursue their claims against Mr. Christ in the State Court Action, they have no legal basis to harm the Debtor-Defendants and innocent creditors like the Mezz Lender by treating equitable principles and corporate formalities as if they were meaningless, particularly based on a pleading that lacks any pretense of plausibility or particularity. Furthermore, since the Complaint represents Plaintiffs' *fifth* attempt at pleading viable claims and they cannot remedy the fatal defects in their foundational fraud and alter-ego claims or "plead around" the aforementioned disclosures in the Offering Documents, the Complaint should be dismissed *with prejudice*.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## FACTUAL BACKGROUND

### A.     The Hotel and Ownership Structure

14.     Until the sale to Ohana pursuant to the Plan (defined below), the Hotel Debtor, a Delaware limited liability company, was the holder of real property and improvements comprising the Hotel, which is located at 1053 Lake Washington Boulevard North, Renton, WA, on the shores of Lake Washington. Opened in 2017, the 12-story Hotel comprises approximately 335,000 square feet and features 347 rooms, an indoor pool, a 4,000-square-foot gym facility, and 60,000 square feet of indoor and outdoor meeting space and banquet facilities. (Compl. ¶ 5).

15.     The Hotel Debtor is wholly owned by the Mezz Debtor, a Delaware limited liability company. (Compl. ¶ 12). The Mezz Debtor is the borrower of that certain Mezz Loan (as defined below). (Compl. ¶ 13); (Disclosure Statement at p. 2)[3].

16.     Lastly, the Mezz Debtor is wholly owned by the EB-5 Debtor, a Washington limited liability company. The EB-5 Debtor is the current borrower under the EB-5 Loan.

### B.     Plaintiffs Invest in the EB-5 Lender Pursuant to Offering Documents that Disclose that the EB-5 Loan Will Be Subordinated

17.     The EB-5 Lender is a Washington limited partnership that was formed in 2013 to act as the regional center for raising funds for the Hotel. *Id.* The general partner of the EB-5 Lender is Seattle Family, LP, a Washington Limited Partnership (the "General Partner"). *See* Southport Hotel EB-5, LP Partnership Agreement.[4]

18.     Specifically, the EB-5 Lender raised money through the EB-5 Immigrant Investor Program (the "EB-5 Program"), which offers foreign investors a potential pathway to permanent

---

[3] A copy of the Disclosure Statement is attached to the Kirschner Declaration as <u>Exhibit 3</u>.
[4] A copy of the Southport Hotel EB-5, LP Partnership Agreement is attached as Exhibit B to <u>Exhibit 2</u> of the Kirschner Declaration.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

residence in the United States in return for investing in certain domestic enterprises. (Compl. ¶ 2). The program permits qualified foreign investors to obtain immigration visas and to apply for green cards if they invest above a minimum amount. (*Id*. at ¶ 25). It is standard practice of the EB-5 Program for domestic entities to form new partnerships or commercial enterprises and have these foreign investors subscribe to become limited partners and make the requirement investments to qualify for permanent residency. (*Id*. at ¶ 28).

19.     Plaintiffs are 70 foreign investors that, pursuant to the Offering, purchased limited partnership units in the EB-5 Lender through a private placement offering and made the minimum investment required under the EB-5 Program of $500,000. (Compl. ¶ 35).

20.     As part of the Offering, the EB-5 Lender prepared a set of offering documents that consisted of the PPM and its exhibits, including (i) a Subscription Agreement (the "Subscription Agreement"), (ii) the Southport Hotel Eb-5, LP Limited Partnership Agreement (the "Partnership Agreement"), (iii) the Southport Hotel Eb-5, LP Business Plan (the "Business Plan"), and (iv) a Construction Loan Agreement (as further amended from time to time, "Loan Agreement" and, together with the PPM, Subscription Agreement, Partnership Agreement, and Business Plan, the "Offering Documents"). (Compl. ¶ 33; Kirschner Declaration Exhibit 2).

21.     The Loan Agreement for the EB-5 Loan was entered into in October 2013, between the EB-5 Lender, as the lender, and Hotel at Southport, LLC, a Washington Limited Liability Company (the "Prior Owner")—which at the time was the owner of the real property underlying the Hotel—as borrower. *See* Loan Agreement.[5] The Prior Owner was to use the EB-5 Loan to finance the

---

[5] A copy of the Loan Agreement is attached as Exhibit E to Exhibit 2 of the Kirschner Declaration.

AP DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT– Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

construction of the Hotel. *Id*. At the time, the EB-5 Loan was secured by a deed of trust encumbering the Hotel then under construction (the "EB-5 Deed of Trust").

22.     The Offering Documents clearly delineated the structure of the EB-5 Lender. In particular, the Business Plan provided several charts that showed the ownership structure of the EB-5 Lender and affiliated entities, along with clarifying footnotes. (Business Plan pp. 11, 14)[6].

23.     Additionally, Plaintiffs were warned extensively about the inherently risky nature of the investment at several points throughout the Private Placement Memorandum. For example, the PPM warned that (i)"An investment in Units involves substantial risks including… An investor could lose all or substantial portion of his or her investment in the Partnership," (PPM at p. 2), (ii) "**The Units involve a high degree of risk and substantial restrictions on transferability. You should not invest in the Units unless you can bear the complete loss of your investment**," and (iii) "THE PURCHASE OF UNITS INVOLVES A HIGH DEGREE OF RISK AND IS SUITABLE ONLY FOR PERSONS OF SUBSTANTIAL MEANS WHO CAN BEAR THE RISK OF LOSS OF THEIR ENTIRE INVESTMENT AND WHO HAVE NO NEED FOR LIQUIDITY IN THEIR INVESTMENT." (*Id*. at p. 3). The Private Placement Memorandum additionally noted that, "[U]nforeseen issues may be encountered that otherwise will require an increase in the development of the budget that have not otherwise been reserved for in the contingency fund." (*Id.* at p. 36).

24.     In particular, the Offering Documents expressly disclosed that the General Partner had full authority to incur additional, superior debt, and that the EB-5 Loan could, at any time, be subordinated *without limit*: (i) the second page of the First Amendment to the PPM (which Plaintiffs admit receiving (Compl.¶ 41) expressly stated that the EB-5 Loan was "secured by a [EB-5] Deed of

---

[6] A copy of the Business Plan is attached as Exhibit C to <u>Exhibit 2</u> of the Kirschner Declaration.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 8

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Trust" and that "This [EB-5] Deed of Trust may be subordinated to a senior construction loan." (PPM at p. 2) and (ii) the PPM further noted that "Borrower will have the right to incur additional indebtedness that will not be subordinated to the [EB-5 Loan] and to which the [EB-5 Loan] may be subordinated." (*Id*. at p. 14).

