Exhibit 6 Page 1 of 52

# EXHIBIT 6

Exhibit 6 Page 2 of 52

1  James L. Day, WSBA #20474
2  Christine M. Tobin-Presser, WSBA #27628
   Jason Wax, WSBA #41944
3  BUSH KORNFELD LLP
   601 UNION STREET, SUITE 5000
4  SEATTLE, WA 98101
   Tel: (206) 292-2110
5  Emails: jday@bskd.com; ctobin@bskd.com;
   jwax@bskd.com
6

7                    UNITED STATES BANKRUPTCY COURT
8                    EASTERN DISTRICT OF WASHINGTON

9  In re
10                                              No. 24-01519
   1 MIN, LLC; HOTEL AT SOUTHPORT,
11 LLC; and TWELFTH FLOOR, LLC,                 DEBTORS' FIRST AMENDED
                                                JOINT PLAN OF
12                                              REORGANIZATION
13                        Debtors.

14

15      Debtors 1 Min, LLC (as further defined herein, "EB-5 Debtor"); Hotel at
16 Southport, LLC (as further defined herein, "Hotel Debtor"); and Twelfth Floor, LLC
   (as further defined herein, "Mezz Debtor" and, together with EB-5 Debtor and Mezz
17 Debtor, collectively, the "Debtors"), each a debtor-in-possession in the above-
   captioned bankruptcy case, jointly propose their Debtors' Joint Plan of
18 Reorganization (the "Plan") pursuant to Subchapter II of Chapter 11 of the
   Bankruptcy Code:
19
20                              **INTRODUCTION**

21      The Debtors commenced their respective Chapter 11 Cases and proposed this
   Plan to allow Hotel Debtor to effectuate the sale of its sole asset, a hotel and related
22 property commonly known as the Hyatt Regency Lake Washington (as further
   defined herein, the "Hotel"). Pre-petition, Hotel Debtor ran an extensive and robust
23

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 3 of 52

sale process for the Hotel, which resulted in a bid by, and the proposed sale of the Hotel to, Ohana Real Estate Investors (as further defined herein, the "Hotel Buyer"). However, this proposed pre-petition sale failed to close due to the commencement of the EB-5 Lawsuit (as such term is defined herein). Although the plaintiffs in the EB-5 Lawsuit (collectively, the "EB-5 Plaintiffs") are not direct creditors of any of the Debtors, the pendency of the EB-5 Lawsuit apparently raised sufficient issues with Hotel Buyer's title insurer to prevent the parties from proceeding to consummate the proposed sale outside of bankruptcy. However, Hotel Buyer is prepared to proceed with its acquisition of the Hotel, at the same gross purchase price (with some adjustment as detailed in the Disclosure Statement (as defined below)), under and pursuant to a confirmed plan of reorganization.

Accordingly, pursuant to the Plan, Hotel Debtor will complete its sale of the Hotel to Hotel Buyer, free and clear of all Claims, Liens, and interests (except solely with respect to the Permitted Exceptions (as defined herein), but including the Claims of the litigants in the EB-5 Lawsuit), pursuant to 11 U.S.C. §§363(b), (f), 365, 1123(a)(5), 1141(c) and 1146(a), and pay from cash on hand on the Effective Date of the Plan, including the proceeds closing of the sale, all Claims against Hotel Debtor and Mezz Debtor in accordance with strict legal priority, with the residual funds being held by Mezz Debtor pending further order of the Court. The Debtors anticipate that the Sale Transaction will result in net proceeds of approximately $10,000,000 for later distribution as the Court directs following Notice and Hearing.

## ARTICLE I.
## DISCLOSURE STATEMENT

A.    The Debtors have filed their *Joint Disclosure Statement for Joint Debtors' Plan of Reorganization* [ECF No. 8] (the "Disclosure Statement") pursuant to 11 U.S.C. § 1125 and Bankruptcy Rule 3016(c). The Bankruptcy Court has approved the Disclosure Statement prior to this Plan being submitted to Creditors as satisfying the requirements of Bankruptcy Code § 1125(a) and (b). The Disclosure Statement provides useful information to aid and assist Creditors in voting on the Plan. YOU ARE URGED TO READ THE DISCLOSURE STATEMENT WITH CARE IN EVALUATING THE IMPACT OF THE PLAN UPON YOUR CLAIMS.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 2
771115221.3

Exhibit 6 Page 4 of 52

# ARTICLE II.
## DEFINITION OF TERMS

**A.    Definitions**

A term used in this Plan that is not defined below and that is defined in the Bankruptcy Code shall have the meaning ascribed in the Bankruptcy Code. When used in this Plan, the following terms shall have the meanings specified below, unless the context otherwise requires:

1.    <u>Additional Assumed Contracts</u>: The meaning given to such term in **Article VI.A.** hereof.

2.    <u>Administrative Expense Claim</u>: An Allowed Claim entitled to priority under § 507(a)(2) of the Bankruptcy Code, including (a) Claims incurred by the Debtors since the Petition Date and allowed by the Court of a type described in § 503(b) of the Code; (b) all Allowed Claims of Professional Persons pursuant to §§ 330 and 331 of the Code and Bankruptcy Rule 2016; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

3.    <u>Allowed Claim</u>: Any Claim in the amount and of the priority classification set forth in the proof of such Claim that has been filed timely in the Bankruptcy Case, or in the absence of such proof, as set forth in a Debtor's Schedules of liabilities filed in the Bankruptcy Case, unless:

(i)    such Claim has been listed in such Schedules as disputed, contingent, or unliquidated, in which case such Claim shall be allowed only in such amount and such classification as is authorized by Final Order of the Bankruptcy Court;

(ii)    such Claim has been objected to or is objected to after Confirmation, in which case such Claim is authorized by Final Order of the Bankruptcy Court; or,

(iii)    such Claim has been paid in full, withdrawn, or otherwise deemed satisfied in full.

4.    <u>Asset</u>: All of the right, title, and interest of each of the Debtors in and to property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property).

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 5 of 52

5. <u>Assumed Contracts</u>:  The meaning given to such term in **Article VI.A.** hereof.

6. <u>Avoidance Actions</u>:  Any Claim or cause of action of the Estate arising out of or maintainable pursuant to Chapter V of the Bankruptcy Code or under any other similar applicable law.

7. <u>Ballot</u>:  The form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan.

8. <u>Bankruptcy Code or Code</u>:  The Bankruptcy Code enacted November 6, 1978, as set forth in Title 11 of the United States Code, and as amended thereafter.

9. <u>Bankruptcy Court or Court</u>:  The United States Bankruptcy Court for the Eastern District of Washington, before which the Bankruptcy Case is pending, or if that Court ceases to exercise jurisdiction over the Bankruptcy Case, the Court that does exercise jurisdiction.

10. <u>Bankruptcy Rules</u>:  The Federal Rules of Bankruptcy Procedure.

11. <u>Business Day</u>:  Any day except Saturday, Sunday or a "legal holiday" as defined in Bankruptcy Rule 9006(a)(6).

12. <u>Cash</u>:  Cash or cash equivalents including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

13. <u>Cash Collateral Claims</u>: Any Claims of Senior Lender or Mezz Lender against any Debtor arising out of any Debtor's use of cash collateral in accordance with the Cash Collateral Orders that are actually due and owing.  In light of the required payment in full in Cash of the amount of the Class 1 and Class 2 Claims on the Effective Date, there shall be no Cash Collateral Claims to be satisfied as Administrative Claims or otherwise under the Plan.

14. <u>Cash Collateral Orders</u>: The orders of the Bankruptcy Court, and related stipulations among the Debtors, the Senior Lender, and the Mezz Lender, authorizing Debtors to use cash collateral.

15. <u>Causes of Action</u>: The meaning given to such term in **Article X.G.** hereof.

Bᴜsʜ Kᴏʀɴғᴇʟᴅ ʟʟᴘ
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 4
771115221.3

Exhibit 6 Page 6 of 52

16.    Chapter 11 Case(s):    As the context requires, the Debtors' above-captioned jointly-administered chapter 11 case, or the individual chapter 11 cases each of the Debtors filed on the Petition Date and that remain pending before the Bankruptcy Court.

17.    Claim:  A claim as defined in § 101(5) of the Bankruptcy Code.

18.    Claims Bar Date: The deadline established by the Bankruptcy Court for filing Proofs of Claim in this Bankruptcy Case.

19.    Claim Reserve: As the case may be, the Disputed Administrative Expense Reserve, the Fee Claim Reserve, the Disputed Priority Tax Claim Reserve, the Disputed Priority Non-Tax Claim Reserve, the Disputed General Unsecured Claims Reserve, the Operating Expenses Reserve, or the Post-Effective Date Expense Reserve.

20.    Claim Reserve Projection: As the case may be, the Disputed Administrative Expense Reserve Projection, the Fee Claim Reserve Projection, the Disputed Priority Tax Claim Reserve Projection, the Disputed Priority Non-Tax Claim Reserve Projection, the Disputed General Unsecured Claims Reserve Projection, the Operating Expenses Reserve Projection, and the Post-Effective Date Expense Reserve Projection.

21.    Class:  A class of Claims or Interests as defined in Article III of this Plan.

22.    Class 1 Allowed Claim:  The meaning given to such term in **Article IV.B.1.** hereof.

23.    Class 1 Claim:  The meaning given to such term in **Article IV.B.1.** hereof.

24.    Class 2 Allowed Claim:  The meaning given to such term in **Article IV.B.2.** hereof.

25.    Class 2 Claim:  The meaning given to such term in **Article IV.B.2.** hereof.

26.    Class 3 Allowed Claim:  The meaning given to such term in **Article IV.B.3.** hereof.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 5
771115221.3

Exhibit 6 Page 7 of 52

27.    Class 3 Claim:  The meaning given to such term in **Article IV.B.3.** hereof.

28.    (The) Closing: The closing of the Sale Transaction.

29.    Completed Plan Distribution:   The meaning given to such term in **Article VII.C.3.** hereof.

30.    Conditional Interest Rate Adjustment.  An adjustment to the amount of the Class 1 Allowed Claim and the Class 2 Allowed Claim whereby the holders of such Claims shall forego any default interest under their respective loan documents if the Confirmation Order is entered on or before November 30, 2024 and the Effective Date occurs on or before December 14, 2024; specifically, if the Bankruptcy Court enters the Confirmation Order on or prior to November 30, 2024 and the Effective Date occurs on or before December 14, 2024, neither the Class 1 Allowed Claim nor the Class 2 Allowed Claim shall include any amount owing for interest in excess of interest that has accrued at the non-default rate set forth in the Senior Loan Documents or the Mezz Loan Documents (as the case may be).

31.    Confirmation:  The entry of the Confirmation Order by the Bankruptcy Court.

32.    Confirmation Order:  The order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.  The Confirmation Order may also incorporate the provisions of the Sale Order into a single Order.

33.    Creditor:   A "creditor" within the meaning of § 101(10) of the Bankruptcy Code.

34.    Cure:  The Debtors' cash payment, or the distribution of other property pursuant to an agreement of the applicable parties or a Final Order of the Bankruptcy Court, in each case, as necessary to cure applicable defaults under, and permit the assumption or assumption and assignment under sections 365(a) and 1123 of the Bankruptcy Code of, any executory contract or unexpired lease of one or more Debtors.

