Jeremy E. Roller, WSBA No. 32021
ARETE LAW GROUP PLLC
600 University Street, Suite 2420
Seattle, WA 98101
Phone: (206) 428-3250
Fax: (206) 428-3251
jroller@aretelaw.com

Matthew Sava, Esq.**
Matthew J. Livingston, Esq.*
Reid & Wise LLC
One Penn Plaza, Suite 2015
New York, NY 10119
Phone: (212) 858-9982
msava@reidwise.com
mlivingston@reidwise.com
** *Pro Hac Vice* Application
*Forthcoming*
*Admitted Pro Hac Vice*

*Attorneys for EB-5 Plaintiffs*

HON. FREDERICK P. CORBIT

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| 1 MIN, LLC; HOTEL AT SOUTHPORT, LLC; and TWELFTH FLOOR, LLC, | Lead Case No. 24-01519 |
| Debtors. | (Jointly Administered) |
| LAN CAI, , et al., | Adversary Case No. 25-80007 |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OPPOSITION TO AP DEFENDANTS' MOTION TO DISMISS THE COMPLAINT** |
| HOTEL AT SOUTHPORT, LLC, et al., LLC, | |
| Defendants. | |

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page i



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................2

FACTUAL BACKGROUND .................................................................12

APPLICABLE STANDARDS ...............................................................19

ARGUMENT .......................................................................................21

I.    Plaintiffs Have Asserted Sufficient Facts to Satisfy Applicable Alter Ego Pleading Requirements ............................21

    A.    Plaintiffs Have Adequately Alleged That the Debtor-Defendants Are Alter Egos of Michael Christ and the EB-5 Lender ............................................................21

    B.    The Mezz Lender Is Getting Exactly the Benefit of Its Bargain and Cannot Plausibly Argue That It Is Prejudiced by The Court Allowing Claims Against Any of the Debtor-Defendants ...............................................26

II.    Plaintiffs Have Adequately Alleged Facts to Plausibly Support Their Fraud Claims ...........................................................29

    A.    Each Debtor Defendants' Role in the Alleged Fraudulent Scheme Has Been Identified .............................29

    B.    Each Element of Washington Common Law Fraud Has Been Alleged ..................................................................31

    C.    Plaintiffs Have Stated a Claim for Securities Fraud under RCW § 21.20.010 .....................................................33

III.    Plaintiffs' Remaining Claims Have Each Been Adequately Pled ......................................................................................34

    A.    Plaintiffs Have Adequately Pled Breach of Fiduciary Duty and Related Aiding and Abetting Breach of Fiduciary Duty Claims ..............................................34

    B.    Plaintiffs Have Adequately Pled Facts to Support a Claim Under the Washington Consumer Protection Act ................................................................36

IV.    The Central Factual Allegations Underlying Plaintiffs' Claims Are Supported by the Factual Record, Not "Flatly Contradicted" As AP Defendants Assert .................................38

V.    Dismissal, If Granted, Should Afford Plaintiffs the Opportunity to Replead ..............................................................39

CONCLUSION ..................................................................................41

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page ii

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

# **TABLE OF AUTHORITIES**

**Cases**

*Adams v. King County*
    164 Wash. 2d 640, 192 P.3d 891 (2008)....................................................35

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ....................................................................... 23, 24

*Axon Solutions, Inc. v. San Diego Data Processing Corp.*
    No. 09 CV 2543 JM (RBB), 2010 WL 1797028 (S.D. Cal., May 4, 2010) .26

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ....................................................................... 23, 24

*Brashkis v. Hyperion Capital Group, LLC*
    No. 3:11–CV–05635 RBL, 2011 WL 6130787 (W.D. Wash., Dec. 8, 2011)
    .................................................................................................................40

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*
    637 F.3d 1047 (9th Cir. 2011)....................................................................24

*Eminence Capital, LLC v. Aspeon, Inc.*
    316 F.3d 1048 (9th Cir. 2003).....................................................................44

*Exxon Mobile Corp. v. Freeman Holdings of Washington, LLC*
    No. CV-09-0390-EFS, 2011 WL 611705 (E.D.Wash., Feb. 10, 2011) ...........10

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*
    719 P.2d 531 (Wash. 1986)..........................................................................42

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*
    105 Wash. 2d 778 (1986).............................................................................41

*Holden v. Hagopian*
    978 F.2d 1115 (9th Cir. 1992)......................................................................23

*In re Brugnara Props VI.*
    606 B.R. 371 (Bankr. N.D. Cal. 2019).........................................................30

*In re Consol. Pioneer Mortg. Entities*
    166 F.3d 342 (9th Cir. 1999)........................................................................23

*In re Daewoo Motor Am., Inc.*
    471 B.R. 721 (C.D. Cal. 2012).....................................................................23

In re GlenArbor Partners, LLC
    582 B.R. 843 (Bankr. E.D. Cal. 2018) ........................................................24

*In re Khachikyan*
    335 B.R. 121 (9th Cir. BAP 2005)...............................................................24



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

*In re Rogstad*
  126 F.3d 1224 (9th Cir. 1997).................................................................. 25, 44

*Lindsay Credit Corp. v. Skarperud*
  33 Wash. App. 766, 770-71 (1983)................................................................10

*Mesler v. Bragg Mgmt. Co.*
  702 P.2d 601 (Cal. 1985)..........................................................................26

*Moss v. U.S. Secret Serv.*
  572 F.3d 962 (9th Cir. 2009).....................................................................24

*Neubronner v. Milken*
  6 F.3d 666 (9th Cir. 1993)........................................................................24

*Perkumpulan Investor Crisis Center Dressel--WBG v. Regal Financial Bancorp, Inc.*
  781 F .Supp. 2d 1098 (W.D.Wash., 2011)........................................................39

*Polaris Indus. Corp. v. Kaplan*
  747 P.2d 884 (Nev. 1987)..........................................................................25

*Robinson v. Conner*
  2010 WL 11565185, at *4 (W.D.Wash., 2010)..................................................42

*SEC v. Hui Feng*
  935 F.3d 721 (9th Cir. 2019).....................................................................38

*Towe Antique Ford Found. v. IRS*
  999 F.2d 1387 (9th Cir. 1993)...................................................................25

*United States ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods.*
  No. 12-cv-602, 2013 U.S. Dist. LEXIS 27913 (S.D. Cal., Feb 28, 2013)....34

*Vess v. Ciba–Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003)...................................................................44

*Yanlu Liu v. Great Ocean Capital Holding, LLC*
  2018 WL 4960231 (Wash. App. Div. 1, 2018)..................................................38

**Statutes**

11 U.S.C. § 1129(b)(2) ...............................................................................32

RCW § 21.20.010. ....................................................................................37

RCW 19.86.020 .......................................................................................40

**Rules**

Fed. R. Bankr. P. 7015...............................................................................44

Fed. R. Civ. P. 9(b) ...................................................................................24



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

1   Plaintiffs Lan Cai, Shujie Chen, Tianran Chen, Weijun Chen, Jie Chu,

2   Zhaojun Cong, He Cui, Jianying Ding, Jichun Du, Qing Du, Jieying Feng,

3   Yupeng Gao, Yiran Han, Jinyang Hu, Naixin Hu, Xiao Huang, Junmei Jin, Xin

4   Meng, Weihong Lu, Yuanyuan Ma, Min Pan, Lei Pei, Hao Qi, Xiao Rong, Juan

5   Shao, Hui Wang, Jingyi Wang, Yuquan Wang, Zidong Wang, Rongrong Wu,

6   Zhaohui Xu, Qi Xu, Jie Yan, Ke Yang, Qin Yang, Hongyun Yu, Shuxian Zeng,

7   Xiaohong Zhang, Ying Zhao, Minbo Zhou, Nan Zhou, Huiqing Zhu, Ziling

8   Zeng, Luyi Zhang, Jundi Liang, Tao Li, Yun Cai, Hongliang Tang, Jie Tang,

9   Wenlung Chen, Shi Zhang, Jun Che, Dahe Zhang, Shan Wan, Xiaohong Sun,

10  Yan Lyu a/k/a Yan Lu, Wenyan Wang, Jialin Tian, Rui Tang, Xinhan Lin, Siyu

11  Liu, Jianying Meng, Phuong Nguyen, Yeqing Pan, Xuerong Qi, Qiang Wang,

12  Junli Wei, Yunfei Wu, Hongying Yu, and Dongli Zhang, (collectively

13  "Plaintiffs," each a "Plaintiff"), by and through undersigned counsel, file this

