1
2
3
4

5       UNITED STATES BANKRUPTCY COURT

6       EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7  In re | Chapter 11 |
| 8  1 MIN, LLC; HOTEL AT SOUTHPORT, LLC; and TWELFTH FLOOR, LLC, | Lead Case No. 24-01519 |
| 9 | (Jointly Administered) |
| 10      Debtors. | |
| 11 | Adv. Proc. No. 25-80007 |
| 12  LAN CAI, SHUJIE CHEN, TIANRAN CHEN, WEIJUN CHEN, JIE CHU, | **AP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT** |

13      ZHAOJUN CONG, HE CUI, JIANYING
        DING, JICHUN DU, QING DU, JIEYING
14      FENG, YUPENG GAO, YIRAN HAN,
        JINYANG HU, NAIXIN HU, XIAO HUANG,
15      JUNMEI JIN, XIN MENG, WEIHONG LU,
        YUANYUAN MA, MIN PAN, LEI PEI, HAO
16      QI, XIAO RONG, JUAN SHAO, HUI
        WANG, JINGYI WANG, YUQUAN WANG,
17      ZIDONG WANG, RONGRONG WU,
        ZHAOHUI XU, QI XU, JIE YAN, KE
18      YANG, QIN YANG, HONGYUN YU,
        SHUXIAN ZENG, XIAOHONG ZHANG,
19      YING ZHAO, MINBO ZHOU, NAN ZHOU,
        HUIQING ZHU, ZILING ZENG, LUYI
20      ZHANG, JUNDI LIANG, TAO LI, YUN CAI,
        HONGLIANG TANG, JIE TANG,
21      WENLUNG CHEN, SHI ZHANG, JUN CHE,
        DAHE ZHANG, SHAN WAN, XIAOHONG
22
23

SUN, YAN LYU A/K/A YAN LU, WENYAN WANG, JIALIN TIAN, RUI TANG, XINHAN LIN, SIYU LIU, JIANYING MENG, PHUONG NGUYEN, YEQING PAN, XUERONG QI, QIANG WANG, JUNLI WEI, YUNFEI WU, HONGYING YU, DONGLI ZHANG,

Plaintiffs,

v.

HOTEL AT SOUTHPORT, LLC, TWELFTH FLOOR, LLC, 1 MIN, LLC.,

Defendants,

and

WF CREL 2020 GRANTOR TRUST,

Intervenor-Defendant.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT .........................................................................................................5

I.  PLAINTIFFS' FUNDAMENTAL ALTER EGO CLAIM IS INADEQUATELY PLED, IMPLAUSIBLE, AND INEQUITABLE ...........................................................5

    A.  Plaintiffs Have Failed to Adequately and Plausibly Plead an Alter Ego Claim ............5

    B.  Plaintiffs Should Not Be Permitted to Abuse the Alter Ego Doctrine to Prejudice the Rights of the Mezz Lender ......................................................8

II.  THE OFFERING DOCUMENTS EXPRESSLY DISCLOSED THAT THE EB-5 LOAN COULD BE SUBORDINATED WITHOUT LIMIT, PRECLUDING PLAINTIFFS' CLAIMS ........................................................................................11

III.  THE COMPLAINT SHOULD ALSO BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ADEQUATELY AND PLAUSIBLY PLEAD FRAUD OR ANY OTHER TORT .......................................................................................13

IV.  GIVEN THAT THE ADVERSARY COMPLAINT IS EFFECTIVELY THE FIFTH VERSION OF PLAINTIFFS' PLEADING AND ITS DEFECTS CANNOT BE CURED, PERMITTING AN AMENDMENT WOULD BE FUTILE ...................................15

CONCLUSION .......................................................................................................15

AP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT– Page i

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC    Doc 19    Filed 03/24/25    Entered 03/24/25 10:25:51    Pg 3 of 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. Chase Bank NA*,
   2016 WL 1658286 (W.D. Wash. April 26, 2016) ...................................................11

*Butler v. Candlewood Rd. Partners, LLC (In re Raymond)*,
   529 B.R. 455 (Bankr. D. Mass. 2015) ........................................................9

*Cascade Energy & Metals Corp. v. Banks*,
   896 F.2d 1557 (10th Cir. 1990) ..............................................................10

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ..............................................................14

*Coto Settlement v. Eisenberg*,
   593 F. 3d 1031 (9th Cir. 2010) ............................................................11

*Est. of Daily v. Lilipuna Assocs.*, 1996 U.S. App. LEXIS 8391 (9th Cir. 1996)
   (unpublished table decision) ...............................................................10

*Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*,
   2012 U.S. Dist. LEXIS 73286 (E.D. Cal. May 24, 2012).........................................5

*Hamilton v. Hamilton Properties Corp. (In re Hamilton)*,
   186 B.R. 991 (Bankr. D. Colo. 1995) ...............................................5, 8, 10