25.     The Loan Agreement was also amended before the conclusion of the Offering,[7] and such amendments further emphasize the risk of subordination: "[The EB-5 Lender] acknowledges that [Prior Owner] may obtain a senior construction loan to help finance construction of the Project . . . . In case [Prior Owner] enters into any loan described in the preceding sentences (each a "Senior Loan"), [the EB-5] Lender agrees to subordinate this [EB-5] Loan to the lien of any such Senior Loan pursuant to an intercreditor or subordination agreement between [EB-5] Lender and Senior Lender that is approved by [EB-5] Lender in its reasonable discretion . . . . This intercreditor or subordination agreement shall subordinate the lien of the [EB-5] Deed of Trust [securing the EB-5 Loan] to the lien of the deed of trust securing the Senior Loan (the "Senior Deed of Trust")[.]". (Loan Agreement § 4.7).

26.     Nonetheless, each Plaintiff, "[r]elying on the representations in the Offering Documents," signed the Subscription Agreement and the Partnership Agreement. (Compl. ¶ 41). The Offering concluded in 2016, having raised $99,500,000 from 199 foreign nationals. (*Id*. at ¶ 43).

**C.     <u>As a Result of Cost Overruns, the EB-5 Debtor Changes Its Corporate and Capital Structure</u>**

27.     Due to unanticipated cost overruns, it became necessary to secure additional construction financing for the Hotel and as such, Prior Owner engaged Starwood Property Mortgage

---

[7] As noted previously, Plaintiffs concede that they received the First Amendment to the PPM, which references and attaches the amended Loan Agreement. (*See* Complaint ¶ 41; PPM at p. 2).

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

LLC ("Starwood") for further funding. (Disclosure Statement, p. 6). In connection with such transaction, Starwood required (i) the creation of the Mezz Debtor and (ii) the conversion of Prior Owner (a Washington entity) into the Hotel Debtor (a Delaware entity), which was consummated in December 2016 through January 2017—months after the conclusion of the Offering. *Id.*

28.     In January 2017, the Hotel Debtor obtained a loan from Starwood secured by a first position deed of trust encumbering the real property and improvements compromising the Hotel (the "Original Starwood Senior Loan"), and, concurrently, the Mezz Debtor obtained a loan from Starwood, secured by the Mezz Debtor's pledge of its Equity Interests in the Hotel Debtor (the "Original Starwood Mezzanine Loan" and, together with the Original Starwood Senior Loan, the "Original Starwood Loans"). *Id.*

29.     Notably, as a condition of the closing of the Original Starwood Loans, the Hotel Debtor, EB-5 Debtor, and EB-5 Lender entered into a Loan Modification and Assumption Agreement, dated January 27, 2017, pursuant to which (among other things) (i) the EB-5 Deed of Trust was reconveyed and was no longer an encumbrance against the Hotel, (ii) the Hotel Debtor was released from all liability in connection with the EB-5 Loan and the Loan Agreement, (iii) the EB-5 Debtor replaced the Prior Owner and became the new borrower in connection with the EB-5 Loan and the Loan Agreement, and (iv) the EB-5 Debtor pledged as substitute collateral for the benefit of the EB-5 Lender its Equity Interests in the Mezz Debtor. (*Id.* at 6-7).

30.     In December 2017, the Hotel Debtor entered into a Mortgage Loan and Security Agreement with Starwood for a loan of $80,000,000, the substance of which was to (i) satisfy and consolidate the Original Starwood Senior Loan and the Original Starwood Mezzanine Loan into a single loan (the "Starwood Mortgage Loan"), (ii) cause the Starwood Mortgage Loan to be secured by the Hotel, and (iii) release the pledge of equity interests that previously secured the Original Starwood

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Mezzanine Loan. In conjunction with the Starwood Mortgage Loan, the Mezz Debtor obtained a loan from Argentic Real Estate Investment LLC in the amount of $25,000,000 (the "Argentic Mezz Loan"), which was secured by the Mezz Debtor's pledge of its Equity Interests in the Hotel Debtor. (*Id*. at 7).

31.     In November 2019, the Hotel Debtor obtained a loan from Lake Washington Co., Ltd. (the "Original Senior Lender") in the amount of $90,000,000 (the "Senior Loan"), which satisfied the Starwood Mortgage Loan. Simultaneously, the Mezz Debtor obtained a loan from AIP US Red Private Real Estate Trust No. 22 (the "Original Mezz Lender") in the amount of $40,000,000, which satisfied the Argentic Mezz Loan. *Id*.[8]

32.     In 2021, WF Trust became the successor in interest to both the Original Senior Lender and the Original Mezz Loan Documents. *Id*. at 9.

**D.     Plaintiffs File the State Court Action Against Michael Christ, the Debtor-Defendants, and Other Entities**

33.     In March 2023, the Hotel Debtor engaged CBRE to initiate a sale process of the Hotel. *Id*. at 10. After significant time and effort negotiating with over 100 interested parties, the Hotel Debtor executed a purchase and sale agreement (the "Initial Purchase Agreement") with Ohana Real Estate Investors ("Ohana") on March 15, 2024. *Id*.

34.     In March 2024, less than two weeks before the Hotel Debtor executed the Initial Purchase Agreement, Plaintiffs commenced an action in King County Superior Court against Michael Christ, the General Partner, and the Debtor-Defendants, among others (the "State Court Action"). Notably, Plaintiffs did not name the EB-5 Lender as a Defendant in the State Court Action, even

---

[8] A more fulsome background on the Senior Loans can be found in the Disclosure Statement.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 11

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

though it is the sole entity with which they have privity. Since the filing of the State Court Action, Plaintiffs have amended their complaint three times.

35.     As noted previously, in both the State Court Action and this adversary proceeding, Plaintiffs allege that *all* Defendants committed fraud and certain related torts by misrepresenting that the EB-5 Loan would be secured by the EB-5 Deed of Trust and that "the EB-5 Loan would only be subordinated to a senior loan of no more than $19 million." (Compl. ¶ 86). Moreover, in conclusory fashion, Plaintiffs assert that the Debtor-Defendants are also liable for any such misconduct because they are all "alter-egos" of Mr. Christ, the indirect owner of the General Partner, and the General Partner itself.

36.     The State Court Action led to the ultimate failure of the sale process.

**E.      The Debtor-Defendants' Chapter 11 Cases and Subsequent Adversary Proceeding**

37.     On September 20, 2024, each of the Debtor-Defendants (here, the "Debtors") filed a petition for chapter 11 relief in the bankruptcy in the Bankruptcy Court for the Eastern District of Washington (the "Chapter 11 Cases"). Both the Debtors and WF Trust worked cooperatively to ensure the Chapter 11 Cases operated on an expedited timeline.

38.     Toward that end, WF Trust authorized the Debtors to use their cash collateral on a consensual basis. [Docket Nos. 42, 96].