35.    Cure Amount:  The amount of any Cure payment made in connection with the Debtors' assumption or assumption and assignment of an executory contract or unexpired lease

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 6

Exhibit 6 Page 8 of 52

36.     Debtors:  Hotel Debtor, Mezz Debtor and EB-5 Debtor, the debtors in possession in this Bankruptcy Case.

37.     Disclosure Statement:  The meaning given to such term in the preamble of **Article IV** hereof.

38.     Disbursing Agent: For each Debtor, the applicable Post-Effective Date Debtor, or any Person designated by the applicable Post-Effective Date Debtor in accordance with the provisions of the Plan.

39.     Disputed Claim:  A Claim (i) listed in the Schedules as "disputed," and which the Court has not allowed by entry of a Final Order, or (ii) based upon a Proof of Claim filed not later than the Claims Bar Date as to which a party-in-interest has filed an objection.

40.     Distributed Administrative Expense Reserve: The meaning given to such term in **Article V.G.3** hereof.

41.     Distributed Administrative Expense Reserve Projection: The meaning given to such term in **Article V.G.3** hereof.

42.     Disputed General Unsecured Claims Reserve: The meaning given to such term in **Article V.G.3** hereof.

43.     Disputed General Unsecured Claims Reserve Projection: The meaning given to such term in **Article V.G.3.** hereof.

44.     Disputed Priority Non-Tax Claim Reserve: The meaning given so such term in **Article V.G.3.** hereof.

45.     Disputed Priority Non-Tax Claim Reserve Projection: The meaning given to such term in **Article V.G.3**. hereof.

46.     Disputed Priority Tax Claim Reserve: The meaning given to such term in **Article V.G.3.** hereof.

47.     Disputed Priority Tax Claim Reserve Projection: The meaning given to such term in **Article V.G.3.** hereof.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 7
771115221.3

Exhibit 6 Page 9 of 52

48.     EB-5 Debtor:  1 Min, LLC, a Washington limited liability company, whether acting in its capacity as debtor, debtor in possession or Post-Effective Date Debtor.  All Equity Interests in the EB-5 Debtor are owned by Michael Christ.

49.     EB-5 Lawsuit:  A lawsuit commenced in King County Superior Court prior to the Petition Date, *Lan, et al. v. Christ, et al.,* Case No. 24-2-04850-2-SEA, in which 49 investors under the EB-5 Program seek various relief against each of the Debtors and other defendants.

50.     EB-5 Lender:  Southport Hotel EB-5, LP, a Washington limited partnership.

51.     EB-5 Loan: That certain loan made by EB-5 Lender to EB-5 Debtor in the aggregate principal amount of up to $115,500,000.00.

52.     EB-5 Loan Agreement: That certain Loan Agreement dated as of October 21, 2013, evidencing and governing the EB-5 Loan, originally by and between EB-5 Lender and Hotel at Southport, LLC, a Washington limited liability company, as the same may be amended, replaced, supplemented or otherwise modified from time to time.  The borrower's obligations under the EB-5 Agreement were assigned to and assumed by EB-5 Debtor pursuant to a Loan Modification and Assumption Agreement, dated as of January 27, 2017.

53.     EB-5 Plaintiffs:  Each of the plaintiffs in the EB-5 Lawsuit.

54.     EB-5 Plaintiffs Claims: Claims asserted against all Debtors based upon amounts allegedly owing the EB-5 Plaintiffs as set forth in the EB-5 Lawsuit. On November 4, 2024, the EB-5 Plaintiffs filed a Proof of Claim in each of the Chapter 11 Cases alleging an aggregate amount owing of $32,450,000 based solely on the complaint filed in the EB-5 Lawsuit.

55.     EB-5 Plaintiffs Claims Objection:  The *Objection to Claims of EB-5 Plaintiffs, Notice Thereof and Certificate of Service* (ECF No. 89) that the Debtors filed on October 21, 2024, pursuant to which the Debtors asked that the asserted EB-5 Plaintiffs Claims be disallowed in their entirety on numerous bases.

56.     EB-5 Plaintiffs Claims Order:  The Final Order described in **Article V.A.** hereof.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 10 of 52

57. <u>EB-5 Plaintiffs Set-Aside</u>: The meaning given to such term in subparagraph (h) of **Article V.G.3.** hereof.

58. <u>EB-5 Pledge Agreement</u>: That certain Pledge of Membership Interest and Security Agreement, by and between EB-5 Debtor and EB-5 Lender, dated as of January 27, 2017, pursuant to which EB-5 Debtor granted to EB-5 Lender a security interest in all of EB-5 Debtor's interests in Mezz Debtor as security for the payment and performance of EB-5 Debtor's obligations under the EB-5 Loan Agreement.

59. <u>EB-5 Program</u>: The EB-5 Immigrant Investor Program, administered by the United States Citizenship and Immigration Services, which allows foreign investors to gain permanent residence in the United States by investing the required minimum amount of capital in a domestic commercial enterprise that will create at least 10 full-time jobs.

60. <u>ECF No.</u>: The identifying number of the relevant pleading or other document as reflected on the docket for the Bankruptcy Case that is maintained by the Bankruptcy Court

61. <u>Effective Date</u>: The date on which all conditions to the effectiveness of the Plan set forth in Article VIII hereof have been satisfied or waived in accordance with the terms of the Plan.

62. <u>Effective Date Allowed Claims Schedule</u>: The meaning given to such term in **Article V.G.3.** hereof.

63. <u>Effective Date Cash</u>: The meaning given to such term in **Article VII.C.2.** hereof.

64. <u>Effective Date Sources and Uses Statement</u>: The meaning given to such term in **Article V.G.3.** hereof.

65. <u>Equity Interest</u>: An Equity Interest in a Debtor.

66. <u>Estate</u>: The Estate created for each of the Debtors pursuant to § 541 of the Bankruptcy Code.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 9
771115221.3

Exhibit 6 Page 11 of 52

67. <u>Exculpated Parties</u>: The Debtors, and each of their members, attorneys, consultants, financial advisors, accountants, and other advisors and agents (acting in such capacity).

68. <u>Existing Cash</u>: The meaning given to such term in **Article VII.C.1.** hereof.

69. <u>Fee Claim</u>: means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtors by an order of the Bankruptcy Court pursuant to Sections 327, 328, 329, 330, 331, or 503(b) of the Bankruptcy Code in the Chapter 11 Cases.

70. <u>Fee Claim Reserve</u>: means the accounting reserve to be established on the Effective Date pursuant to **Articles IV.A.1.a.** and **V.G.3.** of the Plan.

71. <u>Fee Claims Reserve Projection</u>: The accounting reserve to be established on the Effective Date pursuant to **Articles IV.A.1.a.** and **Article V.G.3.** hereof.

72. <u>Final Order</u>: means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending; or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or Sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 10
771115221.3

Exhibit 6 Page 12 of 52

73.     _Final Purchase Agreement_: That certain Purchase and Sale Agreement between Hotel Debtor, as seller, and Hotel Buyer, as buyer, as amended, for the purchase and sale of the Hotel in the form attached hereto as _Exhibit A_.

74.     _Governmental Unit_:  A "governmental unit" as defined in § 101(27) of the Bankruptcy Code.

75.     _Holder_:  A holder of a Claim or Equity Interest, as the case may be.

76.     _(The) Hotel_: The Hyatt Regency Lake Washington hotel, located at 1053 Lake Washington Blvd. N., Renton WA, and all other Property as defined in the Final Purchase Agreement.

77.     _Hotel Buyer_:  HRLW Hotel LLC, a Delaware limited liability company, the buyer of the Hotel under the Purchase Agreement.

78.     _Hotel Debtor_:  Hotel at Southport, LLC, a Delaware limited liability company, whether acting in its capacity as debtor, debtor in possession or Post-Effective Date Debtor.  All Equity Interests in Hotel Debtor are owned by Mezz Debtor.

79.     _Hotel Deed of Trust_: That certain Deed of Trust, Assignment of Leases and Rents and Security Agreement, by and among Hotel Debtor (as grantor), Prior Senior Lender (as beneficiary) and Fidelity National Title Company of Washington (as trustee), dated November 6, 2019, and recorded on such date under King County Auditor's File No. 20191106001433, encumbering the Hotel in first-lien position. Prior Senior Lender assigned the Hotel Deed of Trust to Hotel Lender by way of an Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement, recorded on October 28, 2021, under in King County Auditor's File No. 20211028000996.

80.     _Hotel Income_:  The rents, fees and other income generated from operating the Hotel.

81.     _Hotel Management Agreement_:  That certain Hotel Management Agreement, dated August 12, 2015, between Prior Property Owner and Hotel Manager, as the same may be amended, replaced, supplemented or otherwise modified from time to time.

82.     _Hotel Manager_:  Hyatt Corporation, a Delaware corporation.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 13 of 52

83. <u>Lien</u>: The meaning given such term in Section 101(37) of the Bankruptcy Code.

84. <u>Mezz Debtor</u>: Twelfth Floor, LLC, a Delaware limited liability company, whether acting in its capacity as debtor, debtor in possession or Post-Effective Date Debtor. All Equity Interests in the Mezz Debtor are owned by EB-5 Debtor.

85. <u>Mezz Lender</u>: WF CREL 2020 Grantor Trust, a Delaware statutory trust.

86. <u>Mezz Loan</u>: That certain loan from the Prior Mezz Lender to the Mezz Debtor in the original principal amount of $40,000,000, to which Mezz Lender is now the beneficiary.

87. <u>Mezz Loan Documents</u>: That certain Mezzanine Loan Agreement, dated as of November 6, 2019, between Mezz Debtor as borrower, and Prior Mezz Lender as lender, in the original principal amount of $40,000,000, and all other documents evidencing and governing the Mezz Loan. The Mezz Lender became the successor beneficiary of the Mezz Loan and the Mezz Loan Documents in October 2021.

88. <u>Net Proceeds</u>: Gross proceeds actually collected from the disposition of an asset, less all costs incurred in completing such disposition, including without limitation all sales commissions, fees and expenses, and all taxes arising in connection with such disposition for which the Hotel Debtor is responsible.

89. <u>Notice and Hearing</u>: Proceedings as contemplated under Bankruptcy Code § 102(1).

90. <u>Official Mailing List</u>: The meaning given to such term in **Article IX.B** hereof.

91. <u>Operating Expenses Reserve</u>: The meaning given to such term in **Article V.G.3.** hereof.

92. <u>Operating Expenses Reserve Projection</u>: The meaning given to such term in **Article V.G.3.** hereof.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 14 of 52

93.     Permitted Exceptions:  The permitted exceptions to title to the Property set forth in the Final Purchase Agreement.

94.     Person:  A "person" as defined in § 101(41) of the Bankruptcy Code.

95.     Petition Date:  September 20, 2024, the date upon which each of the Debtors commenced their respective Chapter 11 Cases in the Bankruptcy Court.

96.     Plan:  This Debtors' Joint Plan of Reorganization, as the same may be amended, replaced, supplemented or otherwise modified from time to time.

97.     Plan Cash: The meaning given that term in **Article VII.C.1.** hereof.

98.     Plan Support Agreement: That certain Plan Support Agreement among the Debtors, the Senior Lender, the Mezz Lender, the Buyer and the Hotel Manager, in the form attached hereto as Exhibit B, pursuant to which each of the non-debtor parties has agreed to support Confirmation of the Plan.