14  memorandum of law in support of Plaintiffs' Opposition ("Opposition") to the

15  Motion to Dismiss the Complaint ("Motion") filed by debtor-defendants Hotel

16  At Southport, LLC ("Hotel Debtor"), Twelfth Floor, LLC ("Mezz Debtor") and

17  1 Min, LLC, ("EB-5 Debtor" and, collectively with Hotel Debtor and Mezz

18  Debtor, the "Debtor-Defendants," each a "Defendant" and WF CREL 2020

19  Grantor Trust ("WF Trust" or the "Mezz Lender" and, together with the Debtor-

20  Defendants, the "AP Defendants")) and respectfully state as follows:

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 1



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

## **PRELIMINARY STATEMENT**

2      1.      AP Defendants argue that this case presents a "straightforward case

3 of buyer's remorse. . ." Mot. ¶ 1. Nothing could be further from the truth. Rather,

4 Plaintiffs have been the victims of a coordinated effort by the Debtor-

5 Defendants, Michael Christ and the other non-debtor defendants in the State

6 Court Litigation[1] to defraud Plaintiffs and other EB-5 foreign investors in the

7 Project, likely due to the fact that Plaintiffs and other EB-5 investors were

8 viewed as low-cost sources of Project capital more interested in gaining U.S.

9 citizenship than in recovering their investments in the Project.[2] Plaintiffs were

10

11

_____

12 [1] Capitalized terms not otherwise defined shall have the meaning ascribed to

13 such terms in the Complaint.

14 [2] The 9th Circuit has repeatedly rejected arguments that EB-5 investments are

15 not securities even if some investors are primarily motivated by immigration

16 concerns, rather than profit in the investment. *See, e.g.*, *SEC v. Hui Feng*, 935

17 F.3d 721 (9th Cir. 2019) (investments made by EB-5 investors in common

18 enterprises managed by regional center as part of [EB-5] immigrant investor

19 program constituted securities under the Securities Act); *SEC v. Liu*, 754 F.

20 App's 505, 507 (9th Cir. 2018) (rejecting argument that EB-5 investments do



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

promised that their investments—via an EB-5 Loan made to the Hotel Debtor entity—would be secured by the land under the Project and the Hotel Debtors' other valuable Project assets. Instead, the EB-5 Loan was stripped of its valuable collateral by the Hotel Debtor and ultimately subordinated to both a $90 million loan against the Hotel Debtor and a $40 million loan against the Mezzanine Debtor.

2.      Had the representations made by the Debtor-Defendants and Mr. Christ over the course of the financing and development of the Project been accurate, Plaintiffs would have recovered in these Chapter 11 cases along with all other secured creditors of the Hotel Debtor as secured creditors via the EB-5 Loan. But a coordinated and fraudulent effort by the Debtor-Defendants and Mr. Christ to subordinate the EB-5 Loan without Plaintiffs' notice or authorization resulted in the EB-5 Loan being fully subordinated to a total of $130 million of senior debt ($90 million against the Hotel Debtor and $40 million against the Mezz Debtor). This fraud cannot be permitted to be endorsed by this Court and the Motion must be denied to permit Plaintiffs to pursue allowance of their claims against each Debtor-Defendant.

---

not constitute securities where the investors' interest was to obtain visas rather than profits).

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

1   3.   AP Defendants' claim that this is a simple case of "buyer's

2   remorse" may have been plausible if the following risks had been accurately

3   disclosed to Plaintiffs: (i) that the borrower entity under the EB-5 Loan—the

4   Hotel Debtor entity that was disclosed in the business plan as the revenue

5   generating entity—<u>could be replaced *without notice to Plaintiffs* by an entity</u>

6   <u>with no revenue</u> two levels subordinated to the original borrower entity, (ii) that

7   the Project could cost nearly <u>twice as much</u> as initially disclosed (~$134 million

8   vs. ~$250 million), (iii) that the developer entities would be permitted to add up

9   to <u>six times as much senior debt as disclosed</u> ($19 million vs. $130 million), and

10  (iv) that the developer entities could <u>withdraw up to $35 million of their own</u>

11  <u>equity</u> from the Hotel Debtor prior to filing these Chapter 11 cases.

12  4.   But none of the Plaintiffs—nor any rational human being—would

13  have invested in a project in which the costs might balloon 2X, the leverage

14  might balloon 6X, and the developer parties would be able to take the full

15  amount of their investments out and leave the foreign investors holding a

16  worthless loan (against a completely different borrower entity) with no chance

17  of recovery. This is no case of buyer's remorse; this is a case of fraud that must

18  be permitted to be adjudicated on the facts, not dismissed prematurely.

19  5.   The Motion repeatedly fails to treat the factual allegations of the

20  Complaint as true—as they must be treated on a motion to dismiss—and

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 4

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

fundamentally misapplies applicable 9th Circuit law to the facts of this adversary

proceeding. Defendants' misleading arguments are most plainly exemplified by

the fact that AP Defendants appear to claim that Plaintiffs "conjured out of thin

air" a $19 million limitation on the amount of construction loans that would be

permitted to subordinate the EB-5 Loan. Mot. ¶ 98. Even a cursory review of

the offering materials attached to Defendants' own Motion reveals this exact

$19 million amount referenced multiple times in the confidential offering

memorandum used to solicit Plaintiffs' investment in the project.[3] Plaintiffs

have not conjured their claims and supporting evidence "out of thin air" but

have instead asserted compelling claims with particularity relying on undisputed

---

[3] Mot., Ex. 2, p. 106 ("Project Costs and Capitalization" ("Additional funding

for the project is $19 million in traditional construction loan financing (and or

additional investment by Michal Christ and investors."))); *Id.*, p. 122 ("Sources

and Uses of Funds" ("Up to $115.5 million of the Project cost will be funded by

a loan from Southport Hotel Eb-5, LP. Additional funding for the project is $19

million in traditional construction loan financing (and/or additional investment

by Michael Christ and investors). Lending institutions have already indicated

their interest in loaning the additional $19 million necessary to fill the gap left

after Eb-5 investors contribute $115.5 million. . .")).

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 5

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

1  factual evidence currently available to Plaintiffs. Plaintiffs' detailed Complaint

2  far exceeds what is required to survive AP Defendants' Motion.

3        6.    AP Defendants' arguments that Plaintiffs have failed to adequately

4  plead the elements of alter ago liability similarly fail. Plaintiffs have pled a

5  multitude of facts supporting a plausible claim that the corporate form of each

6  Debtor-Defendant in this case was intentionally used to violate or evade a duty

7  and that disregarding the corporate form is necessary and required to prevent

8  unjustified loss to the injured parties. *Lindsay Credit Corp. v. Skarperud*, 33

9  Wash. App. 766, 770-71 (1983). Moreover, the Complaint is replete with facts

10  establishing almost all of the factors courts in the 9th Circuit look to in assessing

11  whether alter ego claims have been sufficiently pled to survive a motion to

12  dismiss. A non-exhaustive list of these factors includes: (1) evidence of

13  commingling of funds, (2) undercapitalization, (3) unauthorized diversion of

14  funds, (4) treatment of corporate assets as the individual's own, and (5) failure

15  to observe corporate formalities. *See Exxon Mobile Corp. v. Freeman Holdings*

16  *of Washington, LLC*, No. CV-09-0390-EFS, 2011 WL 611705, at *3 (E.D.