*HK Int'l Funds Invs. (USA) Ltd., LLC v. Despins (In re Kwok)*,
   663 B.R. 124 (Bankr. D. Conn. 2023) ............................................................8, 9

*Kane v. PaCap Aviation Fin., LLC*,
   2024 U.S. Dist. LEXIS 186679 (D. Haw. May 20, 2024).........................................5

*Larson v. Liberty Mut. Fire Ins. Co.*,
   509 Fed. Appx. 641 (9th Cir. 2013)........................................................15

*Lindsay Credit Corp. v. Skarperud*,
   657 P.2d 804 (Wash. Ct. App.1983)........................................................6

*Martinez v. Pierce Cnty.*,
   2023 WL 6215287 (W.D. Wash. Sept. 25, 2023)................................................15

*Miller Ave. Prof'l & Promotional Servs. v. Brady (In re Enter. Acquisition Partners, Inc.)*, 319 B.R. 626 (B.A.P. 9th Cir. 2004) ...............................................5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

*NLRB v. Greater Kan. City Roofing*,
  2 F.3d 1047 (10th Cir. 1993) ....................................................................8, 9

*Orvold v. Kotelevskiy*,
  2024 Wash. App. LEXIS 426 (Ct. App. Mar. 5, 2024) ................................5

*United States ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods.*,
  2013 WL 774177 (S.D. Cal. Feb. 28, 2013) ...........................................8, 13

*Postal Instant Press, Inc. v. Kaswa Corp.*,
  77 Cal.Rptr.3d 96 (Ct. App. 2008)..............................................................9

*Rafool v. Propack Sys., LLC (In re Fleming Packaging Corp.)*,
  2007 Bankr. LEXIS 1047 (Bankr. C.D. Ill. Mar. 30, 2007) ........................9

*In re Woldeyohannes*,
  665 B.R. 543 (Bankr. D. Conn. 2024) ........................................................9

**Statutes**

Washington Consumer Protection Law ..............................................................14

Washington Partnership Act ..............................................................................7

**Other Authorities**

Federal Rule of Bankruptcy Procedure 7012 ......................................................1

Federal Rule of Civil Procedure 12(b)(6) ..........................................................1

AP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT– Page iii

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Defendants 1 Min, LLC (the "EB-5 Debtor"), Hotel at Southport, LLC (the "Hotel Debtor"),

Twelfth Floor, LLC (the "Mezz Debtor" and, together with the EB-5 Debtor and the Hotel Debtor, the

"Debtor-Defendants"), by and through their undersigned counsel, Bush Kornfield LLP, and WF

CREL 2020 Grantor Trust (the "Mezz Lender" and, together with the Debtor-Defendants, the "AP

Defendants"), by and through its undersigned counsel, Eisenhower Carlson PLLC and Mayer Brown

LLP, respectfully submit this reply memorandum of law in support of their Motion to Dismiss the

Complaint [ECF No. 12] (the "Motion"), pursuant to Federal Rule of Civil Procedure 12(b)(6),

incorporated herein by Federal Rule of Bankruptcy Procedure 7012, and respectfully state as follows:

## **PRELIMINARY STATEMENT**

1.      In their Opposition Brief ("Opp.") [ECF No. 17], Plaintiffs continue to fail to identify

*any* facts that would create a cause of action against any of the Debtor-Defendants. Plaintiffs

mistakenly assert that "[t]he Motion repeatedly fails to treat the factual allegations of the Complaint as

true—as they must be treated on a motion to dismiss—and fundamentally misapplies applicable 9th

Circuit law to the facts of this adversary proceeding." Opp. ¶ 5. However, none of the arguments set

out in the Motion require this Court to make any factual findings (were it even possible, given the

dearth of individualized factual allegations with respect to the Debtor-Defendants). Rather, to dismiss

this adversary proceeding, the Court need only determine that the AP Defendants have established at

least *one* of the following propositions, based solely on the application of Ninth Circuit and

Washington law to the Complaint and the Offering Documents[1] incorporated therein:[2] (1) Plaintiffs'

fundamental alter ego claim is inadequately pled, implausible, or would prejudice the rights of the

---

[1] Capitalized terms used herein but not defined shall have the meaning set forth in the AP Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint (the "Moving Br.") [ECF No. 14].
[2] In adjudicating the Motion, the Court may consider documents referenced in the Complaint and relied on by Plaintiffs. *See* n. 7, *infra*.

AP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT– Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Mezz Lender; (2) Plaintiffs' claims are barred (and rendered implausible) by the Offering Documents; or (3) the boilerplate allegations supporting Plaintiffs' fraud and other tort claims fail to satisfy the federal pleading standards, including the heightened standard for fraud. Rather than rebutting these arguments, the Opposition Brief features critical concessions and omissions that only serve to highlight the defects in the Complaint, warranting the dismissal of this action *with prejudice*.