39.     The Debtors filed the Debtors' Joint Plan of Reorganization (the "Plan") on September 20, 2024, along with their petition. [Docket No. 9]. The Plan would provide for the sale of the Hotel to Ohana, and the use of such sale proceeds to pay off the Senior and Mezz Loans.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC    Doc 14    Filed 02/19/25    Entered 02/19/25 15:09:54    Pg 19 of 42

40.     Plaintiffs filed a claim for $32,450,000.00 (the "Claim") based on the Second Amended Complaint in the State Court Action. *See* Proof of Claim # 1[9], to which the Debtors preemptively objected (the "EB-5 Claim Objection"). *See Objection to Claims of EB-5 Plaintiffs, Notice Thereof and Certificate of Service* [Docket No. 89][10].

41.     On October 31, 2024, Plaintiffs filed an objection to the Plan [Docket No. 98]. Ultimately, the Debtors, Plaintiffs and WF Trust agreed to reserve an amount equal to Plaintiffs' claim from the sale proceeds from Ohana, and to engage in a more fulsome claim allowance process after confirmation, which was memorialized in the Debtors' First Amended Joint Plan of Reorganization, filed on November 26, 2024 [Docket No. 127], and confirmed on November 27, 2024 [Docket No. 129].

42.     Because of the Mezz Lender's legal and economic interests in the proceeds from the sale of the Hotel to Ohana, the Mezz Lender expressly reserved its right to object to Plaintiffs' Claim, and the Plan expressly recognized (and Plaintiffs expressly agreed to) the Mezz Lender's standing to object to the Claim and participate in all related proceedings. *See* Debtors' First Amended Joint Plan of Reorganization, filed on November 26, 2024 [Docket No. 127] (the "Plan"),[11] p. 24 ("Without limiting the generality of the foregoing, the Mezz Lender shall be entitled to join in the EB-5 Claim Objection and participate in all proceedings relating thereto.").

43.     On December 12, 2024, the sale to Ohana closed and the Senior Loan was paid in full Currently, $19,779,610.89 remains outstanding under the Mezz Loan.

---

[9] A copy of the Proof of Claim is attached to the Kirschner Declaration as Exhibit 4.
[10] A copy of the *Objection to Claims of EB-5 Plaintiffs, Notice Thereof and Certificate of Service* is attached to the Kirschner Declaration as Exhibit 5.
[11] A copy of the Plan is attached to the Kirschner Declaration as Exhibit 6.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

44. On January 31, 2025, the Plaintiffs filed with this Court their Complaint for Damages and Claim Allowance, which was assigned as Adversary Proceeding No. 25-80007. As noted previously, the Complaint is a further revised version of the Third Amended Complaint in the State Court Action, which is in turn an amended version of the Second Amended Complaint attached to Plaintiffs' Claim.[12]

45. On February 14, 2025, the Mezz Lender was deemed to be an intervenor-defendant in the Adversary Proceeding based on its legal and economic interests in the proceeding. [AP Docket No. 11].

46. The AP Defendants jointly submit this Motion to Dismiss.

## APPLICABLE STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6) Applies to the Complaint

47. Federal Rule of Bankruptcy Procedure 7012(b) expressly applies Federal Rule of Civil Procedure 12(b) to pleadings brought forth in adversary proceedings. *See* Fed. R. Bank. P. 7012(b).

48. It is well settled that a complaint must proffer "enough facts to state a claim to relief that is *plausible* on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, "[a] pleading that offers labels and conclusions or a formulaic

---

[12] In a letter dated January 22, 2025, Plaintiffs' counsel informed the Court that Plaintiffs planned to file the Third Amended Complaint as the complaint in this Adversary Proceeding, and represented that the only changes from the Second Amended Complaint attached to the Proof of Claim would be the addition of 11 plaintiffs and "required non-substantive edits." [Docket No. 156]. Contrary to counsel's assurances, the Complaint features substantive revisions, but as discussed herein, it still lacks any well-pled factual allegations tying the Debtor-Defendants to any alleged wrongdoing.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

**B.** **Federal Rule of Civil Procedure 9(b) Applies to the Fraud and Breach of Fiduciary Duty Claims**

49. The Complaint sets forth two fraud claims—Count I (a direct claim for fraud) and Count V (a claim for Securities Fraud)—and a claim for breach of fiduciary duty grounded in fraud (Count II).

50. Federal Rule of Bankruptcy Procedure 7009 expressly applies Federal Rule of Civil Procedure 9(b) to allegations of fraud brought forth in adversary proceedings. *See* Fed. R. Bank. P. 7009. Rule 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See* Fed. R. Civ. P. 9(b). Rule 9(b) also applies to breach of fiduciary claims based on fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (finding that where the underlying conduct to a claim is "grounded in fraud" or "sound in fraud" the pleading as a whole must satisfy the particularity requirement of Rule 9(b)); *see also Federal Sav. and Loan Ins. Corp. v. Musacchio*, 695 F.Supp. 1053, 1058 (N.D. Cal. 1988) ("Generally, [Rule 9(b)] does not extend to allegations of breach of duty. However, when the conduct underlying the breach of fiduciary duty is also alleged to constitute fraud, the requirement does apply").

51. It is well established that any cause of action alleging fraud or mistake must be alleged with "particularity" to survive a motion to dismiss. *See Vess*, 317 F.3d at 1103. Specifically, any allegation of fraud must be "'specific enough to give defendants notice of the particular misconduct

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 15

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). Among other details, "[a] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Siegal v. Gamble*, No. 13-cv-03570, 2016 U.S. Dist. LEXIS 88269, at *9 (N.D. Cal. July 7, 2016) (quoting *Vess*, 317 F.3d at 1106). Moreover, the complaint must specify "the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner*, 6 F.3d at 672; *see also Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how,' of the misconduct charged." (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

52.     As demonstrated below, the scattershot Complaint fails to allege any plausible claims against *any* of the Debtor-Defendants, let alone with the particularity required to plead fraud.

## ARGUMENT

### I.  PLAINTIFFS DO NOT AND CANNOT PLAUSIBLY PLEAD THE ELEMENTS OF ALTER EGO AGAINST THE DEBTOR-DEFENDANTS

#### A.  Plaintiffs Do Not Adequately and Plausibly Allege that the Debtor-Defendants Are Alter Egos of Michael Christ or the EB-5 Lender

53.     Plaintiffs' strained gambit to hold the Debtor-Defendants liable for any alleged wrongdoing—despite their lack of any connection to the EB-5 Lender partnership—is based on a gross misapplication of the alter-ego doctrine (known as "corporate disregard" under Washington law). As detailed herein, the Complaint's boilerplate allegations fall far short of adequately and plausibly pleading a basis for the extraordinary remedy of corporate disregard.

54.     Under Washington law, corporate disregard is a doctrine that, in exceptional circumstances, allows an injured claimant to hold corporations, parents/subsidiaries, and shareholders

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

liable for each other's actions. *See Meisel v. M & N Modern Hydraulic Press Co.,* 97 Wash. 2d 403, 409 (1982). The doctrine is typically applied in one of two forms: (i) to hold a shareholder/parent entity liable for the actions of the corporation/subsidiary entity (what is colloquially referred to as "piercing the corporate veil") or (ii) to hold a corporation/subsidiary liable for the actions of the shareholder/parent (which is referred to by the Ninth Circuit as "reverse veil piercing").