99.     Post-Effective Date Debtor:  means Post-Effective Date Hotel Debtor, the Post-Effective Date Mezz Debtor and Post-Effective Date EB-5 Debtor.

100.    Post-Effective Date Expense Reserve: The meaning given to such term in **Article V.G.3.** hereof.

101.    Post-Effective Date Plan Cash: The meaning given to such term in **Article VII.C.3.** hereof.

102.    Prerequisite Condition:  The meaning given to such term in **Article VII.B** hereof.

103.    Prior Mezz Lender: AIP US RED Private Real Estate Trust No. 22, an investment trust formed under the laws of the Republic of Korea, the lender that originated the Mezz Loan.

104.    Prior Senior Lender: Lake Washington Co., Ltd., a company formed under the laws of the Republic of Korea, the lender that originated the Senior Loan.

105.    Priority Tax Claims:  Allowed Claims of Governmental Units for the principal amount of a tax within the meaning of § 507(a)(8) of the Code, and statutory interest accruing thereon prior to the Petition Date.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 15 of 52

106.  <u>Pro Rata Share</u>: means the proportion that an Allowed Claim in a particular Class bears relative to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

107.  <u>Professional Person</u>:  A Person, including a trustee (if one is appointed), retained or to be compensated pursuant to §§ 326, 327, 328, 330, and/or 1103 of the Bankruptcy Court.

108.  <u>Purchase Price</u>: $157,000,000 subject to the adjustments and credits set forth in the Final Purchase Agreement.

109.  <u>Related Parties</u>: means with respect to any Person, such Person's predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, all of their respective current officers, directors, principals, stockholders (and any fund managers, fiduciaries, or other agents of stockholders with any involvement related to the Debtors), members, partners, employees, agents, trustees, advisory board members, advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such persons' respective heirs, executors, estates, servants, and nominees.

110.  <u>Released Parties</u>: means collectively, and in each case, solely in their capacities as such: (a) Senior Lender and its Related Parties, (b) the Mezz Lender and its Related Parties; (c) the Hotel Buyer and its Related Parties; and (d) any attorneys, advisors, or other professionals retained by the Debtors in connection with the Chapter 11 Cases.

111.  <u>Sale Order</u>:  The Order of the Bankruptcy Court authorizing the sale of the Hotel to the Hotel Buyer pursuant to the provisions of the Final Purchase Agreement, free and clear of all Claims, Liens, and interests (except solely with respect to the Permitted Exceptions, but including the Claims of the litigants in the EB-5 Lawsuit), pursuant to 11 U.S.C.§§363(b), (f), 365, 1123(a)(5), 1141(c) and 1146(a) and as such term is further defined in the Purchase Agreement.  The Confirmation Order may also incorporate the provisions of the Sale Order into a single Order.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 14
771115221.3

Exhibit 6 Page 16 of 52

112.   Sale Proceeds: The meaning given to such term in **Article VII.C.1** hereof.

113.   Sale Transaction:  The sale of the Hotel to the Hotel Buyer on or before the Effective Date and pursuant to the Final Purchase Agreement.

114.   Secured Claim:  A Claim that is a Secured Claim against a Debtor determined in accordance with § 506(a) of the Bankruptcy Code.

115.   Schedules:  The schedules of assets, liabilities and executory contracts and the statement of financial affairs each of the Debtors filed on the Petition Date pursuant to Bankruptcy Code § 521, and in accordance with the Bankruptcy Rules, as each has been, or may be, amended and supplemented from time to time.

116.   Senior Lender:  WF CREL 2020 Grantor Trust, a Delaware statutory trust.

117.   Senior Loan:  That certain loan made by the Prior Senior Lender to Hotel Debtor in the original principal amount of $90,000,000, to which Senior Lender is now the beneficiary.

118.   Senior Loan Documents:  That certain Loan Agreement, dated as of November 6, 2019, between Hotel Debtor as borrower, and Prior Senior Lender as lender, in the original principal amount of $90,000,000, and all other documents evidencing and governing the Senior Loan.  Prior Senior Lender sold and assigned all rights in the Senior Loan and the Senior Loan Documents to Senior Lender pursuant to an Assignment and Assumption Agreement, dated October 26, 2021.

119.   SOFA: The Statement of Financial Affairs (Official Form 207) the Debtors filed in their respective Chapter 11 Cases on the Petition Date.

120.   Subsequent Condition: The meaning given such term in **Article VIII.B** hereof.

121.   Unclassified Claim:  A Claim that is not designated in a Class pursuant to § 1123(a)(1) of the Code, including Administrative Expense Claims and Priority Tax Claims.

122.   Unsecured Claim:  A Claim that is (a) based upon (i) a proof of claim executed and filed in accordance with Bankruptcy Rule 3003(c) prior to the Claims

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 15
771115221.3

Exhibit 6 Page 17 of 52

Bar Date, or (ii) the listing of the Claim in a Debtor's schedules of liabilities as other than disputed, contingent or unliquidated, and (b) not a Secured Claim or an Unclassified Claim.

**B.    Rules of Interpretation**

The rules of construction set forth in § 102 of the Bankruptcy Code shall apply to the Plan.

**ARTICLE III.**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

All Claims, as defined in § 101(5) of the Bankruptcy Code, against the Debtors are classified as set forth herein.  A Claim is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class to the extent it qualifies within the definition of such different Class.

Class 1:  Secured Claim of Senior Lender
Class 2:  Secured Claim of Mezz Lender
Class 3:  Secured Claim of Southport Hotel EB-5, LP
Class 4:  General Unsecured Claims - - Hotel Debtor
Class 5:  General Unsecured Claims - - Mezz Debtor
Class 6:  General Unsecured Claims - - EB-5 Debtor
Class 7:  Equity Interests of Mezz Debtor
Class 8:  Equity Interests of EB-5 Debtor
Class 9:  Equity Interests of Michael Christ

**ARTICLE IV.**
**PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING TREATMENT OF EACH CLASS UNDER THE PLAN**

The treatment of all Allowed Claims and Allowed Equity Interests shall be as follows:

**A.    Unclassified Claims**

There are six Classes of Claims and three Classes of Equity Interests, and certain other Claims are Unclassified Claims pursuant to applicable provisions of the Bankruptcy Code.  If the Court confirms the Plan and the Plan becomes effective, the Class into which each Allowed Claim and Allowed Interest fits will determine

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 18 of 52

the manner in which such Claim or Interest will be treated. The Classes and Unclassified Claims defined are as follows.

1.   Unclassified Claims.

   a.   Administrative Expense Claims.   As defined herein, Administrative Expense Claims are Allowed Claims for costs or expenses of the Chapter 11 Case that are allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code. Claims incurred in the ordinary course of a Debtor's business following the Petition Date shall be paid in the ordinary course of business in accordance with the terms and conditions of the particular agreements governing such obligations. Unless otherwise agreed to by the Professional Person, Claims of Professional Persons shall be paid on the later of the Effective Date or the date each such Claim becomes an Allowed Claim.

   b.   Priority Tax Claims.   Priority Tax Claims, if they exist, are Allowed Claims of Governmental Units that are entitled to priority in accordance with section 507(a)(8) of the Bankruptcy Code. Priority Tax Claims include the principal portion of the applicable tax and interest accrued thereon through the Effective Date but do not include any penalties. The Debtors do not believe there are any Priority Tax Claims eligible for treatment under the Plan. However, in the event any such Claims do exist, the Plan contains a mechanism for payment in full (or for the provision for the payment in full) on the Effective Date of any such Claims that are Allowed on or before the Effective Date or that subsequently become Allowed.

   c.   Priority Non-Tax Claims. Priority Non-Tax Claims, if they exist, are required to be classified as a separate class under a plan pursuant to 11 U.S.C. § 1123(a)(1). The Debtors do not believe that there are any Priority Non-Tax Claims eligible for treatment under the Plan and accordingly, have not so classified such Claims. However, in the event that any such Claims do exist, the Plan contains a mechanism for payment in full (or provision for the payment in full) on the Effective Date of any such Claims that are Allowed on or before the Effective Date or that subsequently become Allowed. In any such event, such Claims shall be deemed designated, classified, and unimpaired hereunder and thus, shall be deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 17
771115221.3

Exhibit 6 Page 19 of 52

**B.     Classified Claims and Interests**

1.     <u>Class 1</u>:  **Secured Claim of Senior Lender**

Class 1 consists of the Secured Claim of Senior Lender (the "<u>Class 1 Claim</u>"), as more fully described below.  The Class 1 Claim shall be paid according to the following terms:

a.     <u>Identification of Claim</u>.   The Class 1 Claim is based upon amounts owing on the Senior Loan pursuant to the Senior Loan Documents.  As of the Petition Date, the Class 1 Claim had an outstanding balance of approximately $92,400,000, with interest, fees and expenses accruing thereafter.

b.     <u>Allowance of Claim</u>.  The Class 1 Claim shall be allowed as of Confirmation as a Secured Claim pursuant to Bankruptcy Code sections 502(a), 506(a), and 506(b) in an amount that shall be set forth in (or otherwise determined pursuant to the provisions of) the Confirmation Order and equal to all amounts then owing on the Senior Loan (the "<u>Class 1 Allowed Claim</u>"), but subject to the Conditional Interest Rate Adjustment.

c.     <u>Satisfaction of Class 1 Allowed Claim</u>.  The Debtors shall pay the Holder of the Class 1 Allowed Claim as set forth below:

(1)     <u>Retention of Security Interests</u>.  Pending the occurrence of the Effective Date, the Holder of the Class 1 Allowed Claim shall retain each of its Liens, rights and privileges on and in the collateral securing the Class 1 Allowed Claim, including without limitation the Liens, rights and privileges set forth in and arising under the Hotel Deed of Trust, until the Class 1 Allowed Claim has been paid in full in Cash.

(2)     <u>Creditor Entitled to U.S.C. § 506(b) Treatment</u>.  Pending the occurrence of the Effective Date, interest shall accrue on the Class 1 Allowed Claim at the applicable rate set forth in the Senior Loan Documents, subject to the Conditional Interest Rate Adjustment, and the holder of the Class 1 Claim shall be and shall remain entitled to be allowed and shall be allowed all reasonable fees, expenses, costs, and charges, including attorneys' fees and expenses, provided for under its loan documents and/or applicable law, including those incurred after the Petition Date.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 18
771115221.3

Exhibit 6 Page 20 of 52

(3)    Payments; Source.  The Holder of the Class 1 Allowed Claim shall be paid in full in cash in a single payment from the Closing and upon the Effective Date, whereupon its Liens in and to its collateral shall be deemed discharged and otherwise released.

d.    Impairment.  Class 1 is impaired under the Plan.  However, as set forth in the Plan Support Agreement, the Holder of the Class 1 Allowed Claim supports Confirmation and shall return a Ballot cast in favor of Confirmation of the Plan.