17  Wash., Feb. 10, 2011) (discussing various factors courts look to in assessing

18  alter ego arguments at motion to dismiss stage and denying motion to dismiss

19  for failure to sufficiently plead alter-ego). As detailed *infra*, facts supporting

20  each of these factors have been sufficiently pled in the Complaint such that the



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

Court should accept the well-pled alter ego allegations and reject AP Defendants' arguments for dismissal on these grounds.

7. Here, Plaintiffs' Complaint states that Mr. Christ, via his control and domination of his alter egos, the Debtor-Defendants, committed fraud on Plaintiffs by taking at least the following specific actions:

- Beginning in November of 2013, disseminating Offering Documents to Plaintiffs with critical material misrepresentations, including, *inter alia*, (i) misrepresenting the identity of the Borrower as the Hotel Debtor (which would be quickly replaced with a completely different, less valuable entity, the EB-5 Debtor); and (ii) misrepresenting the fact that the amount of senior construction loans "is" $19 million and that the project cost "is" $134,571,760, Compl. ¶¶ 32 – 41;

- Instructing that Plaintiffs' investment funds be wired directly to the General Partner's bank accounts in Mr. Christ's name, rather than the Partnership's bank accounts where the funds should have been wired, Compl. ¶ 42;

- Failing for more than 6 years to inform Plaintiffs that their EB-5 Loan had been subordinated not by $19 million as originally disclosed, but by $130 million (including approximately $90

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 7

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

million of senior loans and approximately $40 million of mezzanine loans), until finally disclosing such information in January 2023 when the loans senior to the EB-5 Loan were already in default with an inability to refinance, Compl. ¶¶ 46-47; and

- Withdrawing up to $35.3 million from the project prior to repayment of the EB-5 Loan, Compl. ¶¶ 9, 66, 92, 105.

These specific and detailed factual allegations are sufficient to satisfy the particularity requirements for pleading fraud claims.

8. AP Defendants' arguments that Plaintiffs have failed to plausibly allege the remaining causes of action similarly fail. As noted *supra*, Plaintiffs have plausibly alleged that each Debtor-Defendant is the alter ego of Michael Christ and the General Partner. The General Partner owed and continues to owe fiduciary duties to Plaintiffs as limited partners of the Partnership. Plaintiffs have adequately alleged in the Complaint that each Debtor-Defendant aided and abetted the General Partner in breaching its fiduciary duties to Plaintiffs, specifically by (1) causing the deed of trust securing the EB-5 Loan to be released, thereby removing the collateral promised to Plaintiffs as security for the EB-5 Loan, Compl. ¶¶ 80, 93, (2) withdrawing equity from the project in an amount up to $35.3 million, Compl. ¶ 105, and (3) failing for six years to disclose to Plaintiffs that the EB-5 Loan had been subordinated to a senior loan



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

in the amount of $130 million, Compl. ¶ 107. These factual allegations have been plead with sufficient particularity to satisfy the pleading requirements for breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims as asserted in the Complaint.

9.      Ultimately, the Court should reject the underlying theme of AP Defendants' Motion, that each of the Debtor-Defendants and the Mezz Lender are "innocent" third parties and the only potentially culpable party is non-debtor Michael Christ. Mot. ¶ 13. AP Defendants go so far as to claim that the Debtor-Defendants have "*no* affiliation with the partnership or its Offering," Mot. ¶ 4, a demonstrably untrue assertion given the ownership structure of the Project entities controlled by Michael Christ and the fact that the Hotel Debtor (through Mr. Christ as signatory) signed both the original EB-5 Loan (a loan in which Mr. Christ was signatory for both the original borrower entity and the lender entity) and the subsequent release of the EB-5 Deed of Trust and 2017 Loan Modification and Assignment. The complete control of each of these entities by Mr. Christ is undeniable and AP Defendants should not be permitted to hide behind the fiction that each transaction intended to harm Plaintiffs was an arms-length transaction between unaffiliated entities.

10.      Finally, Defendants' misguided argument that Plaintiffs somehow assumed the risk of the full loss of their investment through the Offering



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

1  Documents must be rejected. Mot. ¶ 3. Here, Plaintiffs were misled and

2  fraudulently induced to invest in the Project from the minute they received the

3  initial Offering Documents. Not only were they led to believe that their

4  investment would be secured by a deed of trust on the land underlying the

5  Project, but they were led to believe that the borrower entity for the EB-5 Loan

6  would be a revenue-generating hotel operating company. Instead, what

7  Plaintiffs got was a quick substitution of their borrower entity with a non-

8  revenue generating entity two levels subordinated to the hotel debtor, a release

9  of the deed of trust securing the EB-5 Loan by the Hotel Debtor, a $30+ million

10 equity withdrawal from the project to increase the leverage, and a 6X increase

11 in the leverage on the project they were told to expect.

12         11.    The Debtor-Defendants similarly should not be permitted to escape

13 liability here simply because the Offering Documents disclosed generally that

14 Plaintiffs could lose their investments in the Project. Plaintiffs assumed the risk

15 that their EB-5 Loan to the Hotel Debtor entity could fail if the Hotel Debtor

16 failed to generate sufficient revenue; they did not assume the risk that their EB-

17 5 Loan would be so critically modified as to be given a completely different

18 borrower entity or that the developer entities, including each of the Debtor-

19 Defendants, would be used as instrumentalities of Mr. Christ to ensure that Mr.

20 Christ, the prior senior lenders and the Mezz Lender would get paid before the

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 10



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

EB-5 Loan received a penny of recovery. Plaintiffs are not arguing that they did not assume the risk that the Project would fail for ordinary economic reasons. But this Project did not fail for ordinary economic reasons; it failed because of purposeful and coordinated financial engineering and fraud orchestrated by Mr. Christ and perpetrated by each of the Debtor-Defendants.

12.     AP Defendants would have this Court believe Plaintiffs should have no recourse other than a state court action against a potentially judgment-proof Mr. Christ. But this cannot be the case; each of the Debtor-Defendants was a critical instrument of Mr. Christ's fraud and potentially the only recoverable assets for Plaintiffs reside with the set-aside funds at the Hotel Debtor entity. But for the undisclosed and unauthorized substitution of the EB-5 Loan borrower entity (replacing Hotel Debtor with EB-5 Debtor 1 Min LLC), Plaintiffs would have recovered in these Chapter 11 cases before the Mezz Debtor and before all other unsecured creditors of the Debtor-Defendants, as they were promised when they invested in the Project. Each of the Debtor-Defendants was intimately involved, through Mr. Christ's control, in perpetrating this fraud and should not be permitted to escape liability as a result of these Chapter 11 cases (also filed at the direction of Mr. Christ). No amount of risk disclosures in the Offering Documents should permit the Debtor-Defendants to escape liability for this coordinated fraudulent conduct.



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

1       13.    The Court should deny the AP Defendants' Motion in its entirety

2   and allow the parties to continue to pursue discovery and proceed to a hearing

3   to adjudicate allowance of Plaintiffs' claims at the currently scheduled June 10,

4   2025 hearing.

5                                        **FACTUAL BACKGROUND**

6       14.    Plaintiffs incorporate by reference the factual history of this matter

7   as set forth in the Complaint.