2.  *First*, the Complaint must be dismissed because the bedrock alter ego claim—upon which all of Plaintiffs' claims rely—is inadequately pled, implausible, and inequitable. Critically, although Plaintiffs allege that they were defrauded by the developer of the Project, Michael Christ, they seek to recover their purported losses not from him, the company in which they invested (the EB-5 Lender), or its General Partner, but from three parties that played *no role* in the Offering (the Debtor-Defendants), based solely on Plaintiffs' bare allegation that the Debtor-Defendants, Mr. Christ, and the General Partner are "alter egos," a patently implausible assertion given that two of the Debtor-Defendants did not even exist at the time of the Offering. Even worse, in flagrant violation of well-settled law, Plaintiffs' tortured, multi-step application of the alter ego doctrine, if countenanced, would divert to them funds that are owed to the Mezz Lender, an innocent third-party creditor that purchased the Mezzanine Loan in 2021, five years after the Offering.[3] Tellingly, Plaintiffs are unable to cite a *single* case in which *any* court permitted a reverse veil-piercing claim that harmed an innocent creditor or shareholder, in stark contrast to the numerous cases prohibiting the practice (*see* Section I(B), *infra*). The reason is self-evident: it would turn the principles of equity on their head to

---

[3] Contrary to Plaintiffs' false claim that the Mezz Lender "knowingly invested in a subordinate position" (Opp. ¶ 33), the Mezz Lender's investment was made in 2021, a full four years after the EB-5 Loan was subordinated to the Mezzanine Loan (Complaint ("Compl.")) ¶ 45 [ECF No. 1]; Opp. ¶ 1).

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1   permit a plaintiff to recover from an innocent third party in place of an alleged tortfeasor, as Plaintiffs

2   seek to do here.

3          3.      *Second*, the Complaint should alternatively be dismissed because the central factual

4   allegation underlying all of Plaintiffs' claims—namely, that the Debtor-Defendants purportedly

5   misrepresented that the EB-5 Loan would only be subordinated to a senior loan of no more than $19

6   million (Compl. ¶ 86)—is flatly contradicted by the Offering Documents, which Plaintiffs admit they

7   reviewed (Compl. ¶¶ 33, 35). Indeed, *within the very first two pages*, the First Amendment to the

8   Private Placement Memorandum ("PPM") disclosed that "This Deed of Trust [securing the EB-5

9   Loan] may be subordinated to a senior construction loan" (Declaration of Jason L. Kirschner Ex. 2 at

10  2, ECF No. 15-2) ("Kirschner Decl."), and the PPM itself disclosed that "Borrower will have the right

11  to incur additional indebtedness that will not be subordinated to the Loan and to which the Loan may

12  be subordinated" (*id*. at 19). In the Opposition Brief, Plaintiffs fail to address these crystal clear,

13  uncapped provisions, let alone explain why they are not controlling. Instead, they solely cite two

14  forward-looking statements in the Offering Documents' Business Plan, which reference an intention

15  to obtain $19 million in construction financing based on a 2013 conceptual estimate. Opp. ¶ 5 n.3.

16  However, neither of these statements discuss the potential subordination of the EB-5 Loan (let alone

17  any cap or limitation on such subordination), and each statement specifically references *potential*

18  *additional investments* beyond the $19 million in construction financing. Accordingly, at best, these

19  statements only further highlighted the risk that additional investments could further subordinate the

20  EB-5 Loan (which, given the significant risk of cost overruns in any large construction project, would

21  have been obvious to any reasonable investor in any event).

22         4.      *Third*, the Opposition Brief fails to resuscitate Plaintiffs' inadequately pled fraud and

23  follow-on tort claims. By restating the same vague and conclusory allegations set out in the

AP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT– Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Complaint, and improperly lumping together the Debtor-Defendants, Michael Christ, and the General Partner, the Opposition Brief confirms that Plaintiffs are unable to allege *any* particularized factual allegations supporting fraud against any Debtor-Defendant. In addition, despite having filed *five* complaints (including the State Court Action) and a 46-page opposition brief, Plaintiffs still find themselves unable to identify (1) *who* purportedly led them to believe that any subordination of the EB-5 Loan would be capped at $19 million; (2) *what* the individual stated; (3) *when* the statement was made, (4) *where* the statement was made; and (5) *how* the statement was communicated. Plaintiffs' stunning admission that they require discovery to answer these questions (Opp. ¶ 55) confirms that no misrepresentation was actually made (and that, at the very least, they have failed to plead fraud with the requisite particularity). Plaintiffs' remaining duplicative claims similarly fail because they are dependent on the deficient fraud claims, lack any individualized factual allegations against any Debtor-Defendants, and fail to state a plausible cause of action against the Debtor-Defendants.