55.     In general, to successfully disregard the corporate entity, a proponent must demonstrate that (i) the corporate form was intentionally used to violate or evade a duty and (ii) the disregard is necessary and required to prevent unjustified loss to the injured party. *Lindsay Credit Corp. v. Skarperud*, 33 Wash. App. 766, 770-71 (1983). Courts have categorized this remedy as "exceptional" and appropriate solely when recognizing the corporate entity "would aid in perpetrating a fraud or result in a manifest injustice." *Orvold v. Kotelevskiy*, No. 57103-0-II, 2024 Wash. App. LEXIS 426, at *9 (Wash. Ct. App. Sept. 11, 2023). Moreover, reverse veil piercing is solely available as a remedy when "a private person *so dominates and controls* a corporation that such corporation is his alter ego" *Standard Fire Ins.  v. Blakeslee*, 54 Wash. App. 1, 5 (1989) (first emphasis added).

56.     However, a corporation's separate legal identity is not lost merely because all of its stock is held by members of a single family or by one person. *See Grayson v. Nordic*, 92 Wash. 2d 548, 553 (1979) (citing *Nursing Home Bldg. Corp. v. DeHart*, 13 Wash App. 489 (1975)). Rather, the piercing proponent must demonstrate that corporate records and formalities were not kept and there was an overt intention to disregard the corporate entity. *Id*.

57.     Specifically, in the context of alter-ego liability, courts have defined "dominance" and "control" to mean that there is such a commingling of property rights or interests as to render it apparent that (i) the corporations are intended to function as one, and (ii) to regard them as separate entities would aid the consummation of a fraud or wrong upon others. *Standard Fire*, 54 Wash. App.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

At 5; *In re Schmalenberg*, No. 12-45274, 2016 Bankr. LEXIS 247, at *5 (Bankr. W.D. Wash. Jan. 27, 2016); *see also Orvold*, 2024 Wash. App. LEXIS 426, at *10 ("However, the mere 'informality in the operation of a closely held corporation' will not lead to disregard where the informality neither prejudices nor misleads the plaintiff.'") (quoting *Roderick Timber Co. v. Willapa Harbor Cedar Prods., Inc.*, 29 Wash. App. 311, 315 (1981)).

58.     Although the vague nature of the Complaint renders it difficult to discern the specific "veils" that Plaintiffs seek to pierce, it appears that Plaintiffs make the unprecedented request to (a) first hold Michael Christ individually liable for purported torts related to the offering, even though Section 8.4 of the Partnership Agreement limits Plaintiffs' recourse to the EB-5 Lender[13]; and then (b) reverse-pierce *multiple* entities' veils to hold the Debtor-Defendants liable for torts allegedly committed by Mr. Christ, despite their complete lack of affiliation with the partnership.[14] However, Plaintiffs have not come close to adequately and plausibly alleging a legal basis for these veil-piercing "gymnastics" under Washington law.

59.     Specifically, Plaintiffs' reverse-piercing claims against the Debtor-Defendants are solely based on the conclusory allegation that "[e]ach of the Defendants, Michael Christ and the General Partner, are alter egos of each other" (Compl. ¶ 77) followed by a laundry list of generic, barebone elements of alter ego: "At all times relevant herein, State Court Defendant Michael Christ has controlled and managed the Defendants and the General Partner. At all times relevant herein, State Court Defendant Michael Christ has owned the Defendants and the General Partner. At all times

---

[13] The Partnership Agreement provides that "[e]ach Limited Partner shall look solely to the Partnership for all distributions with respect to the Partnership and his Capital Contribution thereto and share of profits and losses thereof and shall have no recourse therefor, upon dissolution or otherwise, against the General Partners, Management, or any other Limited Partner." *See* Partnership Agreement, § 8.4.

[14] Although this brief focuses on the defects in Plaintiffs' "reverse veil piercing" claim against the Debtor-Defendants, these arguments apply with equal force to any veil-piercing claim seeking to hold Mr. Christ liable for any torts committed by the EB-5 Lender.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 18

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

relevant herein, Michael Christ has been intentionally using the Defendants and the General Partner as his instrumentality to commit the wrongs alleged in this Complaint . . . . Disregarding the corporate veil is necessary and required to prevent the unjustified loss to Plaintiffs." *Id*. at ¶¶ 77-81. As is facially evident, these boilerplate allegations lack *any* individualized factual allegations concerning each Debtor-Defendant, let alone the required factual allegations that *each* Debtor-Defendant was intentionally used to violate or evade a duty. The reason is clear: the Debtor-Defendants were not part of the partnership structure and owed and no duty to Plaintiffs; in fact, two such entities (the Hotel Debtor and Mezz Debtor) did not even *exist* at the time of the Offering.

60.     Notably, Plaintiffs appear to believe that the bare allegation that "Michael Christ owns, controls, and manages the Debtor-Defendants" (Compl. ¶ 4) is sufficient to state an alter-ego claim against the Debtor-Defendants. However, "[t]he mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." *United States ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods.*, No. 12-cv-602, 2013 U.S. Dist. LEXIS 27913, at *14 (S.D. Cal. Feb. 28, 2013) (quoting *Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004)). Rather, each Debtor-Defendant "is presumed to have an existence separate from its subsidiaries" and the Complaint fails to "either properly allege liability for the [Debtor-Defendants] under an alter ego theory or demonstrate that each entity is liable for its own role in the submission of false claims or statements." *Id*. at *14-15.  Indeed, Plaintiffs do not even *attempt* to allege any facts indicating "dominance" or "control,"  let alone any commingling of property rights or interests that render it apparent that the Debtor-Defendants, Michael Christ, and the General Partner are intended to function as one.

61.     Similarly, Plaintiffs fail to adequately and plausibly allege that disregarding the corporate form of a multitude of entities is *necessary* to prevent unjustified loss. In fact, Plaintiffs

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

have not even asserted claims against the alleged primary tortfeasor, the EB-5 Lender—the specific entity with which they contracted. Nor have they explained why they have failed to first litigate their claims against Mr. Christ or the General Partner before invoking the extraordinary remedy of corporate disregard to attempt to hold *unaffiliated* parties liable for his purported torts.

62.     In short, because Plaintiffs do not and cannot allege a *prima facie* case of alter-ego liability under Washington law, there is no basis to hold the Debtor-Defendants liable for any alleged wrongdoing by Mr. Christ or the EB-5 Lender. As such, the Complaint should be dismissed in its entirety.

**B.     Plaintiffs Should Not Be Permitted to Abuse the Alter-Ego Doctrine to Prejudice the Rights of the Mezz Lender, an Innocent Third Party**

63.     Independently, Plaintiffs' claims against the Debtor-Defendants should be dismissed because the application of the alter-ego doctrine would prejudice the rights of innocent third parties (most notably, the Mezz Lender).