2.    **Class 2**:  **Secured Claim of Mezz Lender**

Class 2 consists of the Secured Claim of Mezz Lender (the "Class 2 Claim"), as more fully described below.  The Class 2 Claim shall be paid according to the following terms:

a.    Identification of Claim.  The Class 2 Claim is based upon amounts owing on the Mezz Loan pursuant to the Mezz Loan Documents.  As of the Petition Date, the Class 2 Claim had an outstanding balance of approximately $41,147,000, with interest, fees and expenses accruing thereafter.

b.    Allowance of Claim.  The Class 2 Claim shall be allowed as of Confirmation as a Secured Claim pursuant to Bankruptcy Code sections 502(a), 506(a)  and 506(b) in an amount that shall be set forth in (or otherwise determined pursuant to the provisions of) the Confirmation Order and equal to all amounts then owing on the Mezz Loan (the "Class 2 Allowed Claim"), but subject to the Conditional Interest Rate Adjustment.

c.    Satisfaction of Class 2 Allowed Claim.  The Debtors shall pay the Holder of the Class 2 Allowed Claim as set forth below:

(1)    Retention of Security Interests.  Pending the occurrence of the Effective Date, the Holder of the Class 2 Allowed Claim shall retain each of its Liens, rights and privileges on and in the collateral securing the Class 2 Allowed Claim, including without limitation the Liens, rights and privileges set forth in and arising under the Pledge and Security Agreement, dated November 6, 2019, until the Class 2 Allowed Claim has been paid in full in Cash.

(2)    11 U.S.C. § 506(b) Treatment.  Pending the occurrence of the Effective Date, interest shall accrue on the Class 2 Allowed Claim at the

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 21 of 52

applicable rate set forth in the Mezz Loan Documents, subject to the Conditional Interest Rate Adjustment, and the holder of the Class 2 Claim shall be and shall remain entitled to be allowed and shall be allowed all reasonable fees, costs, and charges, including attorneys' fees and expenses, provided for its loan documents and/or applicable law, including those incurred after the Petition Date.

(3)    Payments; Source.  The Holder of the Class 2 Allowed Claim shall receive (i) all Plan Cash following (a) payment in full of the Class 1 Allowed Claim, (b) payment (or reserve for payment) in full of all Allowed Administrative Expense Claims, all Allowed Priority Tax Claims, and all Allowed Priority Non-Tax Claims, (c) payment in full of all Allowed Claims in Class 4, and (if applicable) the funding of the Disputed General Unsecured Claims Reserve relative to Disputed Claims in Class 4 (other than EB-5 Plaintiffs Claims), and (d) funding of the EB-5 Plaintiffs Set-Aside; and (ii) following entry of the EB-5 Plaintiffs Claims Order and payment of amounts owing on the EB-5 Plaintiffs Claims (if any) that are allowed as a Class 4 Claim against Hotel Debtor, Plan Cash sufficient to pay the remaining balance of the Class 2 Allowed Claim in full, whereupon its Liens in and to its collateral shall be deemed discharged and otherwise released.

d.    Impairment.  Class 2 is impaired under the Plan.  However, as set forth in the Plan Support Agreement, the Holder of the Class 2 Allowed Claim supports Confirmation and shall return a Ballot cast in favor of Confirmation of the Plan.

3.    **Class 3**: Secured Claim of EB-5 Lender.

Class 3 consists of the Secured Claim of the EB-5 Lender (the "Class 3 Claim"), as more fully described below.  The Class 3 Claim shall be treated according to the following terms:

a.    Identification of Claim.  The Class 3 Claim is based upon amounts owing the EB-5 Lender on the EB-5 Loan pursuant to the EB-5 Loan Agreement.  As of the Petition Date, the EB-5 Debtor estimates that the Class 3 Claim had an outstanding principal balance of $99,500,000, with interest, fees and expenses accruing thereafter to the extent permitted pursuant to Section 506(b) of the Bankruptcy Code.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 20
771115221.3

Exhibit 6 Page 22 of 52

b.　　<u>Allowance of Claim</u>.　The Class 3 Claim shall be allowed as of Confirmation as a Secured Claim pursuant to Bankruptcy Code sections 502(a) and 506(a) in an amount that shall be set forth in or otherwise determined pursuant to the provisions of the Confirmation Order and equal to all amounts then owing on the EB-5 Loan (the "<u>Class 3 Allowed Claim</u>").

c.　　<u>Treatment of Class 3 Allowed Claim</u>.　The Class 3 Allowed Claim shall be treated as set forth below:

(1)　　<u>Retention of Security Interests</u>.　Pending the occurrence of the Effective Date, the Holder of the Class 3 Allowed Claim shall retain each of its Liens, rights and privileges on and in the collateral securing the Class 3 Claim, including those arising under the EB-5 Pledge Agreement (the <u>Class 3 Security Interests</u>").

(2)　　<u>Interest Rate</u>.　Interest shall accrue on the unpaid principal balance of the Class 3 Allowed Claim at the applicable rate set forth in the EB-5 Loan Agreement, but only to the extent permitted pursuant to Section 506(b) of the Bankruptcy Code.

(3)　　<u>Treatment</u>.　All Plan Cash remaining after the satisfaction of all Allowed Administrative Expense Claims, all Allowed Priority Tax Claims, all Allowed Priority Non-Tax Claims, and all Allowed Claims in Classes 1, 2, 3, 4, and 5 (including to the extent that the EB-5 Plaintiffs Claims Order has allowed any EB-5 Plaintiffs Claims as Class 5 Claims against Mezz Debtor and such Claims remain unsatisfied) shall be distributed to the Holder of the Class 3 Allowed Claim in full and complete satisfaction of the Class 3 Allowed Claim.

d.　　<u>Impairment</u>.　Class 3 is impaired under the Plan.　Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 3 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 3.

4.　**<u>Class 4</u>:　General Unsecured Claims - - Hotel Debtor**

(a)　<u>Classification</u>:　Class 4 consists of General Unsecured Claims against Hotel Debtor.

(b)　<u>Treatment</u>:　Except to the extent that a holder of an Allowed General Unsecured Claim against Hotel Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, and release of such Allowed

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 21
771115221.3

Exhibit 6 Page 23 of 52

General Unsecured Claim, each such holder shall receive payment in full in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim.

(c)     Voting:     Class 4 is Unimpaired, and holders of General Unsecured Claims against Hotel Debtor are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Holders of General Unsecured Claims against Hotel Debtor, therefore, are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such General Unsecured Claim.

5.     **Class 5:  Class 5:  General Unsecured Claims - - Mezz Debtor**

(a)     Classification:  Class 5 consists of General Unsecured Claims against Mezz Debtor.

(b)     Treatment:  Except to the extent that a holder of an Allowed General Unsecured Claim against Mezz Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, and release of such Allowed General Unsecured Claim, each such holder shall receive payment in full in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim.

(c)     Voting:     Class 5 is Unimpaired, and holders of General Unsecured Claims against Mezz Debtor are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Holders of General Unsecured Claims against Mezz Debtor, therefore, are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such General Unsecured Claim.

6.     **General Unsecured Claims - - EB-5 Debtor**

(a)     Classification:  Class 6 consists of General Unsecured Claims against the EB-5 Debtor.  Class 6 includes any claimants under and with respect to the EB-5 Lawsuit.

(b)     Treatment:  Holders of Allowed Class 6 Claims shall not be entitled to any payments unless and until all Allowed Administrative Expense

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 24 of 52

Claims, all Priority Tax Claims, all Allowed Priority Non-Tax Claims, and the Class 1-5 Allowed Claims have been paid in full in cash, whereupon the Holders of Allowed 6 Claims shall be entitled to their Pro Rata share of any then-remaining Plan Cash up to the payment in full in Cash of their Allowed General Unsecured Claims. For avoidance of doubt, nothing contained in the Plan is intended to limit the rights of any Person, including the claimants and under with respect to the EB-5 Lawsuit, against any non-debtor.

(c)   <u>Voting</u>:  Class 6 is impaired; however, Holders of Class 6 Claims are not expected to receive any distribution under the Plan and accordingly, shall be deemed to have rejected the Plan under Section 1126(g) of the Bankruptcy Code. The Debtors will request that the Court confirm the Plan without the consent of Class 6.

7.    **<u>Class 7</u>:  Equity Interests of Mezz Debtor**

Class 7 consists of the Equity Interests of Mezz Debtor as the sole Holder of Equity Interests in Hotel Debtor. Mezz Debtor shall retain such Equity Interests following the Effective Date. No distributions shall be made on account of the Class 7 Equity Interests other than the deemed distribution from Hotel Debtor to Mezz Debtor of all Plan Cash after the satisfaction (or the provision for the satisfaction of) all Allowed Claims against Hotel Debtor.

8.    **<u>Class 8</u>:  Equity Interests of EB-5 Debtor.**

Class 8 consists of the Equity Interests of EB-5 Debtor as the sole Holder of Equity Interests in Mezz Debtor. EB-5 Debtor shall retain such Equity Interests following the Effective Date. No distributions shall be made on account of the Class 8 Equity Interests other than the deemed distribution from Mezz Debtor to EB-5 Debtor of Plan Cash remaining after the satisfaction (or the provision for the satisfaction) of all Allowed Claims against Hotel Debtor and all Allowed Claims against Mezz Debtor.

9.    **<u>Class 9</u>:  Equity Interests of Michael Christ.**

Class 9 consists of the Equity Interests of Michael Christ as the sole Holder of Equity Interests in EB-5 Debtor. Mr. Christ shall retain such Equity Interests following the Effective Date but shall receive no distributions on account of the Class 9 Interests. Notwithstanding the foregoing or anything to the contrary herein,

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 25 of 52

the Plan shall not prejudice or otherwise effect any Claims or rights Mr. Christ may hold other than his Class 9 Equity Interests hereunder.

# ARTICLE V.
## CLAIMS OBJECTIONS AND TREATMENT OF DISPUTED CLAIMS

### A.     Administration of Claims

Except as otherwise provided for herein, each Claim shall be allowed or disallowed, as the case may be, in such amount as the Court shall determine, whether prior to or following Confirmation, and whether pursuant to this Plan or otherwise, upon such notice as the Bankruptcy Court or Bankruptcy Rules shall permit except that, after the Effective Date, and except as provided for herein with respect to EB-5 Plaintiffs Claims, the Post-Effective Date Debtors may settle or compromise any controversies regarding Claims without notice or further order of the Court.  The deadline to object to Claims shall be sixty (60) days after the Effective Date of the Plan.  Following the Effective Date, the Court shall conduct such hearings as are necessary and enter a Final Order (the "EB-5 Plaintiffs Claims Order") on the EB-5 Claim Objection allowing or disallowing (and otherwise determining the amount, if any, owed to the EB-5 Plaintiffs and against which Debtor or Debtors, if any, on account of) the EB-5 Plaintiffs Claims.  Without limiting the generality of the foregoing, the Mezz Lender shall be entitled to join in the EB-5 Plaintiffs Claims Objection and participate in all proceedings relating thereto.