8       15.    For the convenience of the Court, Plaintiffs summarize the key

9   factual assertions set forth in the Complaint that provide evidentiary support for

10  Plaintiffs' claims in the Complaint as follows:

11        • Plaintiffs are seventy (70) foreign investors who each invested

12           through the USCIS EB-5 Program in a project to develop a 12-

13           story Hyatt Regency Hotel in Renton, Washington (the "Project").

14           Compl. ¶ 5.

15        • State Court Defendant Michael Christ and his directly or indirectly

16           owned development entities acted as the primary developer of the

17           Project when it was solicited to foreign investors including

18           Plaintiffs and through the date of these Chapter 11 cases. At all

19           relevant times, Mr. Christ owned, controlled and managed each of

20           the Debtor-Defendants and, through control of State Court

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

Defendant Seattle Family, LP (the "General Partner"), managed and controlled Southport Hotel EB-5 LP (the "Partnership"), the partnership entity into which each Plaintiff was intended to invest to fund the Project. Compl. ¶ 4.

- The Project was solicited to potential foreign investors, including Plaintiffs, as an EB-5 qualified investment opportunity whereby Plaintiffs and other foreign investors could potentially attain a U.S. green card in exchange for a qualifying investment in the Project, including the creation of at least 10 jobs per investors as required by the EB-5 program. Compl. ¶¶ 2-3.

- Each Plaintiff signed a subscription agreement and partnership agreement, agreeing to invest $500,000 and a $50,000 administrative fee in exchange for a membership interest in the Partnership that would ultimately act as the EB-5 Lender to the Hotel Debtor entity. Compl. ¶ 41.

- At the time each Plaintiff invested, Michael Christ sent instructions to each Plaintiff to directly wire the investment funds to an account in the name of the General Partner entity, Seattle Family LP, with wiring instructions to an account ending in 4066 held in the name of "Seattle Family LP dba Michael Christ." Compl. ¶ 42.

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 13



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

- The Offering Documents represented that the EB-5 Loan would be secured by a deed of trust (the "EB-5 Deed of Trust") on the land owned by Hotel Debtor on which the Project would be constructed. Compl. ¶ 7.

- The Offering Documents also represented that the EB-5 Deed of Trust would only be subordinated to a senior construction loan (or additional equity investment) of no more than $19 million. Compl. ¶ 8. The Offering Documents stated that "Additional funding for the project *is* $19 million in traditional construction loan financing (and/or additional investment by Michael Christ and investors)." (emphasis added) Mot., Ex. 2, p. 122.

- In January of 2017, Michael Christ and the Debtor-Defendants entered into a senior construction loan of $73 million (the "2017 Loan"). Compl. ¶ 53.

- Unbeknownst to Plaintiffs, in connection with entering into the 2017 Loan, Hotel Debtor released the deed of trust securing the EB-5 Loan and caused itself to be replaced as the Borrower entity under the EB-5 Loan, all without Plaintiffs' notice or consent. Critically, this meant that <u>Hotel Debtor was no longer the Borrower under the EB-5 Loan and the Borrower entity was substituted to be</u>

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 14

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

25-80007-FPC   Doc 17   Filed 03/18/25   Entered 03/18/25 15:33:41   Pg 18 of 46

the EB-5 Debtor (1 Min, LLC) pursuant to a Loan Modification and Assumption Agreement, dated as of January 27, 2017. Compl. ¶ 93; Mot. Ex. 6 (Plan) ("EB-5 Loan Agreement" definition). This critical substitution of the EB-5 Loan borrower entity directly contradicted all representations regarding the Borrower, its revenue generating capabilities and the business plan disclosed to Plaintiffs in the Offering Documents. Nowhere in the Offering Documents was it disclosed that the EB-5 Loan borrower entity could be replaced by a less valuable entity, notwithstanding the fact that this was a fundamental component of the Project and Plaintiffs' decision to invest in the Project.

- In December of 2017, the 2017 Loan was refinanced with a larger construction loan in the amount of $80 million (the "2018 Loan"). Compl. ¶ 54. In conjunction with entering into the 2018 Loan, the Mezz Debtor obtained a loan from Argentic Real Estate Investment LLC in the amount of $25,000,000 (the "Original Mezz Loan").

- In November 2019, the 2018 Loan was again refinanced with a $90 million senior loan (the "2019 Loan"). Compl. ¶ 55. Simultaneously, the Mezz Debtor obtained a loan from the original mezzanine lender, AIP US Red Private Real Estate Trust No. 200

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 15

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

25-80007-FPC    Doc 17    Filed 03/18/25    Entered 03/18/25 15:33:41    Pg 19 of 46

in the amount of $40,000,000, which refinanced the Original Mezz Loan (the "Mezz Loan"). Mot. ¶ 31. As a result of the refinancings to enter into the 2019 Loan and the Mezz Loan, the EB-5 Loan was effectively subordinated by $130 million as of 2019.

- At the time that Debtor-Defendants, through the control of Mr. Christ, entered into the 2019 Loan and Mezz Loan, the Hotel had been operating for more than two years, was generating sufficient cash flow to satisfy its existing debt load, and had no construction costs or other financial obligations that would justify the need for the increase in outstanding principal amounts for both the senior loan and Mezz Loan. The 2019 loan refinancings post-dated construction of the hotel by two years and pre-dated the COVID-19 pandemic, so neither construction costs nor a pandemic can be used as plausible justifications for the refinancings. Instead, the refinancings were intended to permit the Debtor-Defendants to cover up the fact that Mr. Christ had withdrawn his equity from the project after subordinating the EB-5 Loan. Each Debtor-Defendant participated in this scheme, the Hotel-Debtor by executing the loan agreements for the 2019 Loan, the Mezz Debtor by executing the loan agreements for the Mezz Loan, and the EB-5 Debtor, by

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 16

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

1  agreeing to further subordinate the EB-5 Loan to a total of at least

2  $130 million of debt.

3  • Michael Christ, via his control of the Debtor-Defendants, is

4  believed to have orchestrated a transfer of funds out of the Hotel

5  Debtor's bank accounts to his personal accounts in an amount up

6  to $35.3 million. Compl. ¶¶ 9, 65. The exact dates and amounts of

7  these transfer(s) are unknown to Plaintiffs but are expected to be

8  ascertainable through discovery.

9  • Plaintiffs were not informed by any developer party, including Mr.

10  Christ or any of the Debtor-Defendants, until 2023 of the fact that

11  $130 million in loans senior to the EB-5 Loan had been added to

12  the Hotel Debtor's balance sheet or that such senior loans would

13  subordinate the EB-5 Loan, even though Mr. Christ and the

14  Debtor-Defendants had begun to add these senior loans in 2017.

15  Compl. ¶ 46.

16  • Plaintiffs were informed in 2023 that the $130 million of additional

17  loan financing senior to the EB-5 Loan was necessary due to

18  "unexpected cost increases" in developing the Project and because

19  Defendants were required to upgrade the original hotel design to

20  satisfy requirements of the Hyatt Regency brand. Compl. ¶ 58.

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 17

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

- Hyatt Regency's own documents indicate that the maximum cost to develop a 500 room Hyatt Regency Hotel as of 2017 should be no more than $144.59 million, yet the 347 room hotel at issue in this case cost approximately $250 million to build. Compl. ¶ 58-62.

- The Hotel Debtor ultimately defaulted on the EB-5 Loan and filed these Chapter 11 cases along with the other two Debtor-Defendants.

16. On September 20, 2024, these Chapter 11 Cases were filed. A joint plan of reorganization (the "Plan") was confirmed on November 27, 2024. The Plan established a reserve amount held at the Hotel Debtor entity for possible satisfaction of Plaintiffs' claims in this adversary proceeding in the amount of $32.45 million. Compl. ¶ 22.