5. *Fourth*, apparently recognizing the deficiencies in their claims, Plaintiffs assert they should have the opportunity to replead their claims in lieu of dismissal with prejudice. However, Plaintiffs cannot remedy the fatal defects in their bedrock fraud and alter ego claims, evade the bar on harming innocent third parties through a veil-piercing claim, or "plead around" the aforementioned disclosures in the Offering Documents. Moreover, including the State Court Action, Plaintiffs have already had *five* opportunities to plead viable claims. Accordingly, a sixth attempt would be utterly futile.

6. As discussed in the Moving Brief, Plaintiffs' specious claims have already caused untold damage to the Debtor-Defendants and their creditors, including by preventing a consensual sale of the Hotel pre-bankruptcy (which would have resulted in a significant payment to Plaintiffs). In addition, the costs of litigating Plaintiffs' claims have drained the limited resources of the Debtor-

AP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT– Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC     Doc 19     Filed 03/24/25     Entered 03/24/25 10:25:51     Pg 9 of 21

Defendants and delayed the disbursement of sale proceeds owed to the Mezz Lender. For the reasons set forth herein and in the Moving Brief, Plaintiffs should not be permitted to hold these sale proceeds hostage any longer; the Complaint should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFFS' FUNDAMENTAL ALTER EGO CLAIM IS INADEQUATELY PLED, IMPLAUSIBLE, AND INEQUITABLE

#### A. Plaintiffs Have Failed to Adequately and Plausibly Plead an Alter Ego Claim

7. In light of the importance of the corporate form to our economic system, "[c]ourts will pierce the corporate veil only in exceptional circumstances." *Orvold v. Kotelevskiy*, 2024 Wash. App. LEXIS 426, at \*9 (Ct. App. Mar. 5, 2024); see also *Miller Ave. Prof'l & Promotional Servs. v. Brady (In re Enter. Acquisition Partners, Inc.)*, 319 B.R. 626, 634 (B.A.P. 9th Cir. 2004) (the corporate form cannot be disregarded absent "rare" and "exceptional circumstances"); *Kane v. PaCap Aviation Fin., LLC*, 2024 U.S. Dist. LEXIS 186679, at \*139 (D. Haw. May 20, 2024) ("courts apply the alter ego doctrine with great caution and reluctance."); *Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, 2012 U.S. Dist. LEXIS 73286, at \*18 (E.D. Cal. May 24, 2012) ("[c]ourts will pierce the corporate veil only in exceptional circumstances"); *Hamilton v. Hamilton Properties Corp. (In re Hamilton)*, 186 B.R. 991, 1000 (Bankr. D. Colo. 1995) (reverse piercing and alter ego doctrines "are equitable remedies which must be sparingly invoked and, as is true of all equitable remedies, only when there is no adequate remedy at law"). Yet before litigating (let alone proving) their claims against Mr. Christ and the General Partner, Plaintiffs seek to hold three parties that had no affiliation with the partnership or its Offering (and by extension, an innocent third-party creditor) liable for Mr. Christ's supposed

AP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT– Page 5

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

misconduct, via a convoluted misapplication of the alter ego doctrine.[4] If the corporate form means anything, Plaintiffs' fundamental alter ego claim must be dismissed.

8.      In the Moving Brief, the AP Defendants demonstrated that the Complaint's boilerplate allegations fall far short of adequately and plausibly pleading that (i) each individual Debtor-Defendant was used intentionally to evade a duty and (ii) disregarding the corporate entity of each individual Debtor-Defendant is necessary to prevent an unjust loss. *Lindsay Credit Corp. v. Skarperud*, 657 P.2d 804, 807 (Wash. Ct. App.1983). Since the Opposition Brief simply repeats these inadequate allegations, it fails to salvage Plaintiffs' alter ego claim.

9.      *First*, Plaintiffs claim that they "have plausibly alleged in multiple instances in the Complaint that the corporate form was intentionally used to violate or evade a duty" (Opp. ¶ 26). But each of the examples of purported misconduct cited in the brief (and the Complaint) improperly lumps together the three Debtor-Defendants, Mr. Christ, and the General Partner without explaining how each *individual* Debtor-Defendant's corporate form was misused. *See, e.g.*, *id.* ("Mr. Christ and the General Partner, through the domination and control of each of the Debtor-Defendants used each of the Debtor-Defendants as an instrumentality to violate their duties to the Plaintiffs"); *id.* ("Mr. Christ intentionally used the Debtor-Defendants and the General Partner to . . . make material representations to induce Plaintiffs to invest in the Project").

10.     Moreover, the examples of purported "misuse" of the corporate form are facially implausible. For instance, Plaintiffs claim that "Mr. Christ intentionally used the Debtor-Defendants and the General Partner to disseminate Offering Documents with critical material representations to

---

[4] Plaintiffs take issue with the AP Defendants' characterization of the Debtor Defendants as having "no affiliation with the partnership or its Offering." Opp. ¶ 9. But it is incontrovertible that the Debtor-Defendants played no role in the Offering and that the entity in which Plaintiffs invested, the EB-5 Lender, neither owns nor is owned by any Debtor-Defendant, directly or indirectly. It is simply a *lender* to the EB-5 Debtor.