64.     Courts throughout the Ninth Circuit have routinely held that "the alter ego doctrine cannot be applied to prejudice the rights of an innocent third party," *Boeing Co. v. KB Yuzhnoye*, No. CV 13-00730, 2016 U.S. Dist. LEXIS 63630, at *92-94 (C.D. Cal. May 13, 2016), and that, in particular, "reverse piercing" is not permitted where it can "harm innocent shareholders and corporate creditors." *LA USA Dyeing & Finishing S.A. v. Young Won Kong*, No. CV 09-5931, 2010 U.S. Dist. LEXIS 152024, at *3-5 (C.D. Cal. Jan. 28, 2010); *see also In re Brugnara Props. VI*, 606 B.R. 371, 378-79 (Bankr. N.D. Cal. 2019) (reverse veil piercing has solely been permitted in "special circumstances that warrant the application and that do not threaten innocent parties"). In fact, one California appellate court flatly refused to even *consider* reverse veil piercing in any circumstances because of the risk of harm to innocent parties. *See Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal.

AP DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT– Page 20

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

App. 4th 1510, 1513 (2008) ("The reasoning of the cases adopting outside reverse piercing of the corporate veil is flawed, and we join other courts declining to accept it . . . . Outside reverse piercing can harm innocent shareholders and corporate creditors, and allow judgment creditors to bypass normal judgment collection procedures.").

65.     In this case, Plaintiffs' reverse veil-piercing claim would *intentionally* harm an innocent creditor: the goal of Plaintiffs' claims against the Debtor-Defendants is to divert to Plaintiffs the sale proceeds owed to the Mezz Lender, as secured lender. As noted previously, the Mezz Lender has not been accused of any wrongdoing by Plaintiffs, nor could it be, since it did not purchase the Mezz Loan until 2021, years after the Offering, and it has no affiliation with any of the other Defendants.

66.     In short, while Plaintiffs have the right to freely litigate their tort claims against Mr. Christ and the General Partner in the State Court Action, Plaintiffs' tortured veil-piercing claims against the Debtor-Defendants would wrongfully deprive the Mezz Lender of the benefit of its bargain—from an arm's-length loan transaction—in flagrant violation of well-settled equitable principles and Ninth Circuit case law on the alter-ego doctrine. Since this critical defect in Plaintiffs' foundational alter-ego claim cannot be remedied in an amended pleading, the Complaint should be dismissed with prejudice.

## II.     INDEPENDENTLY, THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ADEQUATELY PLEAD THEIR CENTRAL FRAUD CLAIMS

67.     Independently, the Complaint should be dismissed with prejudice because Plaintiffs do not and cannot adequately plead their central fraud claims, on which all of their claims necessarily rely.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 21

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC     Doc 14     Filed 02/19/25     Entered 02/19/25 15:09:54     Pg 28 of 42

68. Plaintiffs assert a direct Claim for fraud against all Defendants (Count I), based on the allegation that they misrepresented that (i) the EB-5 Loan would be secured by a deed of trust, (ii) the EB-5 Loan would not be subordinate to a senior loan of more than $19 million, and (iii) Defendants' equity would be subordinate to the EB-5 Loan. (Compl. ¶¶ 86-88). In addition, the Complaint alleges that Defendants "concealed their plan to withdraw funds from the project and replace these funds with senior loans." *Id*.

69. Plaintiffs also allege a duplicative direct claim for securities fraud against all defendants pursuant to RCW § 21.20.010 (Count IV). In addition to duplicating the above allegations, Plaintiffs claim that "[t]he equity interests in the Partnership sold to Plaintiffs are securities [and that] Defendants, by using the General Partner as their conduit, provided Plaintiffs, or caused Plaintiffs to be provided, with Offering Documents that contained a number of material misrepresentations and omissions about the [the construction of the Hotel]." *Id*. at ¶¶ 119-20; 122-23.

70. As stated above, it is well established that Federal Rule of Civil Procedure 9(b)'s particularity requirement applies to claims of fraud. *See Andresen v. Hunt*, No. 90-35455, 1991 U.S. App. LEXIS 30267, at *10-11 (9th Cir. Dec. 16, 1991) (regardless of a state's pleading requirements, where a claim sounds in fraud, Federal Rule of Civil Procedure 9(b) applies). Plaintiffs' duplicative fraud claims not only lack the requisite particularity, but also fail to adequately and plausibly allege each and every required element of fraud.

## A. The Complaint Lacks Any Individualized Factual Allegations of Fraud

71. In the Third Amended Complaint in the State Court Action, Plaintiffs "improperly lump[ed] the [seven] separate Defendants . . . into a singular term" that was used "almost exclusively [] to describe the alleged fraudulent conduct." *Pecanic*, 2013 U.S. Dist. LEXIS 27913, at *13. Although the claims in this proceeding only target the three Debtor-Defendants, Plaintiffs once again

AP DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT– Page 22

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC   Doc 14   Filed 02/19/25   Entered 02/19/25 15:09:54   Pg 29 of 42

improperly group together all Defendants (as well as Mr. Christ and the General Partner). Specifically, in delineating both causes of action, the Complaint states that the "*Defendants* misrepresented," the "*Defendants* knew these representations to be false," the "*Defendants* concealed," the "*Defendants'* true intent," the "*Defendants* withdrew," or the "*Defendants* released," the "*Defendants* provided Plaintiffs," the "*Defendants* used means or instrumentalities . . ." the "*Defendants'* false statements and omissions." (Compl. ¶¶ 86-93). However, at no point in the Complaint do Plaintiffs allege any indicia of fraudulent conduct with respect to *any* of the Debtor-Defendants specifically—in fact, there is not a single individualized allegation attributing *any* conduct to any Debtor-Defendant, let alone one that explicitly identifies their role in the alleged fraud. This lack of particularity is far from surprising in light of the lack of affiliation between the Debtor-Defendants and the partnership and the fact that two of the Debtor-Defendants did not even exist at the time of the Offering.

72.     Courts in the Ninth Circuit have repeatedly rejected such "group pleading" in the context of fraudulent misconduct. *See, e.g.*, *Pecanic*, 2013 U.S. Dist. LEXIS 27913, at *12-15 ("[Federal Rule of Civil Procedure] 9(b) does not allow a complaint to merely lump multiple defendants together . . . In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum identify the role of each defendant in the alleged fraudulent scheme." (internal quotation marks and citation omitted)).

73.     As in *Pecanic*, Plaintiffs' "commingling of the[] . . . Defendants" and lack of specificity "renders the [Complaint] unclear as to . . . each Defendant's role in the alleged fraud" (*Pecanic*, 2013 U.S. Dist. LEXIS 27913, at *13), even though it represents Plaintiffs' fifth attempt at pleading claims sufficient to survive a motion to dismiss.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 23

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

74. Because the Complaint neglects to allege *any* targeted factual allegations against the Debtor-Defendants, the fraud claims fail as a matter of law. Nevertheless, to add insult to injury, Plaintiffs also fail to adequately allege the *prima facie* elements of fraud, let alone with particularity.