### B.     Defenses and Counterclaims Assigned to Post-Effective Date Debtors

Without limiting the generality of the provisions of **Article X.A.** and **Article X.G.** hereof, on the Effective Date, all defenses, counterclaims and setoffs, whether equitable or legal, of the Debtors to Claims held or asserted to be held against any of the Debtors shall be deemed to remain in, vest in, or be assigned to the Post-Effective Date Debtors, and the Post-Effective Date Debtors, as shall be entitled to assert any and all such defenses, counterclaims, and setoffs subject to the other provisions of this Plan.  Any Claim that becomes an Allowed Claim pursuant to the provisions of this Plan shall not be subject to any objection to such Allowed Claim.  Moreover, only the Post-Effective Date Debtors shall be entitled to object to Claims as of the Effective Date.  Any objection to Claims by the Post-Effective Date Debtors must be filed and served in accordance with Bankruptcy Rule 3007; provided, however, that the foregoing Bankruptcy Rule 3007 limitations do not apply to any Claims filed subsequent to Confirmation.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 26 of 52

## C.    No Distribution on Disputed Claims

Notwithstanding any provision of the Plan specifying the time for payment of distributions to Holders of Claims, no payment or distribution shall be made to the Holder of a Claim until such Claim becomes an Allowed Claim, whether pursuant to the terms of the Plan or otherwise by entry of a Final Order.  For the avoidance of doubt, each of the Claims in Class 1, Class 2 and Class 3 shall be an Allowed Claim upon Confirmation.

## D.    Post-Petition Interest on Claims.

Except as otherwise provided in this Plan, the Confirmation Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code as otherwise, no postpetition interest shall accrue or be payable with respect to any Claim or Equity Interest.

## E.    Payments and Distributions with respect to Disputed Claims

If a portion of a Claim is a Disputed Claim or is otherwise undetermined as of the Effective Date, the Debtor, the Post-Effective Date Debtors, or the Disbursing Agent, as the case may be, shall not be required to make any payment or distribution provided hereunder on account of such Claim unless and until such Disputed Claim or otherwise undetermined Claim becomes an Allowed Claim.

## F.    Distributions after Allowances

To the extent that a Disputed Claim becomes an Allowed Claim, the Holder thereof shall be entitled to the distributions, if any, to which such Holder is then entitled as provided in this Plan.

## G.    Estimation of Claims; Claim Reserves.

1.    The Debtors or the Post-Effective Date Debtors, as applicable, may (a) determine, resolve, and otherwise adjudicate all contingent, unliquidated, and Disputed Claims in the Bankruptcy Court, and (b) at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 27 of 52

Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Post-Effective Date Debtors, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim; provided that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

2.     Subject to the procedures set forth in this **Article V.G** hereof with respect to any Claim or Equity Interest, including any Administrative Expense Claim, that, as of the Confirmation Date, is a contingent, unliquidated, or Disputed Claim, the Debtors or the Post-Effective Date Debtors, as applicable, may request that the Bankruptcy Court estimate such Claim for distribution purposes pursuant to Section 502(c) of the Bankruptcy Code and, in such event, shall request that the Bankruptcy Court establish a maximum limitation each on such Claim.

3.     Not later than ten (10) days prior to the Effective Date, the Debtors shall provide the Senior Lender, the Mezz Lender, the EB-5 Lender, and the Hotel Buyer with:

(a)     an estimate of Effective Date Cash, broken down by estimates of Existing Cash and Sale Proceeds as of the Effective Date;

(b)     a schedule, broken down by Debtor and by Claim, of all Allowed Claims expected to be paid in full, in Cash on the Effective Date (when finalized, the "Effective Date Allowed Claims Schedule") pursuant to the provisions of this Plan;

(c)     in connection with establishing a reserve for the payment of any such Disputed Claims that may be subsequently Allowed (the "Disputed Administrative Expense Reserve"), a schedule, broken down by Debtor and by Claim, of all Administrative Expense Claims (other than Fee Claims), if any, that are (or that are expected to be) Disputed and a reasonable estimate of the amount of each such Claim (when finalized, "Disputed Administrative Expense Reserve Projection");

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 28 of 52

(d)  in connection with establishing the Fee Claim Reserve, a schedule, broken down by Claim, of the Fee Claim Reserve (when finalized, the "Fee Claims Reserve Projection");

(e)  in connection with establishing a reserve for the payment of such expenses (the "Operating Expenses Reserve"), a schedule of the operating and other expenses (other than Fee Claims) relating to the Hotel and the Estates for the period through the Effective Date that are anticipated but have not yet been or cannot yet be invoiced or finally determined and otherwise remain or will be obligations of the Estates and a reasonable estimate of each such expense (when finalized, the "Operating Expenses Reserve Projection");

(f)  in connection with establishing a reserve for the payment of any such Disputed Claims that may be subsequently Allowed (when finalized, the "Disputed Priority Tax Claim Reserve"), a schedule, broken down by Debtor and by Claim, of all Priority Tax Claims, if any, that are (or are expected to be) Disputed and a reasonable estimate of the amount of each such Claim (when finalized, the "Disputed Priority Tax Claim Reserve Projection");

(g)  in connection with establishing a reserve for the payment of any such Disputed Claims that may be subsequently Allowed (the "Disputed Priority Non-Tax Claim Reserve"), a schedule, broken down by Debtor and by Claim, of all Priority Non-Tax Claims, if any, that are (or are expected to be) Disputed and a reasonable estimate of the amount of each Claim (when finalized, the "Disputed Priority Non-Tax Claim Reserve Projection");

(h)  in connection with establishing a reserve for the payment of any such Disputed Claim that may be subsequently Allowed (the "Disputed General Unsecured Claims Reserve"), a schedule of all General Unsecured Claims in Class 4 (other than EB-5 Plaintiffs Claims) that are (or are expected to be) Disputed and a reasonable estimate of the amount of each such Claim, (when

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 29 of 52

finalized, the "Disputed General Unsecured Claims Reserve Projection"). On the Effective Date, pending entry of the EB-5 Plaintiffs Claims Order, and after (i) payment in full of the Class 1 Allowed Claim, (ii) payment in full of all Allowed Claims in Class 4, and (iii) if applicable, the funding of the Disputed General Unsecured Claims Reserve relative to Disputed Claims in Class 4, Hotel Debtor shall reserve and not distribute Plan Cash in the amount $32,450,000 (the "EB-5 Plaintiffs Set-Aside"). Without limiting the generality of the foregoing, the EB-5 Plaintiffs Set-Aside is intended to ensure a source of payment for the EB-5 Plaintiffs Claims should they be (and to the extent that they are) subsequently allowed pursuant to the EB-5 Plaintiffs Claims Order as Class 4 Claims against Hotel Debtor; and for the avoidance of doubt, no Effective Date Cash or other distributions shall be made to the EB-5 Debtor, the Holder of the Class 3 Claim or the EB-5 Plaintiffs on or after the Effective Date absent entry of the EB-5 Plaintiffs Claims Order or other Final Order of the Court following Notice and Hearing; and

(i) in connection with establishing a reserve for the payment of any such expenses (the "Post-Effective Date Expense Reserve"), a projection, broken down by Debtor, of the fees and expenses to be incurred by or on behalf of the Post-Effective Date Debtors, including by any Disbursing Agent, in the administration of the Estates, including in connection with the resolution of any Disputed Claims, during the period, starting on the Effective Date and ending on the sixth month anniversary of the Effective Date (when finalized, the "Post-Effective Date Expense Reserve Projection").

Thereafter, and in advance of the Effective Date, the Debtors, shall (a) determine the actual amount of the Effective Date Cash, (b) finalize the Effective Date Allowed Claims Schedule, (c) finalize each Claim Reserve Projection, and (d) based on the foregoing, compile a summary of the payments to be made and the reserves to be established on the Effective Date (such summary, the "Effective Date Sources and Uses Statement"), which shall be filed in the Chapter 11 Cases within five Business Days of the Effective Date. On the Effective Date, the Debtors shall (1) pay all

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 28
771115221.3

Exhibit 6 Page 30 of 52

Allowed Claims set forth on the Effective Date Allowed Claims Schedule from Effective Date Cash in accordance with the provisions of this Plan, (2) establish each such Claim Reserve based on and consistent with the applicable Claim Reserve Projection, (3) set aside, and not distribute on the Effective Date, Effective Date Cash in an amount equal to the aggregate amount set forth in the Claim Reserve Projections, and (4) distribute all remaining Effective Date Cash to Mezz Debtor pending entry of the EB-5 Plaintiffs Claims Order as required pursuant to the provisions of this Plan. The Post-Effective Date Debtors or the Disbursing Agent, as applicable, shall thereafter maintain the Claim Reserves pending final allowance or disallowance of each Disputed Claim or final determination of any such valid expense. Upon the allowance or disallowance of each such Disputed Claim or the determination of each valid expense, as applicable, the applicable Post-Effective Date Debtor or the Disbursing Agent, as applicable, shall (1) pay the newly Allowed amount of the subject Disputed Claim or valid expense to the applicable claimholder pursuant to the provisions of this Plan, and (2) treat the balance in respect of the disallowed amount of such Claim or expense as Post-Effective Date Plan Cash for further distribution pursuant to the provisions of this Plan, including **Article IV** hereof. Specifically, following entry of the EB-5 Plaintiffs Claims Order, Hotel Debtor shall distribute to the Holders of the EB-5 Plaintiffs Claims funds in payment of the amount of such Claims (if any) allowed as a Class 4 Claim against Hotel Debtor pursuant to the EB-5 Plaintiffs Claims Order, and any remaining funds shall be distributed as provided for in the Plan. For avoidance of doubt, only the Fee Claim Reserve and the Post-Effective Date Expense Reserve shall be separate, segregated bank accounts; each other Claim Reserve shall be maintained as an accounting matter only, and the amounts relating thereto may remain with the Post-Effective Debtors in a single bank account.

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption of Certain Executory Contracts

Pursuant to Bankruptcy Code §§ 365(a) and (f), the Plan constitutes a motion to (i) assume the Final Purchase Agreement; (ii) assume the Hotel Management Agreement and each of the contracts and leases set forth in Exhibit C hereto (collectively, including the Hotel Management Agreement, the "Assumed Contracts"); and (iii) upon the Effective Date, assign each of the Assumed Contracts to Hotel Buyer. Hotel Manager has consented to assumption of the Hotel

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 29
771115221.3

Exhibit 6 Page 31 of 52

Management Agreement and agrees that no Cure will be due in connection with such assumption. Hotel Buyer has consented to (a) the assumption of the Final Purchase Agreement and agrees that no Cure will be due in connection with such assumption; and (b) the assignment of each of the Assumed Contracts and agrees to be bound by each according to their existing terms and conditions. For the avoidance of doubt, the Plan does not provide for any Cure as to the Final Purchase Agreement or any Assumed Contract.

The Debtors may designate, in consultation with the Hotel Buyer and in accordance with the Purchase Agreement, additional executory contracts and unexpired leases (the "Additional Assumed Contracts") for assumption and assignment to the Hotel Buyer until five Business Days prior to the Effective Date, and the Debtors shall file and serve as soon as reasonably practicable a notice of such designation on each of the affected counterparties and their counsel of record, if any, indicating (i) that the Debtors intend to assume and assign to the Hotel Buyer such counterparty's executory contract or unexpired lease; and (ii) the corresponding Cure Amount. Such affected counterparties shall have until the date that is seven days after the date of filing and service of such notice of designation to object to the assumption and/or the proposed Cure Amount.