17. Plaintiffs filed a proof of claim in the Chapter 11 Cases on November 4, 2024, which was supplemented to reference this adversary proceeding complaint and to include all Plaintiffs named in the Complaint (the "Proof of Claim").

18. Plaintiffs commenced this Adversary Proceeding on January 31, 2025 by filing a Complaint seeking, *inter alia*, allowance of their Proof of Claim against each Debtor-Defendant. Compl. at 31-32.



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

1    19.    On February 19, 2025, Defendants filed their Motion to Dismiss,

2    arguing that the Complaint fails to state a claim upon which relief can be granted

3    pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this

4    proceeding by Federal Rule of Bankruptcy Procedure 7012.

5                              **APPLICABLE STANDARDS**

6    20.    The Federal Rules of Civil Procedure apply to bankruptcy

7    adversary proceedings through the Bankruptcy Rules of Procedure.

8    Specifically, Bankruptcy Rule 7012 incorporates Civil Rule 12(b)(6) motions to

9    dismiss. *In re Consol. Pioneer Mortg. Entities*, 166 F.3d 342, 344 (9th Cir.

10   1999). Similarly, Bankruptcy Rule 7008 incorporates Civil Rule 8, which

11   governs general pleading standards, and Bankruptcy Rule 7009 incorporates

12   Civil Rule 9, which applies to fraud claims. *In re Daewoo Motor Am., Inc.*, 471

13   B.R. 721, 732 (C.D. Cal. 2012).

14   21.    In evaluating a motion to dismiss under Rule 12(b)(6), the court

15   must accept all well-pleaded factual allegations in the complaint as true and

16   construe them in the light most favorable to the plaintiff. *Bell Atl. Corp. v.*

17   *Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678

18   (2009); *Holden v. Hagopian*, 978 F.2d 1115, 1118 (9th Cir. 1992). The

19   complaint need only contain "a short and plain statement of the claim showing

20   that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and need not contain



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

detailed factual allegations. *Twombly*, 550 U.S. at 555. A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

22.     For fraud claims, Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake," although "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *In re GlenArbor Partners, LLC*, 582 B.R. 843, 857 (Bankr. E.D. Cal. 2018). A pleading "is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Neubronner v. Milken*, 6 F.3d 666, 673 (9th Cir. 1993). The pleading must state "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]." *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)

23.     In the bankruptcy context, the Ninth Circuit has consistently held that creditors need not prove their case at the pleading stage but rather must only provide sufficient notice of the claims against the debtor. *In re Khachikyan*, 335 B.R. 121, 125 (9th Cir. BAP 2005). Moreover, the Ninth Circuit has held that



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

courts should be particularly reluctant to dismiss complaints in the bankruptcy context. *In re Rogstad*, 126 F.3d 1224, 1228 (9th Cir. 1997) (noting the liberal standards for pleading in bankruptcy proceedings).

## ARGUMENT

### I. Plaintiffs Have Asserted Sufficient Facts to Satisfy Applicable Alter Ego Pleading Requirements

#### A. Plaintiffs Have Adequately Alleged That the Debtor-Defendants Are Alter Egos of Michael Christ and the EB-5 Lender

24.     The Ninth Circuit has held that the alter ego doctrine can be applied to pierce the corporate veil in bankruptcy when necessary to prevent fraud or injustice. *Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1390-91 (9th Cir. 1993). To successfully pierce the corporate veil, a plaintiff generally must demonstrate that (i) the corporate form was intentionally used to violate or evade a duty and (ii) the piercing is necessary to prevent unjustified loss to the injured party. *Lindsay Credit Corp. v. Skarperud*, 33 Wash. App. 766, 770-71 (1983).

25.     "Although there is no precise litmus test for determining when there is unity of interest and ownership for purposes of alter-ego liability, the following factors are considered relevant: co-mingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities." *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 887 (Nev. 1987). Because no one

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 21

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

factor is determinative, a court's inquiry is fact-intensive and must rely heavily on the particular circumstances of each case. *See Mesler v. Bragg Mgmt. Co.*, 702 P.2d 601, 606 (Cal. 1985). Allegations of two or three factors have been held sufficient to defeat a 12(b)(6) motion to dismiss. *See e.g., Axon Solutions, Inc. v. San Diego Data Processing Corp.*, No. 09 CV 2543 JM (RBB), 2010 WL 1797028, at *3 (S.D. Cal., May 4, 2010) (denying motion to dismiss alter-ego claim when the plaintiff pled commingling of funds, undercapitalization, and representation by one entity that is liable for the other's debts).

26. There should be no doubt that Plaintiffs have satisfied the two prong test of whether the corporate veil can potentially be pierced or disregarded here. *First*, Plaintiffs have plausibly alleged in multiple instances in the Complaint that the corporate form was intentionally used to violate or evade a duty. *Lindsay Credit Corp.*, 33 Wash. App. 766, 770 (1983). Mr. Christ and the General Partner, through the domination and control of each of the Debtor-Defendants used each of the Debtor-Defendants as an instrumentality to violate their duties to the Plaintiffs, including, *inter alia*, fiduciary duties of loyalty and care. Specifically, the Complaint alleges that Mr. Christ intentionally used the Debtor-Defendants and the General Partner to (1) make material representations to induce Plaintiffs to invest in the Project, (2) conceal his intent to take funds out of the Project and replace the withdrawn funds with loans senior to the EB-



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

5 Loan, (3) misuse Project funds for purposes unrelated to the Project, (4) release the EB-5 Deed of Trust, and (5) violate books and records obligations owned to Plaintiffs. Compl. ¶ 80. *Second*, Plaintiffs have plainly established that piercing the corporate veil is necessary to prevent unjustified loss to the injured party. Without an ability to recover against the Hotel Debtor's assets—the exact assets that were promised to act as collateral for the EB-5 Loan when Plaintiffs invested—Plaintiffs would be potentially left with no recovery and valueless claims against Mr. Christ in state court. Recovering against the Debtor-Defendants is critical because Plaintiffs' investment funds were (mis)used to construct the Project, then Plaintiffs' collateral was removed and Plaintiffs' only source of recovery was a valueless EB-5 Loan against a parent company (1 Min LLC) twice removed from the originally promised source of Plaintiffs' collateral. To endorse this fraudulent activity and permit the Debtor-Defendants to escape liability to Plaintiffs because the Debtor-Defendants unilaterally stripped Plaintiffs' source of collateral and recovery (without consent or authorization) would be a grave injustice for Plaintiffs. This fact pattern demonstrates the exact scenario in which the corporate form <u>must</u> be disregarded to prevent injustice.

27.     With respect to the detailed factors that courts look to in assessing whether there is plausible evidence to support an alter ego theory of liability,


ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

the Complaint pleads factual allegations with particularity to satisfy the factors courts look to in assessing whether alter ego claims have been pled sufficiently to survive a motion to dismiss. *First*, Plaintiffs have pled that Mr. Christ, through various transactions among his directly or indirectly owned Project entities, has left the Debtor-Defendants undercapitalized. This is most plainly evidenced by the fact that the Debtor-Defendants filed for Chapter 11 protection, *prima facie* evidence of undercapitalization, and further evidenced by the fact that Mr. Christ is alleged to have withdrawn funds from one or more of the Debtor-Defendants prior to the Petition Date. Compl. ¶¶ 65-66, 105 ("If the Defendants hadn't taken the $35.3 million funds from the Project, artificially inflated the construction budget, and replaced the withdrawn equity funds with senior loans, they would not have defaulted on the senior loans and would not be at risk of foreclosure."). *Second*, Plaintiffs have plausibly pled that Mr. Christ has commingled funds and failed to treat the General Partner and Partnership as separate corporate entities by diverting Plaintiffs' investment funds immediately to his own bank account at the General Partner entity, rather than the Partnership bank account that was the appropriate entity at which Plaintiffs' investments should have been held prior to the Partnership making the EB-5 Loan to the Hotel Debtor. Compl. ¶¶ 42, 82. Moreover, the fact that the original Borrower under the EB-5 Loan, Hotel Debtor, was replaced with no notice to



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

Plaintiffs by the EB-5 Debtor, 1 Min, LLC, an entity with no revenue generation abilities and wholly reliant on equity distributions from both Hotel Debtor and Mezz Debtor, is itself evidence of disregard of the separateness of corporate entities. *Finally*, Mr. Christ's withdrawal of his equity from the Project companies also qualifies as an "unauthorized diversion of funds" and/or "treatment of corporate assets as the individual's own," two of the other factors that courts look to in assessing whether alter ego claims have been sufficiently pled. Plaintiffs submit that these facts alone are sufficient as a matter of law to overcome AP Defendants' arguments that Plaintiffs have failed to adequately plead their alter ego claims.