AP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT– Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

induce Plaintiffs to invest in the Project" (Opp. ¶¶ 7, 26), even though the Debtor-Defendants were not part of the partnership structure and owed no duty to Plaintiffs, and two such entities (the Hotel Debtor and Mezz Debtor) did not even exist at the time of the Offering (a critical fact which Plaintiffs fail to address in their Opposition Brief).

11.     Plaintiffs also repeatedly state, in conclusory fashion, that veil piercing is warranted because the Debtor-Defendants purportedly "stripped Plaintiffs' source of collateral and recovery (without consent or authorization)." Opp. ¶ 26; *see also id.* at ¶ 2 (EB-5 Loan was purportedly subordinated "without Plaintiffs' notice or authorization"), ¶ 15 (same). However, the Complaint fails to identify any provision in the Offering Documents providing Plaintiffs with the right to "notice or authorization" of subordination. To the contrary, the Offering Documents state the precise opposite: namely, that the EB-5 Loan may be subordinated (without any stated limit) and that the General Partner has the right to encumber or dispose of the Partnership Property *without Plaintiffs' consent*. *See* Kirschner Decl. Ex. 2 at 80 (Partnership Agreement § 7.1) (emphasis added) ("Each General Partner shall possess and enjoy and may exercise all the rights and powers of a general partner as provided under the [Washington Partnership Act], including the full and exclusive power and authority to act for and to bind the Partnership, including the sale, loan, refinance, encumbrance or other disposition of the Partnership Property without the consent of the Limited Partners [*i.e.,* Plaintiffs].").[5]

12.     *Second*, although Plaintiffs assert that they have adequately pled that Mr. Christ dominated each of the Debtor-Defendants, they ignore well-settled law that "[t]he mere fact of sole

---

[5] Since the EB-5 Loan could be subordinated without limit, there was no "abuse" of the corporate form when the Prior Owner was replaced by the EB-5 Debtor as Borrower under the EB-5 Loan Agreement, as Plaintiffs assert. Opp. ¶ 26. Indeed, even if the Prior Owner had remained the Borrower, the General Partner would still have had the unfettered right to subordinate the EB-5 Loan to any new loan.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." *United States ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods.*, 2013 WL 774177, at * 5 (S.D. Cal. Feb. 28, 2013) (quoting *Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004)). Rather, each Debtor-Defendant "is presumed to have an existence separate from its subsidiaries." *Id.* Similarly, although Plaintiffs invoke the Debtor-Defendants' initial undercapitalization as purported evidence of Mr. Christ's alleged misconduct, "the mere fact that a corporation is incapable of paying all its debts is insufficient for a finding of injustice. That condition will exist in virtually all cases in which there is an attempt to pierce the corporate veil." *NLRB v. Greater Kan. City Roofing*, 2 F.3d 1047, 1049 (10th Cir. 1993).

13. *Third*, while Plaintiffs baldly claim in the Opposition Brief that their alter ego claim is "necessary" to prevent an unjust loss, the Complaint does not even attempt to allege the lack of an adequate remedy at law, let alone why they should be permitted to recover against three entities that played no role in the Offering, rather than the alleged tortfeasor. *See, e.g.*, *HK Int'l Funds Invs. (USA) Ltd., LLC v. Despins (In re Kwok)*, 663 B.R. 124, 141 (Bankr. D. Conn. 2023) (courts must consider "the extent to which other claims or remedies are practically available to the creditor at law or in equity to recover the debt"); *Hamilton*, 186 B.R. at 1000 (alter ego doctrine is to be considered "only when there is no adequate remedy at law").[6]

**B.**    **Plaintiffs Should Not Be Permitted to Abuse the Alter Ego Doctrine to Prejudice the Rights of the Mezz Lender**

14. In their Opposition Brief, Plaintiffs belittle the well-settled holding that the alter ego doctrine should not be applied to harm innocent third parties, as if it is a principle that can be

---

[6] Plaintiffs' unsupported assertion that their alter ego claim is "necessary to prevent unjustified loss" is particularly egregious given that, since filing the State Court Action over one year ago, they have apparently failed to pursue discovery in their claims against Mr. Christ and the General Partner.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