**B.** **Plaintiffs Fail to Adequately and Plausibly Allege the Elements of Fraud Under Washington Common Law**

75. Under Washington state law, the elements of fraud are: (1) the representation of an existing fact, (2) the materiality of the representation, (3) the falsity of the representation, (4) the defendant's knowledge of the falsity, (5) the intent by the defendant that the representation will be acted on by the claimant, (6) the claimant's ignorance of the falsity of the representation, (7) the claimant's reliance on the truth of the representation, (8) a right to rely on the representation by the claimant, and (9) damages to the claimant as a result of the reliance. *Brummett v. Washington's Lottery*, 171 Wash. App. 664, 667 (2012).

76. The first (and critical) required element is "the representation of an existing fact." Although Plaintiffs allege in conclusory fashion that "In the Offering Documents, Defendants misrepresented that the EB-5 Loan would be secured by a Deed of Trust" and that "the EB-5 Loan would only be subordinated to a senior loan of no more than $19 million," (Compl. ¶ 86), Plaintiffs fail to quote or even *cite* a specific statement in the Offering Documents supporting these allegations.[15] As such, they utterly fail to identify "the who, what, when, where, and how that would suggest fraud." *Cooper*, 137 F.3d at 627. Since Plaintiffs do not specifically identify any representations in the Offering Documents, Plaintiffs also necessarily fail to allege with particularity "the falsity of the representation." *See Siegal*, 2016 U.S. Dist. LEXIS 88269, at *9 ("A plaintiff must

---

[15] As discussed in Section IV, *infra*, this lack of particularity is presumably due to the fact that the Offering Documents expressly contradict Plaintiffs' fraud claim.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 24

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." (quoting *Vess*, 317 F.3d at 1106)).

77.     In addition to failing to adequately plead these initial elements, Plaintiffs similarly fail to adequately and plausibly plead the remaining elements of common law fraud (and in some cases, do not even attempt to do so). For example, Plaintiffs' vague and conclusory allegation of materiality (*i.e.*, that "if the true facts had been disclosed, they would not have [invested]") (Compl. ¶ 90) is inadequate and implausible, particularly in light of their concession that the purpose of their investment was to "immigrate to the United States" *Id*. ¶ 2. In addition, Plaintiffs do not even *attempt* to allege with particularity that each *Debtor-Defendant* knew that any representations were false; that Plaintiffs were ignorant of any alleged falsehoods and relied on them; that Plaintiffs had a *right* to rely on the representations; and that Plaintiffs were damaged as a result of the reliance (they merely state, without more, "Each Plaintiff has been damaged"). *Id*. ¶ 94.

78.     This barebone attempt to satisfy the elements of common law fraud falls drastically short of the "particularity" requirement demanded for this cause of action. As a result, Plaintiffs' fraud claim cannot survive a motion to dismiss.

**C.     Plaintiffs Fail to State a Claim for Securities Fraud Under RCW § 21.20.010**

79.     RCW Section 21.20.010 states "It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly: (1) To employ any device, scheme, or artifice to defraud; (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." *See* RCW § 21.20.010.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 25

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

80. For the reasons set out in Section II(a)(2), *supra*, Plaintiffs' vague allegation that the "Offering Documents [] contained a number of material misrepresentations and omissions" (Compl. ¶ 120) falls far short of adequately alleging that any individual Debtor-Defendant "[made] any untrue statement of material fact," let alone that it was "material," dooming their securities fraud claim.

81. In addition, Plaintiffs have failed to plausibly allege that the Debtor-Defendants are "sellers" of securities as defined by the Washington Code. *See* RCW § 21.20.005 (defining "Salesperson" as "[A]ny individual other than a broker dealer who represents a broker-dealer or issuer in effecting or attempting to effect sales of securities."); *see also Shinn v. Thrust IV, Inc.*, 56 Wash. App. 827, 851 (1990) ("A party qualifies as a 'seller' under the Act if his or her acts were a substantial contributive factor in the sales transaction."). Instead, Plaintiffs state in sweeping, conclusory fashion that the "Defendants are sellers and solicitors of securities. Defendants played a substantial role in persuading Plaintiffs to buy the security and successfully solicited the purchase to serve their own financial interests." (Compl. ¶ 126). *See also Id*. ¶ 31 ("Defendants are the promotors [*sic*] and solicitors of the EB-5 investment program for the Project.").

82. As noted previously, two of the Debtor-Defendants, the Hotel Debtor and the Mezz Debtor, had not been formed at the time of the Offering, and thus could not have possibly played *any* role in the Offering, let alone a "substantial" one. In addition, the Offering Documents referenced throughout the Complaint make clear that *none* of the Debtor-Defendants, including the EB-5 Debtor, participated in the Offering, whether as a seller, solicitor, promoter, or otherwise. In light of these incontestable facts, it is far from surprising that Plaintiffs neglect to provide *any* factual allegations supporting their claim that the Debtor-Defendants are "sellers" or "solicitors" of securities, or "played a substantial role in persuading Plaintiffs to buy the security." (*Id*. ¶ 126).

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

83.     Accordingly, like the defective common law fraud claim, the duplicative securities fraud claim should be dismissed.

**D.     By Extension, Plaintiffs Fail to Adequately Allege a Conspiracy to Commit Fraud**

84.     In typical fashion, rather than providing any factual allegations supporting their fraud claims, Plaintiffs add a *third* duplicative fraud-related cause of action by alleging civil conspiracy to commit fraud (Count V) in boilerplate fashion (*i.e.*, "[t]he Defendants entered into a conspiracy with Michael Christ, and the General Partner, to defraud Plaintiffs and to breach their fiduciary duties") (Compl. ¶ 131)). However, since the underlying fraud claims are inadequately plead, the civil conspiracy claim also fails as a matter of law. In addition, for the reasons set out in Section II(a)(1) and (2), *infra*, the barebones civil conspiracy claim also fails to satisfy Rule 9(b). *See Pearse v. First Horizon Home Loan Corp.*, No. C16-5627, 2016 U.S. Dist. LEXIS 141474, at *17 (W.D. Wash. Oct. 12, 2016) (dismissing civil conspiracy claim for failure to satisfy the heightened pleading requirement for fraud claims set forth in Fed. R. Civ. P. 9(b), which requires that plaintiff "state with particularity the circumstances constituting fraud.").