## B. Rejection of Executory Contracts and Unexpired Leases

The Plan constitutes a motion by the Debtors to reject all executory contracts and unexpired leases of the Debtors, other than the Final Purchase Agreement, Assumed Contracts, and any Additional Assumed Contracts, as of the Effective Date that are subject to rejection under 11 U.S.C. § 365. Any Claim arising from the rejection of an executory contract or unexpired lease is a Class 4 Claim to the extent it is an Allowed Claim. Any Entity holding a Claim based upon the rejection of an executory contract or unexpired lease pursuant to this Section VI.B must file a Proof of Claim with the Bankruptcy Court within thirty (30) days after the Effective Date. The failure of any such Entity to file a Proof of Claim within the specified time period will result in the disallowance of such Claim.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 32 of 52

# ARTICLE VII.
## MEANS FOR EXECUTION OF THE PLAN

**A.    No Substantive Consolidation.**

This Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate Chapter 11 plan of reorganization for each Debtor. This Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Equity Interests set forth in this Plan. The Assets of each Debtor's Estate shall be separately maintained and accounted for, and used exclusively for, distribution on account of Claims and Equity Interests of such Estate. Nothing under this Plan shall make any Debtor liable for the Claims or Equity Interests against the other Debtor.

**B.    Sale of Hotel Free and Clear**

On the Effective Date, and in accordance with this Plan and the Final Purchase Agreement, and subject to the satisfaction or waiver of all applicable conditions thereof, including that the Sale Order and the Confirmation Order shall have been entered and shall have become Final Orders (unless such finality requirement shall have been waived by the Hotel Buyer), Hotel Debtor shall sell the Hotel to the Hotel Buyer pursuant to the provisions of the Final Purchase Agreement. The Final Purchase Agreement provides, and the Plan adopts by this reference, that Hotel Buyer shall close the Sale Transaction on or before the Effective Date so long as (a) the Confirmation Order becomes a Final Order not later than December 15, 2024, unless such finality requirement has been waived by Hotel Buyer; and (b) Hotel Buyer Closes the Sale Transaction within thirty (30) days after the Confirmation Order becomes a Final Order. The Net Proceeds from the Sale Transaction shall be sufficient to pay in full the Allowed Claims in Class 1, Class 2, Class 4 and Class 5 and all Administrative Expense Claims and Priority Tax Claims and provide a significant distribution on account of the Class 3 Claim. Pursuant to Bankruptcy Code sections 1123(a)(5)(D) and 1141(c) and other applicable authority, the Closing and the conveyance and transfer of the Hotel to Hotel Buyer shall be free and clear of all Liens, Claims and interests of any kind whatsoever (except solely for Permitted Exceptions), and the Hotel Buyer shall have not have any liability for such Claims, Liens, encumbrances, charges, liabilities, and other interests whatsoever (other than to the extent provided in the Final Purchase Agreement).

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 33 of 52

## C. Allocation and Distribution of Sale Proceeds and Other Cash of the Estates.

1. The term "<u>Plan Cash</u>" means the sum of (i) the aggregate amount of Cash on hand in the Estates on the Effective Date (the "<u>Existing Cash</u>"), including the aggregate amount then on deposit in the debtor-in-possession accounts subject to the Cash Collateral Orders, but excluding any Sale Proceeds, (ii) the aggregate amount of Cash ultimately received by Hotel Debtor as Net Proceeds from the Sale Transaction (the "<u>Sale Proceeds</u>"), and (iii) the aggregate amount of Cash received by Post-Effective Date Hotel Debtor or Post-Effective Date Mezz Debtor after the Effective Date relating to pre-Effective Date operations or from any other sources, including, without limitation, any net recoveries from the successful prosecutions or settlement of any Estate Causes of Action, including any Avoidance Actions. The Plan Cash shall be the sole source of distributions under this Plan.

2. On the Effective Date, the Debtors or the Disbursing Agent shall use the Existing Cash and the Sale Proceeds actually received by Hotel Debtor on or before such date in accordance with the Final Purchase Agreement (collectively, the "<u>Effective Date Cash</u>") to make the payments provided in Article IV of this Plan. On the Effective Date, the Debtors or the Disbursing Agent, as applicable, also shall set aside, and not distribute on the Effective Date, Effective Date Cash in an amount equal to the aggregate amount set forth in the Claim Reserves and the EB-5 Plaintiffs Set-Aside. Following the making of all such payments and funding and the establishment of all such reserves, the remaining Effective Date Cash shall be distributed or deemed distributed to Mezz Debtor pursuant to the provisions of this Plan.

3. Plan Cash that becomes available for distribution after the Effective Date ("<u>Post-Effective Date Plan Cash</u>") shall consist of (i) Sale Proceeds received by the Post-Effective Date Hotel Debtor after the Effective Date from any escrow or reserve established under the Final Purchase Agreement, (ii) amounts previously set aside or reserved on the Effective Date that subsequently have been determined as no longer being needed to satisfy any of the Claims for which such amounts were set aside or reserved, and (iii) amounts received by Post-Effective Date Hotel Debtor or Post-Effective Date Mezz Debtor after the Effective Date relating to pre-Effective Date operations or from any other sources. Any Post-Effective Date Plan Cash, as and when received, shall be distributed by the Post-Effective Date Debtors or the Disbursing Agent, as applicable, to Mezz Debtor pending entry of the EB-5 Plaintiffs

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 34 of 52

Claims Order, and after entry of the EB-5 Plaintiffs Claims Order and to the extent of any remaining Post-Effective Date Cash shall be distributed in accordance with provisions of this Plan. until the Class 3 Claim is paid in full in Cash, whereupon any distributions of any additional and remaining Post-Effective Date Plan Cash shall be distributed Pro Rata to Holders of Allowed Class 6 Claims until the earlier to occur of (i) the payment in full in Cash of all Allowed Class 6 Claims and (ii) the determination reasonably made by the Debtors or the Disbursing Agent that all Post-Effective Date Cash (other than the amount of the Post-Effective Date Expense Reserve projected to be used to fund the payment of Wind Down expenses) has been distributed and no additional Post-Effective Date Cash is expected to be received (in either instance, and assuming prior completion of all distributions on account of all Allowed Administrative Claims (other than that portion of the Post-Effective Date Expense Reserve projected to be used to fund the payment of Wind Down expenses), Allowed Priority Non-Tax Claims, Allowed Priority Tax Claims, and Allowed Class 1, 2, and 4 Claims, the "Completed Plan Distribution"). At the request of the EB-5 Lender, the Post-Effective Date Debtors shall file periodic reports in the Chapter 11 Cases setting forth the dates any Post-Effective Date Cash was received (or released from a Claim Reserve), the amounts thereof, and the distributions then made therewith. Notwithstanding any other provision of this Plan to the contrary, and consistent with the foregoing definition of Completed Plan Distribution, any Post-Effective Date Cash shall first be used to pay Allowed Administrative Expense Claims, Allowed Priority Non-Tax Claim, Allowed Priority Tax Claims, and Allowed Class 1-5 Claims to the extent that any Claim Reserves established hereunder prove insufficient to pay such Allowed Claims in full in Cash before any such Post-Effective Date Cash shall be used to make any further distributions on account of Class 3 or Class 6 Claims.

**D.**     **Continued Corporate Existence and Vesting of Assets in the Post-Effective Date Debtors; Wind Down and Dissolution of the Debtors; Further Transactions.**

1.     Upon the occurrence of the Completed Plan Distribution, all in accordance with the provisions of this Plan, the Post-Effective Debtors may take (but shall not be required to take) any and all actions that are necessary or appropriate to effectuate the Wind Down of the Post-Effective Debtors.

2.     The applicable Post-Effective Date Debtor may act through any manager, managing member, board of managers, board of directors, or equivalent

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 33
771115221.3

Exhibit 6 Page 35 of 52

governing body, as applicable, and through officers, subject to the provisions hereof (and all certificates of formation and limited liability company agreements and certificates of incorporation or by-laws, or equivalent governing documents and all other related documents (including membership agreements, stockholders agreements, or similar instruments), as applicable, are deemed amended pursuant to this Plan to permit and authorize the same). The applicable Post-Effective Date Debtor may be compensated and may be reimbursed for reasonable costs and expenses only to the extent of available funds previously reserved as part of the Fee Claim Reserve or in the Post-Effective Date Expense Reserve.

3. The Post-Effective Debtors, without the need for Bankruptcy Court approval, are authorized to carry out and implement all provisions of this Plan, including, without limitation, to: (i) subject to the provisions of this Plan, implement the Wind Down as expeditiously as reasonably possible and administer the liquidation, dissolution, sale, and/or abandonment or similar action of the Debtors and their Estates and any Assets held by the Post-Effective Debtors after the Effective Date; (ii) except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise, or settle any and all Disputed Claims against the Debtors, each subject to the consent rights provided for herein; (iii) make distributions to holders of Allowed Claims in accordance with this Plan; (iv) prosecute the Avoidance Actions and all other Causes of Action on behalf of Post-Effective Debtors (but only against Persons without Allowed Claims against either Estate), elect not to pursue any Avoidance Actions and Causes of Action, determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Avoidance Actions and Causes of Action, as determined to be in the best interests of each of the Post-Effective Debtors; (v) create and fund, as necessary, any reserves required under this Plan, including for Disputed Claims and other such reserves as the Post-Effective Date Debtors deem necessary and appropriate to carry out the provisions of this Plan; (vi) retain and compensate professionals to assist in performing its duties under this Plan; (vii) maintain the books, records, and accounts of the Debtors; (viii) complete and file, as necessary, all final or otherwise required federal, state, and local tax returns and other tax reports for the Debtors or the Post-Effective Debtors; (ix) represent the interests of the applicable Debtors, their Estates, or the Post-Effective Debtors before any taxing authority in all matters including, without limitations, any action, suit, proceeding, appeal, or audit; and (x) appoint and compensate an agent to effectuate distributions under this Plan; and (xi) perform

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 34
771115221.3

Exhibit 6 Page 36 of 52

other duties and functions that are consistent with the implementation of this Plan or required by the Bankruptcy Code.

4. The Post-Effective Date Debtors shall pay any and all reasonable and documented costs and expenses incurred in connection with the Wind Down of the Post-Effective Debtors, including the reasonable fees and expenses of their professionals, without further order of the Bankruptcy Court, provided that the Completed Plan Distribution shall have been completed prior to the incurrence of any such expenses.

5. The Debtors or the Disbursing Agent shall make an initial distribution on the Effective Date and thereafter, the Post-Effective Date Debtors or the Disbursing Agent shall, in an expeditious but orderly manner, make timely distributions pursuant to this Plan and the Confirmation Order.

6. All matters provided for herein involving the corporate structure of the Debtors, or the Post-Effective Debtors, to the extent applicable, or any corporate or related action required by the Debtors or the Post-Effective Debtors in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, or directors or managers of the Debtors or the Post-Effective Debtors, and with like effect as though such action had been taken unanimously by the stockholders, members, directors, managers, or officers, as applicable, of the Debtors or Post-Effective Debtors. Subject to **Article VII.D.5.** hereof, the Post-Effective Date Debtors shall be authorized to file on behalf of the Debtors, certificates of dissolution and any and all other corporate and company documents necessary to effectuate the Wind Down of the Post-Effective Debtors without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, the board of directors, or board of directors or similar governing body of the Post-Effective Debtors.

7. All directors and officers of the Debtors shall be deemed to remain in such capacities unless they have resigned or otherwise have ceased being officers and directors.