28.     Finally, Plaintiffs note that AP Defendants' argument that Plaintiffs have not "explained why they have failed to first litigate their claims against Mr. Christ or the General Partner before invoking the extraordinary remedy of corporate disregard to attempt to hold *unaffiliated* parties liable for his purported torts," Mot. ¶ 61, is a stunning statement given the fact that *Plaintiffs had commenced state court litigation against Michael Christ and the other Non-Debtor parties prior to these Chapter 11 Cases and were only forced to pursue these actions against the Debtor-Defendants in this Court because the Debtor-Defendants chose to file these Chapter 11 cases.* It is nearly incomprehensible that AP Defendants are purportedly claiming ignorance as to

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 25

**ARÊTE LAW GROUP**
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

25-80007-FPC    Doc 17    Filed 03/18/25    Entered 03/18/25 15:33:41    Pg 29 of 46

why Plaintiffs would pursue these claims in this Court against the Debtor-Defendants when AP Defendants are well aware that the only reason these claims are not being pursued against the Debtor-Defendants in state court is because the Debtor-Defendants chose to file these Chapter 11 cases and therefore force Plaintiffs to pursue these claims in this Court. Such arguments should be ignored entirely.

**B.      The Mezz Lender Is Getting Exactly the Benefit of Its Bargain and Cannot Plausibly Argue That It Is Prejudiced by The Court Allowing Claims Against Any of the Debtor-Defendants**

29.      AP Defendants next mistakenly argue that because Plaintiffs assert no claims against Mezz Lender in the Complaint, Mezz Lender is therefore an "innocent third party" that is being prejudiced or harmed by the delay in distribution of the Hotel Debtors' reserve funds. Mot. ¶¶ 63-66. AP Defendants cite 9th Circuit Case law in which some courts have held that reverse veil piercing is not appropriate where "innocent third parties" would be prejudiced. Mot. ¶ 64. Tellingly, however, AP Defendants cite only one bankruptcy case for this proposition, a case in which the bankruptcy court permitted veil piercing under an alter ego theory. *In re Brugnara Props VI.*, 606 B.R. 371 (Bankr. N.D. Cal. 2019). AP Defendants cite no bankruptcy case similar to the present action in which a bankruptcy court rejected or disallowed claims with veil piercing or reverse veil piercing elements because an "innocent" third party creditor would

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 26



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

1    potentially be delayed in receiving payment in the Chapter 11 cases.

2        30.    Plaintiffs submit that AP Defendants' argument that veil piercing

3    claims cannot survive a motion to dismiss if there is an "innocent creditor" can

4    be dismissed outright because AP Defendants' argument relies on a

5    fundamentally flawed interpretation of bankruptcy law. AP Defendants argue

6    that Plaintiffs are *intentionally* harming Mezz Lender by "diverting sales

7    proceeds owed to the Mezz Lender, as secured lender." Mot. ¶ 65. But this

8    argument relies on a fundamental misunderstanding of Chapter 11 law and the

9    facts of this case. Mezz Lender is not "owed" anything by Hotel Debtor, the

10    entity where the $32.45 million disputed claims reserve is held. Mezz Lender,

11    in its distinct role as senior lender to the Hotel Debtor has already been paid in

12    full from the assets of Hotel Debtor. While the Mezz Lender *happens* to have

13    acted as a lender to both the Hotel Debtor and Mezz Debtor, there should be no

14    conflation of these two distinct roles.[4]

15

16    _____
     [4] As noted *supra*, as of the Petition Date, the same entity owned the Senior Loan

17    and the Mezzanine Loan. But this ownership overlap should not be mistaken to

18    permit the Mezz Lender to argue that it is being harmed as a creditor of the Mezz

19    Debtor entity simply because the claims allowance process at the Hotel Debtor

20    entity has not concluded.

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 27

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

25-80007-FPC    Doc 17    Filed 03/18/25    Entered 03/18/25 15:33:41    Pg 31 of 46

31.     Mezz Lender, in its role as <u>mezzanine lender</u> to the Mezz Debtor is only "owed" funds available to the Mezz Debtor entity, if any, <u>after all allowed claims against the Hotel Debtor have been satisfied in full</u>. This fundamental fact is the result of both the organizational structure of the Debtor-Defendants (the Mezz Debtor owns the equity of the Hotel Debtor and therefore any distributions to the Mezz Debtor entity require allowance and distribution or disallowance of all non-equity claims at the Hotel Debtor entity) and the absolute priority rule of the Bankruptcy Code. 11 U.S.C. § 1129(b)(2). Mezz Debtor's argument, taken to its logical conclusion, is essentially that veil piercing (or reverse veil piercing) claims <u>can never</u> be brought in a multi-debtor chapter 11 case because such claims could potentially *delay payment to equity holders or creditors of another debtor* in the same Chapter 11 case. None of the cases cited by AP Defendants regarding the "innocent party" doctrine stand for this proposition, nor is this a plausible application of this doctrine to these Chapter 11 cases.

32.     Mezz Lender agreed to make a loan to the Mezz Debtor, knowing full well that all claims against the Hotel Debtor entity would need to be satisfied before the equity owner of Hotel Debtor (the Mezz Debtor) would receive any distribution that could potentially be applied to satisfy the Mezz Loan. The additional risk that the Mezz Debtor knowingly assumed (and received a higher

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

interest rate for) is *exactly the risk* that the Hotel Debtor would have additional claims or liabilities that would *de facto* subordinate the recovery of the Mezz Lender's mezzanine loan to the Mezz Debtor. The fact that these claims are potentially held by Plaintiffs does not in any way make the Mezz Lender more "innocent" or somehow permit the Mezz Lender to claim that it has not received the benefit of its bargain in making a structurally subordinated loan. Such arguments should be dismissed outright.

33.     This argument is especially ironic given the fact that the EB-5 Loan itself should have been senior to the Mezz Loan at all points in time, but for the unauthorized release of the Deed of Trust and replacement of the Hotel Debtor as Borrower with the EB-5 Debtor. If any party is harmed or prejudiced in this case, it is plainly Plaintiffs, not the Mezzanine Lender who knowingly invested in a subordinate position (and received a higher return on its capital in exchange for this risk).

## II.     Plaintiffs Have Adequately Alleged Facts to Plausibly Support Their Fraud Claims

### A.     Each Debtor Defendants' Role in the Alleged Fraudulent Scheme Has Been Identified

34.     AP Defendants next argue that Plaintiffs have failed to allege facts to plausibly support their fraud claims, asserting that the Complaint lacks individualized factual allegations of fraud. However, as AP Defendants' own



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

Motion admits, 9th Circuit courts have permitted pleadings to survive a motion to dismiss so long as the Complaint identifies the applicable "role of each defendant in the fraudulent scheme." Mot. ¶¶ 72-73 (citing *United States ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods.*, No. 12-cv-602, 2013 U.S. Dist. LEXIS 27913, at *14 (S.D. Cal., Feb 28, 2013).