discarded on a whim. *See* Opp. ¶ 29. Yet Plaintiffs fail to cite a single case permitting the application of the alter ego doctrine in circumstances where it would harm an innocent creditor or other third party, as is the case here. Moreover, Plaintiffs' assertion that "AP Defendants cite only one bankruptcy case for the proposition" against veil piercing in these circumstances (*id.*) flatly ignores the three other cases cited by the AP Defendants (Moving Br. ¶ 64) as well as the numerous bankruptcy and appellate courts across the country that have issued similar holdings. *See, e.g., NLRB v. Greater Kan. City Roofing*, 2 F.3d 1047, 1053 (10th Cir. 1993) ("[A] necessary element of the [alter ego] theory is that the fraud or inequity sought to be eliminated must be that of the party against whom the doctrine is invoked, and such party must have been an actor in the course of conduct constituting the abuse of corporate privilege--the doctrine cannot be applied to prejudice the rights of an innocent third party."); *Butler v. Candlewood Rd. Partners, LLC (In re Raymond),* 529 B.R. 455, 474 n.19 (Bankr. D. Mass. 2015) (same); *Rafool v. Propack Sys., LLC (In re Fleming Packaging Corp.)*, 2007 Bankr. LEXIS 1047, at *6 (Bankr. C.D. Ill. Mar. 30, 2007) ("The [alter ego] doctrine may not be applied so as to prejudice the rights of an innocent third party who has dealt with the corporation as such, or to inflict an obligation on an innocent corporation."); *see also In re Woldeyohannes,* 665 B.R. 543, 568 (Bankr. D. Conn. 2024) ("the court must consider the impact of reverse piercing on innocent investors and creditors"); *HK Int'l Funds Invs. (USA) Ltd.,* 663 B.R. at 141 (same).

15.     Indeed, courts have particularly stressed the importance of protecting innocent shareholders and creditors in these precise circumstances, where a plaintiff attempts to use reverse veil piercing to hold entirely separate legal entities (and by extension, their shareholders and creditors) liable for the alleged misconduct of one individual owner. *See Postal Instant Press, Inc. v. Kaswa Corp.*, 77 Cal.Rptr.3d 96, 98 (Ct. App. 2008) ("The reasoning of the cases adopting outside reverse

AP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT– Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

piercing of the corporate veil is flawed, and we join other courts declining to accept it . . . . Outside reverse piercing can harm innocent shareholders and corporate creditors, and allow judgment creditors to bypass normal judgment collection procedures."); *Hamilton,* 186 B.R. at 1000 ("The reverse piercing theory is an aberration which, if invoked, would prejudice . . . the rightful creditors of the corporation whose assets are subsumed for the benefit of the creditors of the individual. What of the creditors of [the corporation] who relied on its separate corporate existence in doing business with it?"). As the Tenth Circuit held in a case cited with approval by the Ninth Circuit,

> The reverse-pierce theory presents many problems. It bypasses normal judgment-collection procedures, whereby judgment creditors attach the judgment debtor's shares in the corporation and not the corporation's assets. Moreover, to the extent that the corporation has other non-culpable shareholders, they obviously will be prejudiced if the corporation's assets can be attached directly. In contrast, in ordinary piercing cases, only the assets of the particular shareholder who is determined to be the corporation's alter ego are subject to attachment.

*See Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1577 (10th Cir. 1990) (cited with approval in *Est. of Daily v. Lilipuna Assocs.*, 1996 U.S. App. LEXIS 8391, at *12–13 (9th Cir. 1996) (unpublished table decision)). As in these cases, Plaintiffs' abusive invocation of the alter ego doctrine to harm innocent creditors like the Mezz Lender should not be countenanced.

16.     Lacking any case law endorsing reverse veil piercing in circumstances where it would injure innocent creditors, Plaintiffs instead half-heartedly argue that the Mezz Lender would not be prejudiced by Plaintiffs' alter ego claim because it purportedly "knowingly invested in a subordinate position." Opp. ¶ 33. However, since Plaintiffs concede (as they must) that the EB-5 Loan was subordinated to the Mezzanine Loan in 2017 (Opp. ¶¶1-2), it is indisputable that, since the time of the Mezz Lender's purchase of the Mezzanine Loan in 2021, the Mezz Lender has understood (correctly) that the Mezzanine Loan was senior to the EB-5 Loan. Therefore, any recovery by Plaintiffs against

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

the Hotel Debtor or Mezz Debtor would directly harm the Mezz Lender (and it certainly would not merely "delay" repayment, as Plaintiffs strangely imply) (Opp. ¶ 29). In short, the Mezz Lender can only obtain the benefit of its arm's-length bargain if Plaintiffs' tortured alter ego claim, and the specious causes of action based on it, are dismissed.

## II. THE OFFERING DOCUMENTS EXPRESSLY DISCLOSED THAT THE EB-5 LOAN COULD BE SUBORDINATED WITHOUT LIMIT, PRECLUDING PLAINTIFFS' CLAIMS

17.     In the Moving Brief, the AP Defendants demonstrated that the central factual allegation underlying all of Plaintiffs' claims—namely, that the Debtor-Defendants purportedly misrepresented that the EB-5 Loan would only be subordinated to a senior loan of no more than $19 million (Compl. ¶ 86)—is flatly contradicted by the Offering Documents, which Plaintiffs admit they reviewed (Compl. ¶¶ 33, 35).[7] Specifically, the PPM expressly disclosed that "Borrower will have the right to incur additional indebtedness that will not be subordinated to the Loan and to which the Loan may be subordinated" (Kirschner Decl. Ex. 2 at 19), and the First Amendment to the PPM disclosed that "This Deed of Trust [securing the EB-5 Loan] may be subordinated to a senior construction loan" (*id*. at 2). In addition, as noted previously, the Partnership Agreement authorized the General Partner to encumber or dispose of the Partnership Property without Plaintiffs' consent. Kirschner Decl. Ex. 2 at 80 (Partnership Agreement § 7.1).