**III.    PLAINTIFFS HAVE ALSO FAILED TO STATE A PLAUSIBLE CLAIM AGAINST THE DEBTOR-DEFENDANTS WITH RESPECT TO THE REMAINING CAUSES OF ACTION**

**A.     Plaintiffs Fail to Plausibly Allege a Prima Facie Claim for Breach of Fiduciary Duty**

85.     To state a claim of breach of fiduciary duty (Count II), Plaintiffs must adequately allege (1) that a duty is owed to them, (2) that the duty was breached, (3) that an injury resulted, and (4) that the breach was the proximate cause of the injury. *See Janton Constr., LLC v. Royal Concentrates, LLC*, No 57776-3-II, 2024 Wash. App. LEXIS 1433, at *29 (Wash. Ct. App. July 16,

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2024) (citing *Miller v. U.S. Bank of Wash., N.A.*, 72 Wash. App. 416, 426 (1994)). Plaintiffs have failed to adequately allege *any* of these elements.

### 1. *Plaintiffs Fail to Plausibly Allege the Existence of a Duty Owed by the Debtor-Defendants*

86. As a threshold matter, Plaintiffs fail to plausibly allege the existence of any duty owed by the Debtor-Defendants. Instead, Plaintiffs assert in conclusory fashion that (i) "[a]s promoters of the Project, Defendants owed fiduciary duties to Plaintiffs" and (ii) pursuant to the alter-ego doctrine, Mr. Christ's and the General Partner's duties should be imputed to the Debtor-Defendants (as if the mere incantation of the words "alter ego" is sufficient to disregard the corporate form). *See* Compl. ¶¶ 97-100 (emphasis added) ("As a general partner to the Partnership, State Court Defendant General Partner owes fiduciary duties to the Plaintiff. As the manager of the General Partner, defendant Michael Christ likewise owes fiduciary duties to the Plaintiffs. . . . . *Defendants, Michael Christ, and the General Partner, are alter egos of each other, and therefore Defendants owe the same fiduciary duties to the Plaintiffs*."). Neither allegation is sufficient to plausibly allege the existence of any duty owed by any Debtor-Defendant.

87. First, as demonstrated in Section II(c), *supra*, the allegation that the Debtor-Defendants are "promoters" of the Project is not only unsupported by any well-pled factual allegations but is also flatly contradicted by the Offering Documents and the salient fact that two of the Debtor-Defendants were not in existence at the time of the Offering. As such, Plaintiffs fall far short of alleging that any Debtor-Defendant possesses the "close natured" relationship with Plaintiffs that implies fiduciary duties. *See Brewster 9, LP v. Trout-Blue Chelan-Magi, LLC*, No. 39507-3-III, 2024 Wash. App. LEXIS 1673, at *9 (Wash. Ct. App. Aug. 15, 2024) ("A fiduciary relationship exists in law when the nature of the relationship between the parties [is] historically considered fiduciary in character; e.g.,

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 28

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

trustee and beneficiary, principal and agent, partner and partner, husband and wife, physician and

patient, attorney and client.'" (quoting *McCutcheon v. Brownfield*, 2 Wash. App. 348, 356-57

(1970))).

88.     Second, as demonstrated in Section I, *supra*, Plaintiffs' alter-ego claim is fatally

deficient. Therefore, Plaintiffs' sole bases for imputing duties to the Debtor-Defendants are invalid,

dooming their breach of fiduciary duty claims.

### 2.     *In Addition, Plaintiffs Fail to Adequately Plead that any Duty Was Breached by the Debtor-Defendants*

89.     Since the Debtor-Defendants owed no fiduciary duties to Plaintiffs, it necessarily

follows that they could not have breached them. But even assuming *arguendo* that any such duties

somehow existed, Plaintiffs have failed to adequately and plausibly allege any breaches of such duties.

Specifically, although breach of fiduciary duty claims premised on fraud must be plead with

particularity, the breach of fiduciary claim is premised on the same vague, sweeping allegations as the

fraud claims. *See, e.g.*, (Compl. ¶ 102) ("*Defendants* breached their fiduciary duties by withdrawing

their equity contributions . . ."), 104 ("*Defendants* breached their fiduciary duties by taking money

from the project . . ."), 107 ("*Defendants* breached their fiduciary duties by lying to Plaintiffs"), 108

("*Defendants* further breached their fiduciary duties to Plaintiffs by concealing …"), 109

("*Defendants* also breached their fiduciary duties to Plaintiffs by concealing . . ."). In addition to

lacking particularity, since the underlying fraud claims fail to state a claim (*see* Section II(A)), the

fiduciary duty claims premised on such fraud claims also fail.

### B.     By Extension, Plaintiffs Fail to Allege a Plausible Claim for Aiding and Abetting Breaches of Fiduciary Duty or Conspiracy to Commit Such Breaches

90.     Under Washington law, a defendant aids and abets a tort (Count III) if he or she (i)

knows that the tortfeasor's conduct constitutes a breach of duty and (ii) gives substantial assistance or

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 29

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC    Doc 14    Filed 02/19/25    Entered 02/19/25 15:09:54    Pg 36 of 42

encouragement to the tortfeasor. *See Brashkis v. Hyperion Capital Group, LLC*, 2011 WL 6130787, at *3 (W.D. Wash. Dec. 8, 2011) (citing *Wash. Constr., Inc. v. Sterling Sav. Bank*, 163 Wash. App. 1027 (table), 2011 WL 4043579, at * 10 n.8 (Wash. Ct. App. 2011)). In addition, as previously stated, to state a claim for civil conspiracy (Count V), a plaintiff must allege that "(1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." *Helm v. Calhoun*, No. 57878-6-II, 2024 Wash. App. LEXIS 2115, at *38 (Wash. Ct. App. Oct. 15, 2024) (quoting *All Star Gas, Inc. of Wash. v. Bechard*, 100 Wash. App. 732, 740 (2000)).

91.     With respect to the aiding and abetting claim, Plaintiffs solely offer the bare-bones allegation that each Defendant "significantly aided" the alleged breaches of fiduciary duties: "State Court Defendant Michael Christ significantly aided the General Partner in breaching the fiduciary duties. Defendants, under Michael Christ's control, likewise had full knowledge of the ongoing breaches of fiduciary duty by the General Partner and, as instrumentalities used by Christ to commit the breaches of fiduciary duty set forth herein, significantly aided the General Partner in breaching the fiduciary duties. Plaintiffs have been harmed by Defendants' aiding and abetting breach of fiduciary duties in an amount to be determined at trial, but in no event less than $500,000 to each Plaintiffs." (Compl. ¶¶ 114-16). Similarly, the civil conspiracy claim is solely premised on the conclusory allegation that "The Defendants entered into a conspiracy with Michael Christ and the General Partner to defraud Plaintiffs and to breach their fiduciary duties. As set forth above, each of the Defendants has taken actions in furtherance of this conspiracy." *Id*. at ¶¶ 131-32.

92.     Since Plaintiffs have failed to state a claim for breach of fiduciary duty, the aiding and abetting and conspiracy claims must also be dismissed. In addition, on both counts, Plaintiffs fail to adequately allege the requisite elements under Washington law. For example, with respect to the

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 30

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC    Doc 14    Filed 02/19/25    Entered 02/19/25 15:09:54    Pg 37 of 42

aiding and abetting claim, Plaintiffs do not make any factual allegations indicating *how* each Debtor-Defendant (two of which were not even in existence) purportedly "substantially assisted" the General Partner in breaching any duties. Likewise, with respect to the conspiracy claim, Plaintiffs do not make any factual allegations showing that each Debtor-Defendant (i) combined with another party to accomplish an unlawful purpose and (ii) entered into an agreement to accomplish the purported conspiracy. Therefore, these claims also fail as a matter of law.