8. Upon the Effective Date, all actions contemplated by this Plan (whether to occur before, on, or after the Effective Date) shall be deemed authorized and approved in all respects, in each case, in accordance with and subject to the terms hereof. All matters provided for in this Plan involving the corporate or limited

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 35
771115221.3

Exhibit 6 Page 37 of 52

liability company structure of the Debtors and the Post-Effective Debtors, and any corporate or limited liability company action required by the Debtors or the Post-Effective Debtors, in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors, managers, or officers of the Debtors or the Post-Effective Debtors.  On or (as applicable) before the Effective Date, the authorized officers of the Debtors or the Post-Effective Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Post-Effective Debtors, including, but not limited to, any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this **Article VII.D.8** shall be effective notwithstanding any requirements under non-bankruptcy law.

9.      On or as soon as practicable after the Effective Date, the Post-Effective Date Debtors may take such actions as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, subject in all respects to the provisions of this Plan, and the rights vested in the Waterfall Parties and the Hotel Buyer, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, transition services, or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Persons may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; and (iv) all other actions that the applicable Persons determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law or to reincorporate in another jurisdiction.

**E.      Cancellation of Liens.**

Except as otherwise specifically provided with respect to the Class 3 Claim or in the Sale Order or in the Confirmation Order, any Lien securing any Claim shall

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 38 of 52

be deemed released on the Effective Date, and the holder of such Secured Claim shall be directed to release any collateral or other property of the Debtors (including any Cash Collateral) held by such holder and to take such actions as may be requested by the Debtors or the Post-Effective Date Debtors, as applicable, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Debtors or the Post-Effective Date Debtors or the Hotel Buyer, as applicable.

**F.      Subordination Agreements.**

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective Distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Section 510(b) of the Bankruptcy Code, or otherwise.

**G.      Closing of the Chapter 11 Cases.**

No earlier than the occurrence of the Completed Plan Distribution the Post-Effective Debtors may seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**H.      Notice of Effective Date.**

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

**I.      Continued Operations of Hotel**

Pending the occurrence of the Effective Date, Hotel Debtor shall continue to own, maintain and (with the assistance of Hyatt as manager of the Hotel) operate and manage the Hotel pursuant to Hotel Management Agreement in the ordinary course of business without further notice or order of the Court pending the Closing.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 39 of 52

**J.      Maintenance of Insurance**

The Post-Effective Date Debtors shall continue to maintain insurance coverage in the same or more favorable amounts and type as the Debtors held as of the Petition Date until the Closing.

**ARTICLE VIII.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**OF THIS PLAN AND THE EFFECTIVE DATE.**

**A.      Conditions Precedent to Confirmation of this Plan.**

The following are conditions precedent to confirmation of this Plan:

1.      the Disclosure Statement Order shall have been entered;

2.      the Final Purchase Agreement shall not have been terminated and shall be in full force and effect;

3.      the Final Purchase Agreement shall not have been terminated and shall be in full force and effect; and

4.      the Cash Collateral Orders shall be in full force and effect in accordance with the terms thereof, and no default shall be continuing thereunder or occur as a result of entry of the Confirmation Order.

**B.      Conditions Precedent to the Effective Date.**

The following are conditions precedent to the Effective Date of this Plan:

1.      the Confirmation Order shall have been entered as to each Debtor and shall have become a Final Order (unless such finality requirement shall have been waived by the Senior Lender, the Mezz Lender, and the Hotel Buyer) and shall be in full force and effect; provided that (i) the Confirmation Order shall include a finding by the Bankruptcy Court that the sale of the Property to the Hotel Buyer pursuant to the Final Purchase Agreement shall be free and clear of all Claims, Liens, encumbrances, charges, liabilities, and other interests of any kind, including rights or Claims based on successor or transferee liabilities, in each case, other than to the extent provided in the Final Purchase Agreement and (ii) any other provisions in the

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 40 of 52

Confirmation Order regarding the Sale Transaction shall be in form and substance acceptable to the Hotel Buyer;

2.      the Sale Order (to the extent it is not incorporated in the Confirmation Order), which shall be in form and substance acceptable to the Debtors and the Hotel Buyer, shall have been entered as to the Debtors and shall have become a Final Order (unless such finality requirement shall have been waived by the Senior Lender, the Mezz Lender, and the Hotel Buyer) and shall be in full force and effect; provided that the Sale Order shall include a finding by the Bankruptcy Court that the sale of the Hotel to the Hotel Buyer pursuant to the Final Purchase Agreement shall be free and clear of all Claims, Liens, encumbrances, charges, liabilities, and other interests of any kind, including rights or Claims based on successor or transferee liabilities, in each case, other than to the extent provided in the Final Purchase Agreement.

3.      the Cash Collateral Orders shall be in full force and effect in accordance with the terms thereof, and no default shall be continuing thereunder (unless any such defendant shall have been waived by the Senior Lender and the Mezz Lender);

4.      all actions, documents, and agreements necessary to implement and consummate this Plan shall have been effected or executed and binding on all parties thereto and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

5.      all governmental approvals and consents, including Bankruptcy Court approval, necessary in connection with the Sale Transaction shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on the Sale Transaction;

6.      the Final Purchase Agreement shall have been executed by Hotel Debtor and the Hotel Buyer, all conditions precedent to the occurrence of the Closing Date under the Final Purchase Agreement shall have been satisfied or waived in the manner set forth in the Final Purchase Agreement, and Hotel Debtor shall have actually received all Sale Proceeds in Cash that Hotel Debtor is entitled to receive on such Closing Date in accordance with the provisions of the Final Purchase Agreement;

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 39
771115221.3

Exhibit 6 Page 41 of 52

7.    in accordance with **Article V.G.** hereof, (i) the actual amount of the Effective Date Cash shall have been determined, (ii) the Effective Date Allowed Claims Schedule shall have been finalized, (iii) each Claim Reserve shall have been established (and Effective Date Cash set aside as an accounting matter) based on and consistent with the applicable Claim Reserve Projection, (iv) the Effective Date Sources and Uses Statement shall have been finalized, (v) the Senior Lender shall have received payment in full in Cash of its Class 1 Claim, (vi) the Mezz Lender shall have received payment in full in Cash of its Class 2 Claim, and (vii) the Debtors shall have distributed or set aside such Effective Date Cash in accordance with the provisions of this Plan, including in payment of the other Allowed Claims set forth on the Effective Date Allowed Claims Schedule, all as set forth on the Effective Date Sources and Uses Statement.

Notwithstanding when a condition precedent to the Effective Date occurs, for purposes of this Plan, satisfaction of such conditions precedent shall be deemed to have occurred simultaneously on the Effective Date, and no such action shall be deemed to have occurred prior to the taking of any other such action; provided that, to the extent a condition precedent (a "Prerequisite Condition") may be required to occur prior to another condition precedent (a "Subsequent Condition"), then, for purposes of this Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to a Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

**C.    No Stay of the Confirmation Order.**

The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

**D.    Effect of Failure of a Condition.**

If the conditions listed in this Article VIII of this Plan are not satisfied on or before the date on which the Final Purchase Agreement may be terminated by the Buyer pursuant to Section 8.4 thereof, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims by or against or any Equity Interests in the Debtors, (b) prejudice in any manner the rights of any Person, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, the Senior Lender, the Mezz Lender, or any other Person.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 42 of 52

# ARTICLE IX.
## MISCELLANEOUS PROVISIONS

**A.  Unnegotiated Distribution Checks**

Pursuant to § 347 of the Bankruptcy Code, ninety (90) days after any distribution to any Creditor by the Post-Effective Date Debtors provided for herein, the Post-Effective Date Debtors shall stop payment on any check on such distribution remaining unpaid to a Holder of an Allowed Claim and such funds (the "Unclaimed Funds") shall be returned to the Post-Effective Date Debtors.  From and after the date the Post-Effective Date Debtors stop payment on any distribution check pursuant to this paragraph, the Holder of the Allowed Claim on account of which such check was issued shall be entitled to receive no further distributions on account of his claim and such Holder's Allowed Claim shall thereupon be deemed satisfied in full.

**B.  Mailing List; Returned Distribution Checks**

The official listing of Creditor identities and mailing addresses is maintained by the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Western District of Washington (the "Official Mailing List").  It shall be the obligation of each Creditor and/or party in interest to assure that the Official Mailing List is current and accurate as to each such Person.  In the event that a distribution check, that has been properly posted to the Person's address as set forth in the Official Mailing List, is returned as undeliverable by the United States Postal Service, the Post-Effective Date Debtors shall be authorized, but not required, to void such check with the applicable funds becoming subject to further distribution pursuant to this Plan, and the Claim of such Creditor being deemed satisfied in full.

**C.  Administrative Claim Bar Date**

The deadline for submission of all Claims entitled to priority pursuant to § 503(b) of the Bankruptcy Code incurred prior to Confirmation, with the exception of fees and costs of Professional Persons, shall be thirty (30) days following the Effective Date.  Failure to file a Claim by this date shall conclusively bar the claimant from asserting his Claim, which Claim shall be forever discharged.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 43 of 52

**D.     Payments Shall Be Timely**

The Debtors or the Post-Effective Date, as the case may be, Debtors shall timely make all payments required under this Plan.  Without limiting the generality of the foregoing, the Debtors or the Post-Effective Date Debtors, as the case may be, shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) following Confirmation of the Plan until the case is closed. After Confirmation of the Plan, the Post-Effective Date Debtors shall serve on the United States Trustee quarterly a financial report for each quarter (or portion thereof) the case remains open.   The financial report shall include a statement of all disbursements made during the course of the relevant quarter, whether or not pursuant to the Plan.

**E.     Employment of Professional Persons**

The Post-Effective Date Debtors shall be authorized to employ and compensate Professionals Persons following Confirmation upon such terms as the Post-Effective Date Debtors deem reasonable and appropriate without further notice or order of the Court.

**F.     Event of Default; Consequence of Default**

An event of default shall occur if the Post-Effective Date Debtors fail to fulfill any material term of the Plan, including any payment due under the Plan.  In such an event, the party alleging such default shall provide written notice of the alleged default to the Post-Effective Date Debtors and their attorneys (the "Default Notice"), at each of the following addresses, which shall be deemed received (i) if by Federal Express or expedited delivery service, the confirmed date of delivery; (ii) if by electronic mail, the date of the transmission of such electronic mail; and (iii) if by U.S. Mail, the third Business Day thereafter:

> Michael Christ
> 10625 SE 240th PMB #115
> Kent, WA 98031
> mchrist@secodev.com

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 42
771115221.3

Exhibit 6 Page 44 of 52

And:

> James L. Day
> Christine M. Tobin-Presser
> Jason E. Wax
> Bush Kornfeld LLP
> 601 Union Street, Suite 5000
> Seattle, WA 98101-2373
> Phone: 206-292-2110
> Fax: 206-292-2104
> Emails: jday@bskd.com, ctobin@bskd.com, jwax@bskd.com

If, after forty-five (45) days following the Post-Effective Date Debtors' and their counsel's receipt of the Default Notice, the Post-Effective Date Debtors and such party have been unable to resolve, or the Post-Effective Date have been unable to cure, the asserted default, such party may proceed with any remedies available to it under applicable law, provided that nothing herein shall limit or affect the Post-Effective Date Debtors' right to seek appropriate relief from any court of competent jurisdiction.

**G.     No Transfer Tax on Sale.**

Pursuant to Bankruptcy Code section 1146(a) and WAC 458-61A-207, a sale of the Hotel at any time following Confirmation shall not be subject to any real estate excise tax, or any other tax within the scope of section 1146(a). For the avoidance of doubt, this exemption shall apply to the Sale Transaction and through and including the Effective Date.