35. Here, each Debtor-Defendants role in the fraudulent scheme is identified in the Complaint. The Hotel Debtor entity was the original borrower, was disclosed in the Offering Documents as the entity that would be the Borrower for the EB-5 Loan, and caused or permitted itself to release the original deed of trust securing the EB-5 Loan. Compl. ¶ 5 (identifying Hotel Debtor as the original borrower), ¶ 38 ("Among other things, the Plaintiffs were promised that their subscription funds would be loaned to the Borrower [Hotel Debtor] to develop the Project . . .). 1 Min, LLC is disclosed in the Complaint as the 100% owner of Debtor-Defendant Twelfth Floor, LLC. Compl. ¶¶ 13-14. 1 Min, LLC was ultimately replaced as the Borrower under the EB-5 Loan, without any notification, consent or authorization of Plaintiffs. Twelfth Floor, LLC is the Mezzanine Debtor and was created to act as a Mezzanine Debtor, senior to the EB-5 Loan, and therefore further structurally subordinate the potentially recovery for the EB-5 Loan, and therefore, Plaintiffs.

36. In addition, to the degree the Court believes each defendant's role

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 30



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

in the fraudulent scheme must be pled with additional particularity, Plaintiffs will provide such additional particularity as discovery develops via an amended complaint, as discussed *infra*.

**B.** **Each Element of Washington Common Law Fraud Has Been Alleged**

37.     AP Defendants next argue that Plaintiffs have failed to adequately and plausibly allege the elements of fraud under Washington common law. Mot. ¶¶ 75-78. But this is not so. Plaintiffs have plausibly satisfied each of the elements of fraud under Washington state law.

38.     To state a claim for common-law fraud in Washington State, a plaintiff must allege "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff." *Adams v. King County*, 164 Wash. 2d 640, 192 P.3d 891, 902 (2008).

39.     Here, plaintiffs have plausibly satisfied each of these elements through their plain allegations that Debtor-Defendants made materially false representations in the Offering Documents. *See, e.g.,* Compl. ¶¶ 38-41 (summarizing specific representations made in the Offering Documents and

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 31

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

1  stating that Plaintiffs each relied on these representations and invested $550,000

2  each in reliance on these representations).

3      40.    As would subsequently be revealed to Plaintiffs more than six

4  years later, the material representations made in the Offering Documents were

5  false or misleading, including the facts that the EB-5 Loan would be (1) made

6  to the Hotel Debtor as "Borrower;" (2) be secured by a deed of trust on the land

7  owned by Hotel Debtor, and (3) be subordinated to $19 million at most of

8  additional senior loans.

9      41.    These facts alone plausibly satisfy each of the elements of common

10  law fraud under Washington State law. Debtor-Defendants (1) represented an

11  existing fact (the terms of the EB-5 investment, including the purported

12  borrower and capital structure); (2) the facts were material (no investor would

13  invest without knowing these terms); (3) the facts were false (as evidenced by

14  the significant changes to these terms, including replacement of the Borrower

15  entity); (4) the Debtor-Defendants, including Hotel-Debtor, EB-5 Debtor and

16  Mr. Christ knew these facts to be false; (5) the Debtor-Defendants intended for

17  Plaintiffs to act on the false facts to induce Plaintiffs' investments in the Project;

18  (6) Plaintiffs did not and could not have known these material facts were false;

19  (7) Plaintiffs each relied on these representations in making their individual

20  investment decision; (8) Plaintiffs had a right to rely on these material

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 32



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

representations; and (9) Plaintiffs each suffered $550,000 in direct damages as a result of the loss of their investments.

### C. Plaintiffs Have Stated a Claim for Securities Fraud under RCW § 21.20.010

42.     Count IV of the Complaint asserts a cause of action against each of the Debtor-Defendants for violations of Washington State securities laws. Compl. ¶¶ 117-29. RCW 21.20.010. AP Defendants argue that Plaintiffs have failed to plausibly allege the elements of state law securities claims, including that no Debtor-Defendant could have been a "seller of securities" as defined by the Washington Code. Mot. ¶¶ 80-81. AP Defendants are incorrect, as the Complaint satisfies each of the elements required to plausibly assert a Washington state law securities claim.

43.     RCW Section 21.20.010 prohibits any person "in connection with the offer, sale or purchase of any security, directly or indirectly: (1) to employ any device, scheme, or artifice to defraud; (2) to make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they are made, not misleading; or (3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. RCW 21.20.010.

44.     As noted *supra*, FN 2, there is no doubt that EB-5 investments such

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 33

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

as Plaintiffs' investments here, constitute "securities" for purposes of federal and state securities laws. *SEC v. Hui Feng*, 935 F.3d 721 (9th Cir. 2019); *Yanlu Liu v. Great Ocean Capital Holding, LLC*, 2018 WL 4960231 (Wash. App. Div. 1, 2018) (applying Washington State Securities Act to EB-5 investment and rejecting federal securities laws "field preemption" argument).

45.    Here, Plaintiffs have alleged multiple plausible material misrepresentations in the Offering Documents, including the identity of the EB-5 Loan borrower, the amount of additional permitted senior debt, and the potential cost of the Project. These facts are not "vague allegations" as AP Defendants allege, Mot. ¶ 80, but concrete and specific allegations concerning material facts that unequivocally informed Plaintiffs' decisions to invest in the Project. Moreover, insofar as Plaintiffs have plausibly alleged that each Debtor-Defendant is the alter-ego of Mr. Christ and the other non-debtor State Court Defendant entities, Plaintiffs need not allege that each Debtor-Defendant individually directly solicited the sale of such securities.

## III.    Plaintiffs' Remaining Claims Have Each Been Adequately Pled

### A.    Plaintiffs Have Adequately Pled Breach of Fiduciary Duty and Related Aiding and Abetting Breach of Fiduciary Duty Claims

46.    AP Defendants' argument that Plaintiffs have failed to adequately allege breach of fiduciary duty by Debtor-Defendants overlooks Plaintiffs'

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 34

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

plausible allegation that each Debtor-Defendant has acted as the alter-ego of Mr. Christ and the General Partner and therefore can be held liable as an alter ego for Mr. Christ and/or the General Partner, including for such entities' breach of fiduciary duty to Plaintiffs.

47.     Under Ninth Circuit law, to state a claim for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach. *Perkumpulan Investor Crisis Center Dressel--WBG v. Regal Financial Bancorp, Inc.*, 781 F. Supp. 2d 1098, 1114 (W.D. Wash. 2011).

48.     Here, the Complaint plausibly alleges that each Debtor-Defendant, as alter ego of the General Partner and Mr. Christ, owed fiduciary duties to Plaintiffs. Specifically, the Complaint alleges that the Debtor-Defendants owed duty of loyalty and care as promoters of the Project. Compl. ¶¶ 99-101. The Complaint alleges that Debtor-Defendants each breached their fiduciary duties through taking the following acts: (1) withdrawing more than $35 million of equity from the Project, (2) releasing the EB-5 Deed of Trust, and (3) making material misstatements in the Offering Documents regarding the cost of the Project,

49.     Relatedly, Plaintiffs have satisfied the pleading standards in asserting their claims for aiding and abetting a breach of fiduciary duty. The

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 35

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

25-80007-FPC    Doc 17    Filed 03/18/25    Entered 03/18/25 15:33:41    Pg 39 of 46

elements of aiding and abetting a breach of fiduciary duty under Washington law require a showing that the defendant "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other." *Brashkis v. Hyperion Capital Group, LLC,* No. 3:11–CV–05635 RBL, 2011 WL 6130787, at *3 (W.D. Wash., Dec. 8, 2011).