---

[7] Pursuant to the doctrine of incorporation, the Court may consider documents relied on by Plaintiffs and referenced in the Complaint. *See Coto Settlement v. Eisenberg*, 593 F. 3d 1031, 1038 (9th Cir. 2010) ("We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance."); *Alexander v. Chase Bank NA*, 2016 WL 1658286 at *2 (W.D. Wash. April 26, 2016) ("The Court may rely on a document to which the complaint refers if the document is central to the party's claim and its authenticity is not in question."). Plaintiffs have not challenged the authenticity of the Offering Documents attached as Exhibit 2 to the Kirschner Declaration; to the contrary, they quote them in the Opposition Brief. *See, e.g.*, Opp. ¶ 5 n.3.

AP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT– Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

18.     In response, Plaintiffs effectively concede that the Offering Documents do not contain any $19 million "cap" on subordination (Opp. ¶ 54) and that they cannot identify with particularity any statement in which any Defendant led them to believe that any such cap existed. These admissions doom their claims.

19.     Instead, in a desperate attempt to manufacture a limitation on the subordination provision, Plaintiffs quote two statements in the Business Plan contained in the Offering Materials that reference an intention to obtain $19 million in construction financing. Opp. ¶ 5 n.3. However, neither of these forward-looking statements, which are based on a 2013 "conceptual estimate" (Kirschner Decl. Ex. 2 at 117), discuss the potential subordination of the EB-5 Loan (let alone any limitation on such subordination), and each statement specifically references potential additional investments beyond the $19 million in construction financing:

- "Additional funding for the project is $19 million in traditional construction loan financing (*and or additional investment by Michael Christ and investors*)" (Kirschner Decl. Ex. 2 at 102, quoted in Opp. ¶ 5 n.3) (emphasis added);

- "Up to $115.5 million of the Project cost will be funded by a loan from Southport Hotel Eb-5, LP. Additional funding for the project is $19 million in traditional construction loan financing (*and/or additional investment by Michael Christ and investors*). Lending institutions have already indicated their interest in loaning the additional $19 million necessary to fill the gap left after Eb-5 investors contribute $115.5 million. *Hotel at Southport, LLC is also actively engaged in seeking out other investors to help supplement funds raised through the Eb-5 program*." (Kirschner Decl. Ex. 2 at 118, quoted in Opp. ¶ 5 n.3) (emphasis added).

20.     Accordingly, if anything, these statements only further emphasized the risk—already repeatedly spelled out in the PPM, but which would have been obvious to any reasonable investor in a

AP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT– Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

large construction project—that further investments could further subordinate the EB-5 Loan. Moreover, these disclosures proved to be prescient: as in many construction projects, the 2013 "conceptual estimate" underestimated the costs of the Project, and additional investments became necessary. Simply put, Plaintiffs' claims are barred by the very documents on which they centrally rely.

## III. THE COMPLAINT SHOULD ALSO BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ADEQUATELY AND PLAUSIBLY PLEAD FRAUD OR ANY OTHER TORT

21.     In the Moving Brief, the AP Defendants demonstrated that the Complaint should also be dismissed because Plaintiffs fail to state a claim for fraud, which is fundamental to their other causes of action. Specifically, the AP Defendants demonstrated that Plaintiffs (1) nearly exclusively refer to all three Debtor-Defendants collectively (just as Plaintiffs did with respect to the seven defendants in the State Court Action), (2) improperly and repeatedly group together the purported conduct of the Debtor-Defendants, Mr. Christ, and the General Partner, and (3) describe the alleged "misrepresentation" in exceedingly vague terms, failing to quote or even cite any specific statement in the Offering Documents that was purportedly fraudulent. Moving Br. § II. In the Opposition Brief, Plaintiffs double down on these defects, repeating the same vague and conclusory allegations that doom the Complaint, and arguing that a high-level recitation of the Debtor-Defendants' organizational structure somehow suffices to allege "the role of each defendant in the fraudulent scheme," as required. *Pecanic*, 2013 WL 774177, at *4. Even if statements in an opposition brief could supplement a Complaint (which they cannot), Plaintiffs' cursory description of the Debtor-Defendants (Opp. ¶ 35) and continued commingling of the conduct of the Debtor-Defendants, Michael Christ, and the General Partner (*see, e.g.*, *id*. at ¶ 7) fails to satisfy the heightened pleading standard for fraud.