**C.**      **Plaintiffs Fail to State a Claim Under the Washington Consumer Protection Law**

93.      In their final attempt to manufacture a claim against the Debtor-Defendants, Plaintiffs assert a duplicative claim that Defendants violated the Washington Consumer Protection Law, RCW § 19.86.020 (Count VI), which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW § 19.86.020.

94.      A claim under RCW § 19.86.020 requires proof of (1) unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury to plaintiffs in their business or property, and (5) causation. *See Ten Bridges, LLC v. Midas Mulligan, LLC*, Nos. 21-35896, 21-35921, 2022 U.S. App. LEXIS 31763, at *2-3 (9th Cir. Nov. 17, 2022) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*, 105 Wash. 2d 778, 785 (1986)).

95.      Plaintiffs do not even attempt to adequately allege these required elements. Instead of alleging an "unfair or deceptive act" committed by any Debtor-Defendant, Plaintiffs solely offer the boilerplate allegation that "Defendants' actions described herein constitute deceptive acts or practices" (Compl. ¶ 143), without making any specific factual allegations of misconduct against the Debtor-Defendants. In addition to this fatal defect, Plaintiffs' RCW § 19.86.020 claim is expressly premised on Plaintiffs' deficient fraud claims and should therefore meet the same fate.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 31

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC    Doc 14    Filed 02/19/25    Entered 02/19/25 15:09:54    Pg 38 of 42

96.     Although the above-referenced defects are more than sufficient to doom this claim, Plaintiffs' allegations that (i) "Defendants were engaged in the conduct of trade or commerce when they solicited each of Plaintiffs" and (ii) "Defendants, used the General Partner as their conduit to circulate the Offering Documents to the public, and therefore their deceptive acts impact the public interest" are also contradicted by the Offering Documents, which specify that the Offering was a private transaction for accredited investors through the EB-5 Program, and that the offered units would constitute *restricted securities* that could not enter the public domain. Indeed, the very first page of the Subscription Agreement expressly states "*There is no public or other market for the Units, nor is it likely that any such market will develop. Therefore, investors must expect to be required to retain ownership of the securities and to bear the financial risks of this investment for an indefinite period of time.*" *See* Subscription Agreement, p. 1[16] (emphasis added). Moreover, the Investor Eligibility Questionnaire attached to the Subscription Agreement, which was signed by each Plaintiff, states, "The following information is furnished to Southport Hotel Eb-5, LP, a Washington limited partnership, and its General Partner, Seattle Family, LP, a Washington limited partnership, *in order to assist in determining whether the undersigned is qualified to invest in a private securities offering targeted to EB-5 immigrant investors . . . who are 'accredited investors'* (as defined in Rule 501(a) under the Securities Act of 1933, as amended (the "Act"))." *See* Subscription Agreement, Ex. 2. Therefore, Count VII also fails as a matter of law.

## IV.     DISCLOSURES IN THE OFFERING DOCUMENTS CONTRADICT PLAINTIFFS' CLAIMS

97.     Finally, to add insult to injury, the central allegation underlying all of Plaintiffs' claims—namely, that Debtor-Defendants purportedly misrepresented that the EB-5 Loan would only

---

[16] A copy of the Subscription Agreement is attached as Exhibit A to <u>Exhibit 2</u> of the Kirschner Declaration.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 32

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

be subordinated to a senior loan of no more than $19 million (Compl. ¶ 86)—is expressly contradicted by the Offering Documents. Accordingly, Plaintiffs' claims are rendered implausible by the very documents they reference throughout the Complaint.

98.     Specifically, as noted previously, Section VI(H) of the Private Placement Memorandum expressly states, "Borrower will have the right to incur additional indebtedness that will not be subordinated to the Loan and to which the Loan may be subordinated." *See* PPM, p. 14. In addition, the First Amendment to the Private Placement Memorandum explicitly states, "Th[e] Deed of Trust may be subordinated to a senior construction loan." *See* First Amendment to the PPM. Neither of these sentences are qualified by *any* limitation or cap, let alone the $19 million figure that Plaintiffs appear to have conjured out of thin air.

99.     The Partnership Agreement further disproves Plaintiffs' claims since it expressly provides that "Each General Partner shall possess and enjoy and may exercise all the rights and powers of a general partner as provided under the [Washington Partnership Act], including the full and exclusive power and authority to act for and to bind the Partnership, *including the sale, loan, refinance, encumbrance or other disposition of the Partnership Property without the consent of the Limited Partners*." *See* Partnership Agreement, § 7.14 (emphasis added). Again, no cap or limitation was imposed on this broad authority.

100.     As stated previously, Plaintiffs expressly admit to receiving and reviewing the Offering Documents. (Compl. ¶¶ 33, 35). Accordingly, Plaintiffs cannot plausibly claim that they believed that the subordination of the EB-5 Loan would be capped at $19 million, or that they would not have invested had they known that the loan would be subordinated. This case is nothing more than a baseless "Hail Mary" attempt to recoup some of the losses on their investment from innocent parties having absolutely no connection with that investment.

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 33

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1      101.    Moreover, since no amount of artful pleading can obviate the disclosures in the

2 Offering Documents that contradict Plaintiffs' claims, granting them leave to file what would

3 essentially be the *sixth* version of the complaint would be futile. The Complaint should be dismissed

4 with prejudice.

5 **<u>CONCLUSION</u>**

6     For the reasons set forth above, the AP Defendants respectfully request that the Court dismiss

7 the Complaint with prejudice, and grant such further relief as the Court deems just and proper.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Dated: February 14, 2025

**BUSH KORNFELD LLP**

By _____/s/ James L. Day_____
    James L. Day, WSBA #20474
    Christine M. Tobin-Presser #27628
    Jason Wax, WSBA #41944

*Attorneys for the Debtors*

**EISENHOWER CARLSON PLLC**

By _____/s/ Darren R. Krattli_____
    Darren R. Krattli, WSBA No. 39128
    909 A Street, Suite 600
    Tacoma, Washington 98402
    Telephone: (253) 572-4500
    Facsimile: (253) 272-5732
    Email: DKrattli@Eisenhowerlaw.com

-and-

**MAYER BROWN LLP**

Thomas S. Kiriakos
Craig E. Reimer
71 S. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
Email: TKiriakos@mayerbrown.com
CReimer@mayerbrown.com

-and-

Jason I. Kirschner
Danielle A. Sigal
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: jkirschner@mayerbrown.com
DSigal@mayerbrown.com

*Counsel to WF CREL 2020 GRANTOR TRUST*

AP DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT– Page 35

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104