**ARTICLE X.**
**EFFECT OF CONFIRMATION OF THIS PLAN**

**A.     Vesting of Assets.**

1.     On the Effective Date, pursuant to Sections 1141(b) and (c) of the Bankruptcy Code, (i) the Hotel acquired by the Hotel Buyer pursuant to the Final Purchase Agreement shall be transferred to the Hotel Buyer free and clear of all Claims, Liens, encumbrances, charges, and other interests except as provided pursuant to such Agreement, this Plan, and the Confirmation Order, and the Hotel Buyer shall have not have any liability for such Claims, Liens, encumbrances, charges, liabilities, and other interests whatsoever (other than to the extent provided

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 43
771115221.3

Exhibit 6 Page 45 of 52

in the Final Purchase Agreement); and (ii) all remaining property of the Debtors' Estates shall remain in, or vest in, as applicable, the Post-Effective Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to this Plan and the Confirmation Order, subject to compliance with the terms of the Plan and the Confirmation Order.

2.     On the Effective Date, the Post-Effective Date Debtors shall continue to exist in accordance with the laws of the jurisdiction in which each is formed and pursuant to its operating agreement in effect prior to the Effective Date, except to the extent such Operating Agreement is amended under the Plan.  Except as otherwise provided in the Plan, on and after the Effective Date, each item of property of the Debtors, including all Claims, rights and causes of action and any property acquired by the Debtors shall vest in the Post-Effective Date Debtors free and clear of all Claims, Liens, charges, other encumbrances and interests.  Property revested in the Debtors shall not include the Hotel or other property transferred to the Hotel Buyer pursuant the Final Purchase Agreement and the closing of the Sale Transaction.  On and after the Effective Date, the Post-Effective Date Debtors may take any action, including, without limitation, the operation of their businesses; the use, acquisition, sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein.

**B.     Binding Effect.**

1.     The distributions made to the various Classes of Creditors as provided for in this Plan shall be in full and complete satisfaction of their Allowed Claims and Allowed Interests.  As of the Effective Date, this Plan shall bind all holders of Claims against and Equity Interests in the Debtors and their respective successors and assigns, notwithstanding whether such Person's Claim was scheduled or whether any such holders are (a) Impaired or Unimpaired under this Plan, (b) presumed to accept or deemed to reject this Plan, (c) failed to vote to accept or reject this Plan, (d) voted to reject this Plan, or (e) will receive any distribution under this Plan.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 44
771115221.3

Exhibit 6 Page 46 of 52

**C. Term of Injunctions or Stays.**

Unless otherwise provided in this Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until the closing of both of the Chapter 11 Cases.

**D. Injunction.**

**1. Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan in relation to any Claim resolved, extinguished, discharged, or released pursuant to this Plan; provided, however, the foregoing shall not enjoin or prevent any party from taking any action to enforce any rights or obligations granted pursuant to this Plan.**

**2. Except as expressly provided in this Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Post-Effective Date Debtors and a holder of a Claim against or Equity Interest in the Debtors, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtors (whether or not proof of such Claims or Interests has been filed and whether or not such Persons vote in favor of or against, or abstain from voting on, this Plan or are presumed to have accepted or deemed to have rejected this Plan) and other parties-in-interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action against the Debtors that will be or are treated, satisfied or deemed satisfied, extinguished, discharged, or released pursuant to this Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtors or the Post-Effective Debtors, or the property of any of the Debtors or the Post-Effective Debtors; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award,**

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 47 of 52

decree, or order against the Debtors or the Post-Effective Debtors, or the property of any of the Debtors or the Post-Effective Debtors; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the Post-Effective Debtors, or the property of any of the Debtors or the Post-Effective Debtors; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors or the Post-Effective Debtors, or against property or interests in property of either of the Debtors or the Post-Effective Debtors, except as contemplated or Allowed by this Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan.

3. The injunctions in this Article X.D. shall extend to any successors of the Debtors (including the Post-Effective Debtors) and their respective property and interests in property.

E. **Effective Date Releases.**

1. **Estate Releases.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the transactions contemplated hereby, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the services rendered by the Released Parties to facilitate the implementation of this Plan, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties shall be deemed released and discharged, to the maximum extent permitted by law, by the Debtors and their Estates, and the Post-Effective Debtors, in each case, on behalf of themselves and their respective successors, assigns, and representatives, solely in their capacities as such, and any and all other persons to the extent that they may purport to assert any Cause of Action derivatively, by, through or on behalf of the foregoing Persons or Entities, from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown (including whether disclosed, sealed, or hidden or foreseen or unforeseen), existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 48 of 52

collectively) or on behalf of the holder of any Claim or Equity Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the pre- and postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security or Asset of the Debtors, the Sale Transaction, the Purchase Agreement, the business or contractual arrangements between any of the Debtors and any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Plan Support Agreement, the Plan (including any Plan Supplement), the documents and instruments evidencing the Class 1, Class 2, or Class 3 Claims, the Cash Collateral Orders, and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to this Plan, or any other act or omission, in all of the foregoing cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. The Debtors, their Estates, and the Post-Effective Debtors shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Article X.E. against any and each of the Released Parties.

2. <u>Releases Generally</u>. Any release relating to this Plan, whether granted automatically or pursuant to a separate document executed pursuant to this Plan, including the releases described in this **Article X.E.**, shall irrevocably release the applicable released parties from and against any and all Claims, including any and all Claims, action or actions, cause or causes of action (including any relating in any manner to any existing litigation or investigation and including whether asserted or whether it could be asserted in any complaint, petition, counterclaim or other pleading), suits, obligations, defenses, controversies, debts, liens, contracts, agreements, covenants, promises, liabilities, damages, penalties, demands, threats, compensation, losses, costs, judgments, orders, interest, fees or expenses (including attorneys' fees and expenses), or other similar items of any kind, type, nature, character or description, including whether in law, equity, or otherwise, whether now known or unknown, whether in contract or in tort, whether choate or inchoate, whether contingent or vested, whether liquidated or unliquidated, whether fixed or unfixed, whether matured or unmatured, whether suspected or unsuspected, and whether or not disclosed, concealed, sealed, or hidden, of such party or that may be asserted by such party, through such party, or otherwise on such party's behalf (including those that may be asserted on any derivative basis). Without in any manner limiting the generality of the foregoing, in connection with any such release, each releasing party shall expressly, or shall be deemed to have expressly, knowingly

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 47
771115221.3

Exhibit 6 Page 49 of 52

and voluntarily, unconditionally and irrevocably, absolutely, finally, and forever waived in favor of each released party any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common or foreign law, that is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**F.     Exculpation.**

**To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any conduct occurring on or after the Petition Date through and including the Effective Date in connection with or arising out of the filing and administration of the Chapter 11 Cases, the postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security or Asset of the Debtors; the negotiation and pursuit of the Cash Collateral Orders, the Disclosure Statement, the Plan Support Agreement, the Purchase Agreement, the Sale Transaction, including the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation, and consummation thereof, this Plan, or the solicitation of votes for, or confirmation of, this Plan; the funding or consummation of this Plan; the occurrence of the Effective Date; the Cash Collateral Orders; the administration of this Plan or the property to be distributed under this Plan; or the transactions in furtherance of any of the foregoing; except for acts or omissions of an Exculpated Party that constitute gross negligence, fraud, or willful misconduct, as determined by a Final Order.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.  All**

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 50 of 52

**the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

**G.  Retention of Causes of Action/Reservation of Rights.**

On the Effective Date, (i) all Avoidance Actions, and (ii) all Claims and causes of action of the Debtors for relief against any other party other than Avoidance Actions (collectively, the "<u>Causes of Action</u>") shall be deemed to remain, vest in, or be assigned to the Post-Effective Date Debtors, and, subject to the other provisions of this Plan, including this **Article X.G.**, the Post-Effective Date Debtors, as successors, shall be entered to assert all rights with respect thereto. After evaluation of the risks and expense of pursuing such Causes of Action, the Post-Effective Date Debtors, in the exercise of ordinary business judgment, shall investigate, pursue, prosecute and/or settle such Causes of Action; <u>provided, however</u>, that the Post-Effective Date Debtors shall not be entitled to pursue any Avoidance Action against any holder of an Allowed Claim who is not a Debtor Affiliate where the Avoidance Action in any manner whatsoever relates to such Allowed Claim <u>provided further, however</u>, that the Post-Effective Date Debtors shall not be entitled to pursue any Cause of Action against any of the Released Parties.. All Net Proceeds from such Causes of Action, if any, shall be used to fund distributions to Classes 3 and 6. Notwithstanding the foregoing, the Debtors do not believe there exists any Causes of Action.

Except as otherwise provided in this Plan or the Confirmation Order, the Post-Effective Debtors shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced;

**ARTICLE XI.**
**MODIFICATIONS OF THE PLAN**

Pursuant to the provisions of § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserves the right to modify or alter the provisions of the Plan at any time prior to or subsequent to Confirmation.

B<small>USH</small> K<small>ORNFELD</small> LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 49
771115221.3

Exhibit 6 Page 51 of 52

# ARTICLE XII.
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

Notwithstanding Confirmation, until entry of a final decree, the Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Court shall retain jurisdiction for the following purposes:

1. Fixing and allowing any Claim as a cost and expense of the administration of the Bankruptcy Case;

2. Re-examining any Claim that has been allowed;

3. Hearing and determining objections to Claims. The failure of the Debtors to object to, or to examine any Claim for the purpose of voting, shall not be deemed to be a waiver of the Debtors' right to object to, or re-examine any claim in whole or in part;

4. Hearing and determining any action brought by the Post-Effective Date Debtors on behalf of the Estates seeking to avoid any transfer of an interest of the Debtors in property, or any obligation incurred by Debtors, that is avoidable pursuant to applicable law;

5. Hearing and determining all causes of action, controversies, disputes, or conflicts between or among the Debtors, and any other party, including those that were pending prior to Confirmation;

6. Hearing and determining all questions and disputes regarding title to the property of the Estate;

7. Correcting any defect, curing any omission, or reconciling any inconsistency in the Plan, the Confirmation Order, or the Sale Order, as may be necessary to carry out the purpose and intent of the Plan;

8. Issuing any order necessary to implement the Plan, the Confirmation Order, or the Sale Order, including, without limitation, such declaratory and injunctive orders as are appropriate to protect the Debtors, the Estate and the Post-Effective Date Debtors from actions of Creditors, or other parties-in-interest;

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Exhibit 6 Page 52 of 52

9.     Hearing and determining any dispute relating to the terms or implementation of the Plan, the Confirmation Order, or the Sale Order, or to the rights or obligations of any parties-in-interest with respect thereto; and

10.     The modification of the Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code in accordance with Article XI above.

## ARTICLE XIII.
## ENTRY OF CLOSING ORDER BY THE BANKRUPTCY COURT

Subject to the provisions of **Article VII.D.** hereof, the Bankruptcy Court shall enter an order concluding, terminating and closing the Chapter 11 Cases upon application of the Post-Effective Date Debtors.

DATED this 25th day of November, 2024.


_/s/ Michael Christ_
Michael Christ

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

DEBTOR'S FIRST AMENDED JOINT PLAN OF REORGANIZATION – Page - 51
771115221.3