50.     Here, the Complaint alleges that each Debtor-Defendant had full knowledge of the ongoing breaches of fiduciary duty by the General Partner and significantly aided the General Partner in breaching the fiduciary duties. Compl. ¶ 115. Specific examples of this aiding and abetting the breach of fiduciary duty as incorporated by reference, Compl. ¶ 111, include instructing the wiring instructions for Plaintiffs' investment in the Project to be sent directly to the General Partner's bank account, Compl. ¶ 42, and releasing the EB-5 Deed of Trust, directly contradicting the promises made in the Offering Documents. Compl. ¶¶ 38, 80.

**B.     Plaintiffs Have Adequately Pled Facts to Support a Claim Under the Washington Consumer Protection Act**

51.     Plaintiffs have satisfied the elements to plausibly plead a claim under the Washington Consumer Protection Act (the "CPA"). RCW 19.86.020. Claims under the WCPL generally require a plausible showing of five (5) elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

commerce, (3) public interest impact, (4) injury to plaintiffs in their business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*, 105 Wash. 2d 778, 785 (1986).

52.     'AP Defendants' argument that Plaintiffs have failed to "make any specific factual allegations of misconduct" against the Debtor-Defendants is flatly contradicted by the Complaint. Not only does Count VI of the Complaint incorporate by reference all of the factual allegations set forth in the Complaint, Compl. ¶ 134, but Count VI includes specific factual allegations supporting the CPA claim. These include allegations that the Debtor-Defendants made material misrepresentations, concealed their plans to refinance the Project and release the deed of trust securing the EB-5 Loan and thereby directly caused no less than $550,000 in damages to each Plaintiff. Compl. ¶¶ 135-45.

53.     AP Defendants are also incorrect on the law. AP Defendants appear to argue that insofar as Plaintiffs' investments were a "private transaction for accredited investors through the EB-5 Program," that the "public interest" prong of the Washington CPA cannot be met. Mot. ¶ 96. But courts applying the Washington CPA have expressly held that a plaintiff alleges a *per se* effect on the public interest by alleging that a defendant violated a statute which contains a legislative declaration or judicial construction of impact upon the public interest. *Robinson v. Conner*, 2010 WL 11565185, at *4 (W.D. Wash.



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

2010) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 538 (Wash. 1986)). Here, Plaintiffs have plausibly alleged a violation of the Washington State Securities Act, Compl. Count IV, ¶¶ 117-129, an Act which courts have held contains a judicial finding of public interest. *Robinson v. Conner*, 2010 WL 11565185, at *4 (W.D. Wash. 2010). Therefore, the Washington CPA claim cannot be dismissed for failing to satisfy the "public interest impact" element, as AP Defendants argue.

## IV. The Central Factual Allegations Underlying Plaintiffs' Claims Are Supported by the Factual Record, Not "Flatly Contradicted" As AP Defendants Assert

54. AP Defendants go so far as to state that Plaintiffs "fail to identify any specific communication, whether written or oral, in which any Defendant (or even Mr. Christ or the General Partner) claimed that the subordination would be capped at $19 million." Mot. ¶ 12. While Plaintiffs did not use the verbatim term "cap" or "capped" in the Complaint, paragraph 39 of the Complaint cites written statements in the Offering Documents, including the statement that "[a]dditional funding for the project is $19 million in traditional construction loan financing [] and/or additional investment by Michael Christ and investors." Compl. ¶ 39 (emphasis added). This specific citation to specific disclosures in the Offering Documents is more than enough particularity to satisfy the pleading standards required to survive a motion to dismiss and flatly contradicts AP



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

1   Defendants' assertion that Plaintiffs have failed to identify specific written

2   references to the $19 million amount.

3        55.    Assuming *arguendo* that the Court accepts AP Defendants'

4   argument that the Offering Document language does not provide an express cap

5   or limit of $19 million on additional senior loans (notwithstanding the fact that

6   the Offering Documents stated that "[a]dditional funding for the project is $19

7   million . . .), Plaintiffs' assertions that they were lead to believe that $19 million

8   was the maximum amount of additional debt that would potentially

9   subordinated the EB-5 Loan by the Offering Documents and other

10  communications from Mr. Christ, the State Court Defendants and the Debtor-

11  Defendants is clearly a factual issue that must be tested through discovery.

12  Dismissing any cause of action because the language regarding the $19 million

13  in senior loans is potentially ambiguous would be inappropriate given the

14  potential additional facts regarding this representation.

15  **V.    Dismissal, If Granted, Should Afford Plaintiffs the Opportunity to Replead**

16       56.    If the Court were to conclude that Plaintiffs' claims were

17  insufficiently pled, Plaintiffs respectfully request that any dismissal be without

18  prejudice and that they be afforded an opportunity to replead. "Even if the

19  pleadings were in some respects deficient, Rule 15(a) (applicable to adversary

20  proceedings, Bankruptcy Rule 7015) provides that 'leave [to amend pleadings]

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 39



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

shall be freely given when justice so requires.'" *In re Rogstad*, 126 F.3d 1224, 1228 (9th Cir. 1997) (citing Fed. R. Bankr. P. 7015). This policy is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003); *see also Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1107 (9th Cir. 2003) (dismissals under Rule 9(b) are "functional[ly] equivalent" to dismissals under Rule 12(b)(6) and should be without prejudice if defects are curable).

57. Here, discovery in this adversary proceeding is expected to proceed on the Court's prior timeline, with a hearing date to adjudicate allowance of Plaintiffs' claims as asserted in the Complaint tentatively scheduled for June 10, 2025. This timeline evidences no undue delay, bad faith or prejudice to the opposing party. To the contrary, this timeline is approximately one year more expedited than the parallel state court proceeding that Plaintiffs have brought against Michael Christ and the other non-Debtor defendants in the State Court Litigation. Furthermore, and as discussed *supra*, should the court find that Plaintiffs have not pled with sufficient particularity, the ongoing discovery will be critical in providing more particularly to support Plaintiffs' causes of action. As such, Plaintiffs right to amend the Complaint pursuant to Federal Rules of Bankruptcy Procedure 7015 must be preserved.



ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

## CONCLUSION

58.     For the foregoing reasons, Plaintiffs respectfully request that the Court deny the AP Defendants' Motion to Dismiss in its entirety and permit the parties to proceed with discovery and a hearing with the Court in June, 2025.

DATED: March 18, 2025.                    **ARETE LAW GROUP PLLC**

By: */s/ Jeremy E. Roller*
Jeremy E. Roller, WSBA No. 32021
Lisa Herb, WSBA No. 23161
600 University Street, Suite 2420
Seattle, WA 98101
Phone:  (206) 428-3250
Fax:    (206) 428-3251
jroller@aretelaw.com
lherb@aretelaw.com

**REID & WISE LLC**

By: */s/ Matthew Sava*
Matthew Sava (*pro hac vice* application forthcoming)
Matthew Livingston (admitted *pro hac vice*)
One Penn Plaza, Suite 2015
New York, NY 10119
Phone: (212) 858-9968
Fax: (516) 821-8978
msava@reidwise.com
mlivingston@reidwise.com

*Attorneys for Plaintiffs*

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 41

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

*/s/ Janet C. Fischer*
Janet C. Fischer
Paralegal

Plaintiffs' Opposition to AP Defendants' Motion to
Dismiss the Complaint – Page 42

ARÊTE LAW GROUP
600 University St, Suite 2420
Seattle, WA 98101
O: (206) 428-3250

25-80007-FPC    Doc 17    Filed 03/18/25    Entered 03/18/25 15:33:41    Pg 46 of 46