AP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT– Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC    Doc 19    Filed 03/24/25    Entered 03/24/25 10:25:51    Pg 18 of 21

22.     In addition, as noted previously, even though the Complaint represents Plaintiffs' *fifth* attempt at pleading viable claims, they still find themselves unable to identify any purported misrepresentation with particularity. Recognizing this deficiency, Plaintiffs protest that their "assertions that they were lead to believe that $19 million was the maximum amount of additional debt that would potentially subordinate[] the EB-5 Loan . . . is clearly a factual issue that must be tested through discovery." Opp. ¶ 55. But that is not the law. Since fraud must be plead with particularity, Plaintiffs must allege "the who, what, when, where, and how that would suggest fraud." *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997). By failing to identify any specific communication or document in which any Debtor-Defendant (or even Mr. Christ) asserted that there was a subordination limit, they have failed to satisfy this heightened standard. And since the Offering Documents contradict Plaintiffs' purported "understanding," they cannot remedy this defect.

23.     Notably, among the critical omissions in the Opposition Brief, Plaintiffs also fail to address the salient fact that the Hotel Debtor and Mezz Debtor did not even exist at the time of the Offering. In light of this inconvenient fact, it is simply not possible (let alone plausible) that each Debtor-Defendant committed common law and securities fraud by "represent[ing] an existing fact" that was "false" at the Offering (Opp. ¶ 41), committed securities fraud by making "material misrepresentations in the Offering Documents" (*id*. ¶ 45), "breached" non-existent "fiduciary duties" by "making material misstatements" at the Offering (*id*. ¶ 48), or violated the Washington Consumer Protection Law by making "material misrepresentations [and] concealing their plans to refinance the Project and release the deed of trust" (*id*. ¶ 52).

24.     Finally, the Moving Brief also demonstrated that Plaintiffs' remaining duplicative claims fail because they are dependent on the deficient fraud claim, lack any individualized factual allegations against any Debtor-Defendants, and fail to state a plausible cause of action. Since the

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Opposition Brief simply restates the boilerplate allegations supporting these claims (*see, e.g.*, Opp. ¶¶ 48, 50, 52), the AP Defendants respectfully refer the Court to Section III of their Moving Brief.

## IV. GIVEN THAT THE ADVERSARY COMPLAINT IS EFFECTIVELY THE FIFTH VERSION OF PLAINTIFFS' PLEADING AND ITS DEFECTS CANNOT BE CURED, PERMITTING AN AMENDMENT WOULD BE FUTILE

25.     Recognizing the deficiencies in their claims, Plaintiffs state multiple times that they should have the opportunity to replead their claims in lieu of dismissal *with prejudice*. *See, e.g.*, Opp. ¶¶ 36, 56-57). However, since the Complaint represents Plaintiffs' *fifth* attempt at pleading viable claims (including the complaints filed in the State Court Action) and they cannot remedy the fatal defects in their foundational fraud and alter ego claims or "plead around" the aforementioned disclosures in the Offering Documents, it would be futile to permit what would essentially be the *sixth* version of the Complaint. *See Larson v. Liberty Mut. Fire Ins. Co.*, 509 Fed. Appx. 641, 642 (9th Cir. 2013) ("The district court did not abuse its discretion in denying [the] motion for leave to file a fourth amended complaint because . . . further leave to amend would have been futile."); *Martinez v. Pierce Cnty.*, 2023 WL 6215287, at *4 (W.D. Wash. Sept. 25, 2023) ("Given plaintiff has been given multiple opportunities to allege facts sufficient to support an equal protection claim and has been unable to do so, the Court finds that leave to further amend her equal protection claim would be futile, and dismisses the claim without leave to amend.").

## CONCLUSION

For the reasons set forth above, the AP Defendants respectfully request that the Court dismiss the Complaint with prejudice, and grant such further relief as the Court deems just and proper.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Dated: March 24, 2025

**BUSH KORNFELD LLP**

By: *James L. Day*
James L. Day, WSBA #20474
Christine M. Tobin-Presser #27628
Jason Wax, WSBA #41944

*Counsel to the Debtors*

**EISENHOWER CARLSON PLLC**

By: *Darren R. Krattli*
Darren R. Krattli, WSBA No. 39128
909 A Street, Suite 600
Tacoma, Washington 98402
Telephone: (253) 572-4500
Facsimile: (253) 272-5732
Email: DKrattli@Eisenhowerlaw.com

-and-

**MAYER BROWN LLP**

Thomas S. Kiriakos
Craig E. Reimer
71 S. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
Email: TKiriakos@mayerbrown.com
         CReimer@mayerbrown.com

-and-

Jason I. Kirschner
Danielle A. Sigal
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: jkirschner@mayerbrown.com
         DSigal@mayerbrown.com

*Counsel to WF CREL 2020 GRANTOR TRUST*

AP DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT– Page 16

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC    Doc 19    Filed 03/24/25    Entered 03/24/25 10:25:51    Pg 21 of 21