James L. Day, WSBA #20474
Christine M. Tobin-Presser, WSBA #27628
Jason Wax, WSBA #41944
BUSH KORNFELD LLP
601 UNION STREET, SUITE 5000
SEATTLE, WA 98101
Tel: (206) 292-2110
Emails: **jday@bskd.com**;
**ctobin@bskd.com**; **jwax@bskd.com**

HONORABLE FREDERICK P. CORBIT

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

In re

1 MIN, LLC; HOTEL AT SOUTHPORT, LLC; and TWELFTH FLOOR, LLC,

Debtors.

Chapter 11

Lead Case No. 24-01519

(Jointly Administered)

LAN CAI, SHUJIE CHEN, TIANRAN CHEN, WEIJUN CHEN, JIE CHU, ZHAOJUN CONG, HE CUI, JIANYING DING, JICHUN DU, QING DU, JIEYING FENG, YUPENG GAO, YIRAN HAN, JINYANG HU, NAIXIN HU, XIAO HUANG, JUNMEI JIN, XIN MENG, WEIHONG LU, YUANYUAN MA, MIN PAN, LEI PEI, HAO QI, XIAO RONG, JUAN SHAO, HUI WANG, JINGYI WANG, YUQUAN WANG, ZIDONG WANG, RONGRONG WU, ZHAOHUI XU, QI XU, JIE YAN, KE YANG, QIN YANG, HONGYUN YU, SHUXIAN ZENG, XIAOHONG ZHANG, YING ZHAO, MINBO ZHOU, NAN ZHOU,

Adv. Proc. No. 25-80007

**AP DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

HUIQING ZHU, ZILING ZENG, LUYI ZHANG, JUNDI LIANG, TAO LI, YUN CAI, HONGLIANG TANG, JIE TANG, WENLUNG CHEN, SHI ZHANG, JUN CHE, DAHE ZHANG, SHAN WAN, XIAOHONG SUN, YAN LYU A/K/A YAN LU, WENYAN WANG, JIALIN TIAN, RUI TANG, XINHAN LIN, SIYU LIU, JIANYING MENG, PHUONG NGUYEN, YEQING PAN, XUERONG QI, QIANG WANG, JUNLI WEI, YUNFEI WU, HONGYING YU, DONGLI ZHANG,

Plaintiffs,

v.

HOTEL AT SOUTHPORT, LLC, TWELFTH FLOOR, LLC, 1 MIN, LLC.,

Defendants,

and

WF CREL 2020 GRANTOR TRUST,

Intervenor-Defendant.

# **TABLE OF CONTENTS**

I.   INTRODUCTION ....................................................................................... 1

II.  BACKGROUND ........................................................................................ 5

III. LEGAL STANDARD ................................................................................. 9

IV.  ARGUMENT............................................................................................ 10

    A.   Plaintiffs' Equity-Based Claims Must Be Subordinated to Actual Creditors' Claims ............................................................................. 10

    B.   Plaintiffs' Alter Ego Claims Further Mandate Subordination ................. 17

V.   CONCLUSION ........................................................................................ 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*,
    260 B.R. 517 (B.A.P. 10th Cir. 2001) ............................................. 14

*Am. Broad. Sys., Inc. v. Nugent (In re Betacom of Phoenix, Inc.)*,
    240 F.3d 823 (9th Cir. 2001) .......................................................... 11

*Associated Oil Co. v. Seiberling Rubber Co.*,
    172 Wash. 204 (1933) .................................................................... 18

*Burns v. Norwesco Marine, Inc.*,
    13 Wash. App. 414 (1975)............................................................... 19

*Chan v. Soc'y Expeditions, Inc.*,
    123 F.3d 1287 (9th Cir. 1997)................................................... 19, 21

*Dickens v. All. Analytical Lab'ys, LLC*,
    127 Wash. App. 433 (2005)............................................................. 20

*EagleBank v. Schwartz*,
    2024 WL 4291390 (D. Colo. Sept. 25, 2024) ...................................... 9

*Falcon Capital Corp. Shareholders v.* Osborne *(In re THC Fin. Corp.)*,
    679 F.2d 784(9th Cir. 1982) ..................................................... 10, 13

*First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc'y*,
    164 F. Supp. 2d 383 (S.D.N.Y. 2001) .............................................. 17

*In re Granite Partners, L.P.*,
    208 B.R. 332 (Bankr. S.D.N.Y. 1997) .............................................. 14

*Hagerstown Block Co. v. Solomon (In re Hagerstown Block Co.)*,
    570 B.R. 494 (Bankr. D. Md. 2017).................................................. 15

*Harrison v. Puga*,
    4 Wash. App. 52 (1971)........................................................... 19, 21

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

*Kelce v. U.S. Fin. Inc. (In re U.S. Fin. Inc.)*,
    648 F.2d 515 (9th Cir. 1980) ...........................................................................11

*Kurtin v. Ehrenberg (In re Elieff)*,
    637 B.R. 612 (B.A.P. 9th Cir. 2022) ...............................................................14

*In re Lehman Bros. Inc.*,
    808 F.3d 942 (2d Cir. 2015) ............................................................................16

*Lindsay Credit Corp. v. Skarperud*,
    33 Wash. App. 766 (1983).................................................................................18

*Liquidating Tr. Comm. of the Del Biaggio Liquidating Tr. v. Freeman (In re Del Biaggio)*,
    834 F.3d 1003 (9th Cir. 2016) ...................................................................12, 13

*In re Marriage of Bernard*,
    165 Wash. 2d 895 (2009) .................................................................................17

*Meisel v. M & N Mod. Hydraulic Press Co.*,
    97 Wash. 2d 403 (1982) ...................................................................................20

*O'Donnell v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props., LLC)*,
    488 B.R. 394 (B.A.P. 9th Cir. 2013), aff'd, 782 F.3d 492 (9th Cir. 2015) ...................................................................................................11, 14

*Point Ruston, LLC v. Pac. Nw. Reg'l Council of the United Bhd. of Carpenters & Joiners of Am.*,
    658 F. Supp. 2d 1266 (W.D. Wash. 2009) .........................................................9

*Racusin v. Am. Wagering, Inc. (In re Am. Wagering, Inc.)*,
    493 F.3d 1067 (9th Cir. 2007) ...................................................................10, 11

*Standard Fire Ins. Co. v. Blakeslee*,
    54 Wash. App. 1 (1989).....................................................................................18

*In re Star Mountain Res., Inc.*,
    2022 WL 2294175 (Bankr. D. Ariz. June 22, 2022) ........................................20

*Templeton v. O'Cheskey (In re Am. Hous. Found).*,
    785 F.3d 143 (5th Cir. 2015) ............................................................................12

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

*In re Touch Am. Holdings, Inc.*,
   381 B.R. 95 (Bankr. D. Del. 2008) ................................................................. 12, 14

*In re Tristar Esperanza Props., LLC*,
   782 F.3d 492 ........................................................................................................ 14

*United States v. Black*,
   725 F. Supp. 2d 1279 (E.D. Wash. 2010) ......................................................... 20

*Williams v. Geico Gen. Ins. Co.*,
   497 F. Supp. 3d 977 (W.D. Wash. 2020) ............................................................ 9

**Statutes**

8 U.S.C. § 1153(b)(5)(D)(ii)(III)(bb) ................................................................. 6, 16

11 U.S.C. § 101(49)(A)(xiii) .................................................................................. 11

11 U.S.C. § 510(b) .......................................................................................... *passim*

ERISA ...................................................................................................................... 12

**Other Authorities**

Fed R. Civ. P. 12(c) ........................................................................................... 9, 17

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Defendants 1 Min, LLC (the "EB-5 Debtor"), Hotel at Southport, LLC (the "Hotel Debtor"), Twelfth Floor, LLC (the "Mezz Debtor" and, together with the EB-5 Debtor and the Hotel Debtor, the "Debtor-Defendants"), by and through their undersigned counsel, Bush Kornfeld LLP, and Intervenor-Defendant WF CREL 2020 Grantor Trust ("WF Trust" or the "Mezz Lender" and, together with the Debtor-Defendants, the "AP Defendants"), by and through its undersigned counsel, Eisenhower Carlson PLLC and Mayer Brown LLP, respectfully submit this memorandum of law in support of their Joint Motion for Partial Judgment on the Pleadings (the "Motion"), pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (made appliable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure), and respectfully state as follows:

## I.      INTRODUCTION

1.      Plaintiffs are not and have never been creditors of any of the Debtor-Defendants. They have never engaged in commercial relationships with any of the Debtor-Defendants. They have not made loans to or other investments in the Debtor-Defendants or provided goods or services to the Debtor-Defendants. Indeed, outside the context of their meritless litigation against the Debtor-Defendants, Plaintiffs have had no interaction with the Debtor-Defendants of any kind or nature whatsoever. Rather, Plaintiffs allege that they are limited partners in non-debtor Southport Hotel EB-5 LP (the "EB-5 Lender" or the "Partnership"), an entity that was established to provide, via a

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC    Doc 54    Filed 05/30/25    Entered 05/30/25 14:05:40    Pg 7 of 29

loan (the "EB-5 Loan"), a portion of the financing for the construction of what became the Hyatt Regency Lake Washington Hotel (the "Hotel") using equity investments allegedly made by Plaintiffs and other foreign nationals pursuant to the EB-5 visa program.

2.    Plaintiffs assert that, when they invested in the EB-5 Lender, they were provided with certain Offering Documents, which, as the record of this proceeding shows, set forth extensive disclosures regarding the purpose of, and risks to, their investments. The terms of the Offering Documents put prospective investors on notice that the cost to develop the Hotel could exceed estimates, and that additional debt senior to the position of the EB-5 Lender (and therefore Plaintiffs) could be incurred to support the Hotel. Moreover, any Plaintiffs that invested in the EB-5 Lender were informed (and, by executing the limited partnership agreements, expressly agreed) that nearly any action—including the disposition or encumbrance of partnership property (including the EB-5 Loan)—could be taken by the general partner of the EB-5 Lender without notice to or the consent of Plaintiffs or any of the other investors in the EB-5 Lender. Importantly, investors in the EB-5 Lender were informed that ***only*** the EB-5 Lender and its general partner were responsible for these disclosures, and agreed that their recourse would be limited to the Partnership itself.

3.    Notwithstanding these extensive disclosures and limitations (which Plaintiffs say they received, had the opportunity to review, and accepted), Plaintiffs

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

asserted fraud and duplicative tort claims against the Debtor-Defendants stemming from the alleged misconduct of the Hotel's developer, Michael Christ, in connection with Plaintiffs' investments in the Partnership. In effect, the Complaint seeks allowance of Plaintiffs' asserted claims as general unsecured claims against the Hotel Debtor.[1]

4.     Since Plaintiffs lack privity with, or any connection to, the Debtor-Defendants, these claims are premised on the unsupportable theory that the Debtor-Defendants, the general partner of the EB-5 Lender, and Michael Christ are each "alter egos" of the others, and should therefore be treated as one and the same. In Plaintiffs' view, these claims entitle them to take priority not only over the Debtor-Defendants' sole remaining senior creditor, WF Trust, but also over the large majority of investors in the EB-5 Lender who wisely refrained from bringing baseless claims against the Debtor-Defendants. These claims—meritless as they are on their face—are entirely foreclosed by the terms of the agreements and related documents governing investors' relationship with the EB-5 Lender, as well as Plaintiffs' own admissions.

5.     But fully resolving this matter does not require wading through thousands of pages of Offering Documents, subscription agreements, deposition transcripts, and financial statements—all of which incontrovertibly show that Plaintiffs are unable to prove any of their fraud or other tort claims against the Debtor-Defendants. Rather, this

---

[1] Although Plaintiffs' claims are technically against the three Debtor-Defendants, claims allowance as to the Mezz Debtor and EB-5 Debtor would be of diminished benefit to Plaintiffs given that such claims would be paid under the plan after WF Trust's allowed secured Mezz Loan claims.

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

proceeding can be rendered moot on straightforward legal grounds. Specifically, because Plaintiffs' claims (even assuming the veracity of their factual allegations) effectively require the "collapse" of Michael Christ, the EB-5 Lender, and the Debtor-Defendants into one entity, they are in substance (if not in form) claims for damages related to Plaintiffs' alleged equity investment in the Hotel, and are therefore subject to mandatory subordination under Section 510(b) of the Bankruptcy Code. Given the limited funds available to satisfy claims against the Debtor-Defendants, even if Plaintiffs prevailed on the merits of their claims (which is implausible, to say the least), the best Plaintiffs could hope for in light of mandatory subordination is a recovery from the EB-5 Lender based on its entitlement to estate assets following the satisfaction of WF Trust's remaining claim—a recovery investors in the EB-5 Lender (allegedly including Plaintiffs) would have received without even filing this proceeding.

6. Plaintiffs' attempt to bootstrap their alleged investment in the Partnership into fraud or duplicative tort claims against the Hotel Debtor—in an effort to get paid ahead of WF Trust's secured claim and the EB-5 Loan—is ultimately a self-defeating and wasteful exercise that serves only to diminish the debtors' estates to the detriment of their actual creditors. By bringing their initial claims in state court, Plaintiffs clouded title to the Hotel and frustrated a consensual out-of-court sale to a third-party buyer. This necessitated the Debtor-Defendants' bankruptcy filings, which ensured that the buyer could purchase the Hotel free and clear of Plaintiffs' spurious claims (and prevented

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

further diminution of value of the Hotel).  But the value of the Debtors' estates continued (and continues) to dwindle through the estates' incurrence of professional fees, including fees to defend against this action, as well as WF Trust's incurrence of professional fees that, as part of WF Trust's secured claim, must be paid ahead of the EB-5 Lender's claims.  In other words, Plaintiffs have only harmed themselves and other investors in the Partnership by pursuing this litigation.  Because Plaintiffs' claims must be subordinated—and for their own benefit—this litigation should go no further.

## II.    BACKGROUND[2]

7.    Debtor-Defendants are three limited liability companies created to facilitate the ownership, financing, and construction of the Hotel, a waterfront hotel located at 1053 Lake Washington Boulevard, North Renton, Washington on the shores of Lake Washington.  (Compl., Dkt. No. 1, ¶¶ 12-14).  Intervenor-Defendant WF Trust held a senior mortgage loan owed by the Hotel Debtor (the "Senior Loan") and a mezzanine loan owed by the Mezz Debtor (the "Mezz Loan"), both of which were acquired by WF Trust from the respective initial lenders several ears after the initial transactions pursuant to which such loans, or their predecessor loans, were made.  (Disclosure Statement, Dkt. No. 15-3, pp. 8-9).  No claims or allegations have been asserted against WF Trust.  (*See*

---

[2] A more comprehensive factual background is set forth in the AP Defendants' memorandum of law in support of their motion to dismiss and the materials submitted therewith.  (Dkt. Nos. 14, 15).  References to filings on the docket in this Adversary Proceeding are in the format "Dkt. No. ##" and references to filings on the docket in the underlying Chapter 11 cases are in the format "Bankr. Dkt. No. ##."

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

*generally* Compl., Dkt. No. 1). The EB-5 Lender holds a loan owed by the EB-5 Debtor (the "EB-5 Loan"), which is the parent of the Mezz Debtor. (Disclosure Statement, Dkt. No. 15-3, pp. 6-7).

8.      Plaintiffs assert that they are 70 of the nearly 200 foreign investors that purchased limited partnership units in the EB-5 Lender through a private placement offering (the "Offering") by making the minimum investment required under the EB-5 Program of $500,000.  (Compl., Dkt No. 1, ¶¶ 2, 35).  The EB-5 Lender is a Washington limited partnership that was formed in 2013 to act as the "regional center" for raising funds for the Hotel, with such funds to be provided by immigrant investors in connection with the EB-5 program, and then aggregated by the EB-5 Lender and loaned to the Prior Owner. (*Id.* ¶ 30; Disclosure Statement, Dkt. No. 15-3, p. 5).  EB-5 investors are ***required*** to make their investments in the form of equity, and not debt, so that they are assuming a sufficient level of risk that their investment in the United States will not be repaid as a means of justifying the significant immigration benefits provided through the EB-5 Program.  *See* 8 U.S.C. § 1153(b)(5)(D)(ii)(III)(bb).  Prior to making their investments in the EB-5 Lender, the EB-5 Lender's investors (allegedly including Plaintiffs) were provided the Offering Documents, which detailed the terms applicable to their investments, including the intended use of funds and the plans for development of the Hotel. (Compl., Dkt. No. 1, ¶ 33).

9.      The Offering Documents contained extensive disclosures concerning the

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

risks assumed by investors (as required by the EB-5 Program), including the risk of complete loss of the investment. (Private Placement Memorandum, Dkt. No. 15-2, p. 5). The Offering Documents also repeatedly stressed that the EB-5 Loan could be subordinated without limitation. (*Id.* pp. 3, 22). Prospective investors were informed that the making of the EB-5 Loan could be made in stages, with as little as $6 million invested or as much as $115.5 million invested. (*Id.* pp. 4, 55). Prospective investors (allegedly including Plaintiffs) were thus informed that additional lending (which could be senior) may be required or, in the alternative, the project could fail due to insufficient funding. (*Id.* pp. 5, 22). Prospective investors were also warned that the initial budget set forth in the PPM may be inadequate to complete construction of the Hotel, and were in fact informed of the first such budget increase in the First Amendment to the PPM, dated November 13, 2014. (*Id.* pp. 3, 44).

10.     Prospective investors were likewise informed of the limited rights and recourse available to them. For example, the PPM stated that **only** the EB-5 Lender and General Partner were responsible for the contents of the Offering Documents. (*Id.* p. 6). Investors in the Partnership agreed under the Partnership Agreement that the General Partner could take nearly any action on behalf of the Partnership without notice to or the consent of the such investors, including encumbering the EB-5 Loan. (Partnership Agreement, Dkt. No. 15-2, pp. 83, 84, 95). Investors also agreed that their sole recourse for their investment would be against the Partnership itself. (*Id.* p. 88). With the full

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

opportunity to review and understand the terms of the Offering Documents, including the extensive disclosures detailed above, each Plaintiff allegedly, "[r]elying on the representations in the Offering Documents," signed the Subscription Agreement and the Partnership Agreement, agreeing to be bound to their respective terms. (Compl., Dkt. No. 1, ¶ 41). The Offering concluded in 2016, having raised $99,500,000 from 199 foreign nationals. (*Id.* ¶ 43).

11. On January 31, 2025, Plaintiffs commenced this Adversary Proceeding by filing their Complaint for Damages and Claim Allowance (the "Complaint") against the Debtor-Defendants, which WF Trust joined as Intervenor-Defendant. (*Id.*; Dkt. No. 11). The Complaint re-asserts claims that were previously asserted in the State Court Action (but directed solely at the Debtor-Defendants and not at Mr. Christ or the General Partner). (*See* Disclosure Statement, Dkt. No. 15-3, p. 10). The six counts in Plaintiffs' complaint assert that Mr. Christ and the General Partner defrauded Plaintiffs and used Debtor-Defendants in a scheme to deprive Plaintiffs of the value of their investments in the EB-5 Lender. The Complaint relies on the theory that Debtor-Defendants are, in fact, alter egos of Mr. Christ and the General Partner as a means to hold the former liable for alleged actions of the latter. The Complaint also alleges that Debtor-Defendants participated in the Offering and misled Plaintiffs into making their investments in the EB-5 Lender, notwithstanding, among other fatal defects, the clear statement in the Offering Documents that only the General Partner and EB-5 Lender were responsible for

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

the Offering.  As of the filing of this Motion, Plaintiffs have not identified any evidence to substantiate their claims.

### III.    <u>LEGAL STANDARD</u>

12.    A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is a mechanism for disposing of claims, or a portion of claims, when it is apparent on the face of the pleadings that there are no material issues of fact and the movant is entitled to judgment as a matter of law.  *Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 982 (W.D. Wash. 2020) (citation omitted).  For purposes of deciding a motion for judgment on the pleadings, allegations in the pleadings are taken as true.  *Id.* (citation omitted).

13.    When deciding a motion for judgment on the pleadings, a court may consider material submitted as part of the complaint without converting the motion into a motion for summary judgment.  *Point Ruston, LLC v. Pac. Nw. Reg'l Council of the United Bhd. of Carpenters & Joiners of Am.*, 658 F. Supp. 2d 1266, 1273 (W.D. Wash. 2009).  The court may likewise consider documents that are not themselves attached to the complaint, so long as their authenticity is not contested and the complaint relies on them.  *Id.* at 1273-74.  Courts may also take judicial notice of matters of public record, including matters appearing on the court's own docket, when deciding a motion for judgment on the pleadings.  *Id.* at 1274; *see EagleBank v. Schwartz*, 2024 WL 4291390, at *1 n.4 (D. Colo. Sept. 25, 2024) (noting that, in deciding a Rule 12(c) motion, court

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC    Doc 54    Filed 05/30/25    Entered 05/30/25 14:05:40    Pg 15 of 29

can take judicial notice of and consider state court records, documents on the court's own docket, and other facts not subject to reasonable dispute).[3]

## IV.   ARGUMENT

### A.   Plaintiffs' Equity-Based Claims Must Be Subordinated to Actual Creditors' Claims

14.    Were the court to accept Plaintiffs' allegations as true for the sake of this motion, Plaintiffs are, for all intents and purposes, no more than indirect equity investors in the EB-5 Debtor.  The claims they have brought against Debtor-Defendants in this proceeding (without giving credence to such claims) assert damages arising from Plaintiffs' purchase of their equity interests in the Partnership, with such damages measured by the actual amount invested by Plaintiffs in the Partnership.  As detailed herein, this renders subordination of such claims mandatory as a matter of law under Section 510(b) of the Bankruptcy Code.

15.    It is a fundamental principle of bankruptcy law, as well as non-bankruptcy corporate law, that creditors of an insolvent corporation (like WF Trust) are to be paid ahead of equityholders (like Plaintiffs).  *Racusin v. Am. Wagering, Inc. (In re Am. Wagering, Inc.)*, 493 F.3d 1067, 1071 (9th Cir. 2007).  This principle is effectuated, among other ways, through the absolute priority rule.  *Falcon Capital Corp. S'holders v. Osborne (In re THC Fin. Corp.)*, 679 F.2d 784, 785 (9th Cir. 1982).  "The absolute

---

[3] To the extent the Court determines that the Motion should be construed as a motion for partial summary judgment, the AP Defendants reserve the right to supplement the factual record accordingly.

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

priority rule is designed to vindicate the reasonable expectations formed by claimants when their investments or loans were made." *Kelce v. U.S. Fin. Inc. (In re U.S. Fin. Inc.)*, 648 F.2d 515, 519 (9th Cir. 1980).

16. Section 510(b) gives further effect to this bedrock principle by preventing end-runs around the absolute priority rule. *O'Donnell v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props., LLC)*, 488 B.R. 394, 403 (B.A.P. 9th Cir. 2013), aff'd, 782 F.3d 492 (9th Cir. 2015) ("Bootstrapping to a higher status in the bankruptcy distribution scheme is blocked by § 510(b)."). Recognizing that equityholders bargained for a markedly different risk profile than lenders or other creditors, Congress enacted Section 510(b) of the Bankruptcy Code, which provides that any claim "for damages arising for the purchase or sale of" a security[4] of the debtor or an affiliate of the debtor "***shall be subordinated*** to all claims or interests that are senior to or equal the claim or interest represented by such security[.]" 11 U.S.C. § 510(b) (emphasis added); *see Am. Broad. Sys., Inc. v. Nugent (In re Betacom of Phoenix, Inc.)*, 240 F.3d 823, 829 (9th Cir. 2001) (discussing policy underlying Section 510(b)). Section 510(b) is interpreted broadly to "effectuate the intent of Congress." *Racusin*, 493 F.3d at 1072.

17. Subordination under Section 510(b) is mandatory regardless of the form in which equityholders' claims are presented, as long as the claims have a "nexus or causal

---

[4] "Security" is defined to include the "interest of a limited partner in a limited partnership[.]" 11 U.S.C. § 101(49)(A)(xiii).

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

relationship" with the purchase or sale of securities. *Id.* A narrower standard would allow parties to recharacterize claims that would otherwise be last-in-line equity claims, in circumvention of the absolute priority rule. *Id.*

18.     Claims involving fraudulent inducement to purchase equity interests are plainly covered by Section 510(b). *See Liquidating Tr. Comm. of the Del Biaggio Liquidating Tr. v. Freeman (In re Del Biaggio)*, 834 F.3d 1003, 1010 (9th Cir. 2016) (noting that courts have ***universally*** held that fraud in the inducement to purchase or sell a security is covered by Section 510(b) (emphasis added)). Counts I, IV, and VI of Plaintiffs' complaint thus easily fall under Section 510(b).

19.     Claims for breach of fiduciary duties can be subject to Section 510(b) as well. For example, the Fifth Circuit has held that such claims had to be subordinated where a limited partner asserted that the debtor breached its fiduciary duties by allowing funds invested in the partnership to be commingled and misappropriated—exactly what Plaintiffs assert here. *Templeton v. O'Cheskey (In re Am. Hous. Found).*, 785 F.3d 143, 155 (5th Cir. 2015)) ("We have little difficulty finding such a nexus between [claimant's] claims and his purchase of the LP interests."); *see also In re Touch Am. Holdings, Inc.*, 381 B.R. 95, 106 (Bankr. D. Del. 2008) (holding that claims for breach of fiduciary duties arising under ERISA were subject to Section 510(b) where "[t]he gist of the ERISA Litigation is to recover damages based upon the lost value of the stock, which are claims…derived from the employees' purchase and ownership of the stock."). Counts II

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

and III of Plaintiffs' complaint—which assert breaches of fiduciary duties and aiding and abetting the same to deprive Plaintiffs of the value of their investment in the Partnership—are thus subject to mandatory subordination as well.

20. Similarly, claims asserting a conspiracy to deprive equityholders of their entitlements are subject to subordination where the claim "is essentially that of defrauded stockholders, not victims of an independent tort." *THC Fin.*, 679 F.2d at 787.[5] In *THC Financial*, claimants, who were equityholders in the debtor's parent corporation, asserted that the debtor and parent fraudulently conspired to transfer assets of other affiliates in a way that prevented claimants from receiving additional equity to which they would have been entitled if certain affiliates' earnings reached a specified threshold. *Id.* at 785. Claimants' myriad theories of recovery were all "based on the same set of operative facts-the scheme by THC and THCF to defraud appellants[.]" *Id.* at 787 n.5. Count V of Plaintiffs' complaint, which claims a civil conspiracy to deprive Plaintiffs of the value of their equity investments, is likewise subject to Section 510(b).

21. Given courts' consistently broad application of Section 510(b), claims asserting conduct subsequent to the purchase or sale of equity, including claims falling

---

[5] The underlying bankruptcy case was filed prior to the enactment of the Bankruptcy Code (including Section 510(b)) and *THC Financial* was decided on equitable rather than statutory grounds. However, the Ninth Circuit noted that Section 510(b) codified the same principle, and *THC Financial* has been cited as authority in interpreting Section 510(b). *THC Financial*, 679 F.2d at 785 n.2; *see In re Del Biaggio*, 834 F.3d at 1011 (citing *THC Financial* and noting that it is "reasonable to assume that in expanding § 510(b)'s reach to include [affiliate stockholder] claims, Congress recognized what our pre-Bankruptcy Code precedent [under *THC Financial*] already had[.]").

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

outside of the agreement to purchase or sell such equity itself, are frequently held to be subject to mandatory subordination. *See THC Financial*, 679 F.2d at 785 (improper transfer of assets after agreement to deliver stock was executed); *Betacom*, 240 F.3d at 830 (breach of merger agreement); *In re Tristar Esperanza Props., LLC*, 782 F.3d 492, 495 (breach of repurchase obligation in operating agreement); *Kurtin v. Ehrenberg (In re Elieff)*, 637 B.R. 612, 619 (B.A.P. 9th Cir. 2022) (breach of payment obligations in settlement agreement); *see also Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*, 260 B.R. 517, 523 (B.A.P. 10th Cir. 2001) (holding that Section 510(b) applies "where the holder of securities alleges post-investment fraud"); *In re Granite Partners, L.P.*, 208 B.R. 332, 344 (Bankr. S.D.N.Y. 1997) (subordinating claims asserting ongoing fraud because, where "wrongful conduct erodes the entity's assets, making it less likely that it will be able to pay creditors and distribute profits to investors… an investor [who] seeks *pari passu* treatment with the other creditors . . . disregards the purposes of section 510(b)").

22.     Tellingly, Plaintiffs' claims assert actual damages only in the amount of their actual investments in the Partnership, further demonstrating that their claims are equity claims subject to Section 510(b). *See Touch Am. Holdings*, 381 B.R. at 106 (holding that claims "to recover damages based upon the lost value of the stock" are subject to Section 510(b)). None of Plaintiffs' claims assert injuries unrelated to their purchase of units in the Partnership. And the accompanying claims for attorney's fees

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC     Doc 54     Filed 05/30/25     Entered 05/30/25 14:05:40     Pg 20 of 29

and costs are likewise well within the scope of Section 510(b). *See Hagerstown Block Co. v. Solomon (In re Hagerstown Block Co.)*, 570 B.R. 494, 500 (Bankr. D. Md. 2017) ("[C]ourts routinely subordinate claims for attorney fees and costs that accompany stock purchase claims under § 510(b).").

23. As Section 510(b) recognizes, the outcome is the same regardless of which entity issued equity to the claimant, and regardless of whether the issuer is a debtor or a non-debtor affiliate. In *THC Financial*, for example, shareholders of the corporate parent, THC, asserted general unsecured claims in the bankruptcy of THC's wholly owned subsidiary, THCF, arguing that THC and THCF conspired in a fraudulent scheme to deprive the shareholders of certain rights to which they were entitled. *THC Fin.*, 679 F.2d at 785. As the Ninth Circuit explained:

> Where a corporation is organized as a single entity, all stockholder claims must be brought directly against the issuer; there are no opportunities to subvert the absolute priority rule. Under a rule that would grant appellants parity with the general creditors of THCF, creditors could find their equity cushion depleted by stockholder claims against subsidiaries of the issuer. We do not believe that the use of separate corporate forms is a valid reason for granting stockholders priority over general creditors.

*Id.* at 787. Thus, it is irrelevant for purposes of the Section 510(b) analysis if Plaintiffs never directly acquired equity in any of the Debtor-Defendants themselves. Plaintiffs' alleged equity investments in the Partnership, Plaintiffs' alter ego theories (discussed *infra* at Section B), and their allegations that Debtor-Defendants "are sellers and solicitors of securities . . . and played a substantial role in persuading Plaintiffs to buy

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 15

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

the security [*i.e.*, the limited partnership units in the Partnership] and successfully solicited the purchase to serve their own financial interests" (Compl. ¶ 126), are sufficient to require subordination under Section 510(b). And the result is that Plaintiffs' position (were they to prevail) would be that of equityholders in the Debtor-Defendants' enterprise as a whole. *See In re Lehman Bros. Inc.*, 808 F.3d 942, 946 (2d Cir. 2015) ("We hold that in the affiliate securities context, 'the claim or interest represented by such security' means a claim or interest ***of the same type as the affiliate security***.") (emphasis added).

24.     Treating Plaintiffs for purposes of Section 510(b) as no better than direct equity-holders in the Debtor-Defendants also comports with the requirements of the EB-5 Program. EB-5 applicants are required to make an investment of "capital," a term that is expressly defined by statute to exclude "capital invested in exchange for a note, bond, convertible debt, obligation, or any other debt arrangement between the alien investor and the new commercial enterprise[.]" 8 U.S.C. § 1153(b)(5)(D)(ii)(III)(bb). The capital must also ultimately be invested in a job-creating entity (even if the form of that investment is a loan from the "regional center" to the job-creating entity). Accordingly, had Plaintiffs themselves made loans to finance the construction of the Hotel, they would have been ineligible for EB-5 status. They likewise would have been ineligible had Plaintiffs invested in a lending institution without a specific job-creating entity being funded.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25.     The factual allegations underlying the above analysis are clear on the face of the Complaint and the documents relied on and referenced by Plaintiffs therein, including the Offering Documents.   And the terms of Plaintiffs' alleged EB-5 investments are plainly set forth in the Offering Documents, the meaning of which may be determined as a matter of law.  *See In re Marriage of Bernard*, 165 Wash. 2d 895, 902 (2009) (interpretation of a contract is a question of law); *see also First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc'y*, 164 F. Supp. 2d 383, 393 (S.D.N.Y. 2001) (interpreting prospectus as a matter of law and noting that terms of prospectus control over alleged contradictory oral representations).  Likewise, the question of whether the claims asserted in the Complaint are of a type subject to mandatory subordination under Section 510(b) is a purely legal issue that can be resolved on a Rule 12(c) motion. Plaintiffs' claims are based on their purported equity investments in the Partnership (which *had* to be equity investments to qualify under the EB-5 Program), requiring subordination as a matter of law.  Accordingly, judgment on this narrow legal issue should be granted in favor of the AP Defendants.

**B.     Plaintiffs' Alter Ego Claims Further Mandate Subordination**

26.     For Plaintiffs to prevail on their substantive claims, they must establish that the Debtor-Defendants, the General Partner, and Mr. Christ are alter egos of each other (which is assumed to be the case for purposes of this Motion, but which in reality is unsubstantiated by Plaintiffs and must fail as a matter of law).  Alter ego remedies, which

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 17

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC    Doc 54    Filed 05/30/25    Entered 05/30/25 14:05:40    Pg 23 of 29

are also characterized as piercing the corporate veil and corporate disregard under Washington law, provide an equitable remedy that is generally available only to a party that has been defrauded or otherwise harmed through abuse of the corporate form. *Lindsay Credit Corp. v. Skarperud*, 33 Wash. App. 766, 770–71 (1983) ("The doctrine of corporate disregard has two prerequisites: (1) The corporate form must be intentionally used to violate or evade a duty; and (2) disregard must be necessary and required to prevent an unjust loss to the injured party.").

27.     Again, ignoring the severe deficiencies in Plaintiffs' logic, the effect of accepting their theories as true is to treat Mr. Christ, the General Partner, and the other three Debtor-Defendants entities as "one and the same." *Standard Fire Ins. Co. v. Blakeslee*, 54 Wash. App. 1, 5-6 (1989) (citing *Pohlman Inv. Co. v. Virginia City Gold Mining Co.*, 184 Wash. 273, 283 (1935) and *Roberts v. Hilton Land Co.*, 45 Wash. 464 (1907)). In other words, for purposes of this proceeding, the Debtor-Defendants, General Partner, and Mr. Christ would be treated as a single entity. *See Associated Oil Co. v. Seiberling Rubber Co.*, 172 Wash. 204, 206 (1933) (affirming trial court ruling that application of corporate disregard had the effect of "entitling the plaintiff to treat the two corporations as one single entity"). Such treatment would eliminate any conceivable doubt as to whether Plaintiffs' equity-based claims would satisfy the statutory requirements of Section 510(b). Thus, and as detailed above, subordination of Plaintiffs' claims to an equity-like position would be mandatory.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

28.      This outcome would also be consistent with the equitable nature of the alter ego doctrine, which is designed to prevent further injustice by being unavailable if innocent third parties (like WF Trust and the non-suing investors in the Partnership) would be adversely affected. *See, e.g.*, *Burns v. Norwesco Marine, Inc.*, 13 Wash. App. 414, 418 (1975) ("There are circumstances, however, in which the corporate form has been so abused that, in order to do justice, the corporate personality will be disregarded ***so long as the rights of innocent third parties are not prejudiced***.") (emphasis added); *Harrison v. Puga*, 4 Wash. App. 52, 63 (1971) ("This rule cannot be applied to the prejudice of innocent third persons."); *see also Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997) (noting that, under federal common law, "[c]orporate separateness is respected unless doing so would work injustice upon an innocent third party.") (citation and internal quotation marks omitted).

29.      Moreover, if the Court were to treat Debtor-Defendants, Mr. Christ, and the General Partner as "one and the same"—in effect, substantively consolidating Mr. Christ and the other four entities for purposes of distributions under the Plan—Plaintiffs' recoveries (whether on account of unsecured fraud claims or equity interests) would still be behind the Mezz Lender's secured claims. As one court has noted, "[a]n alter ego claim has a different effect in the bankruptcy context than in the traditional civil trial setting, where a specific creditor brings a judgment against the alleged alter ego. An alter ego finding in bankruptcy is more similar to substantive consolidation, bringing the assets

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

of the alter ego into the debtor's estate to be shared collectively with the debtor's creditors." *In re Star Mountain Res., Inc.*, 2022 WL 2294175, at *7 n.86 (Bankr. D. Ariz. June 22, 2022). There is no question, and it has been undisputed by Plaintiffs, that WF Trust holds a valid secured claim (*see* Plan, Dkt. No. 15-6, p. 19), while Plaintiffs could obtain no more than a general unsecured claim, even if they fully prevailed in this proceeding. Accordingly, even if Plaintiffs were somehow able to establish their meritless alter ego claim, and even if Section 510(b) did not apply (which it plainly does), Plaintiffs' victory would be a hollow one given WF Trust's superior claim.

30. To be clear, Plaintiffs cannot establish the facts necessary for this court to find that the alter ego/corporate disregard doctrine applies. As Washington courts have repeatedly held, corporate disregard is ***only*** permissible where "the corporate form [was] intentionally used to violate or evade a duty." *Meisel v. M & N Mod. Hydraulic Press Co.*, 97 Wash. 2d 403, 410 (1982) (citing *Morgan v. Burks*, 93 Wash. 2d 580, 585 (1980)); *see also United States v. Black*, 725 F. Supp. 2d 1279, 1290 (E.D. Wash. 2010) (noting that, under Washington's alter ego doctrine, "a corporate entity is disregarded when the corporation has been intentionally used to violate or evade a duty owed to another"); *Dickens v. All. Analytical Lab'ys, LLC*, 127 Wash. App. 433, 440 (2005) (applying same standard where remedy was characterized as "piercing the corporate veil"). Among the numerous weaknesses in Plaintiffs' theory, the use (or misuse) of the corporate form is not what is alleged to have harmed Plaintiffs. And, as noted above,

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

veil piercing is prohibited where doing so would harm innocent third parties like WF Trust and Plaintiffs' non-litigating co-investors in the EB-5 Lender. *See Burns*, 13 Wash. App. at 418 (noting Washington state rule against harming innocent third parties by disregarding corporate separateness); *Harrison*, 4 Wash. App. at 63 (same); *see also Chan*, 123 F.3d at 1294 (same, under federal law). Nevertheless, as noted above, even following the deficient logic of Plaintiffs' own alter ego theories, the very legal determinations they seek would only further require subordination of their claims.

## V.    CONCLUSION

31.    Plaintiffs have presented baseless claims related to their alleged EB-5 investments for the development of the Hotel that they have been unable, and will be unable, to substantiate. These claims are not based on allegations of any actual conduct of the Debtor-Defendants, but instead rely on an alter ego theory to hold the Debtor-Defendants liable for the alleged misconduct of Mr. Christ, the General Partner of the EB-5 Lender, and/or the Partnership itself. As the record makes clear, Plaintiffs' claims are in effect claims for the lost value of their equity investments. Whether due to Plaintiffs' foundational alter ego theory or the alleged structure of the transactions themselves, Plaintiffs' claims are subject to mandatory subordination under Section 510(b) of the Bankruptcy Code, leaving Plaintiffs with no ability to recover from the estates other than through distributions otherwise available to be made on account of the

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 21

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC    Doc 54    Filed 05/30/25    Entered 05/30/25 14:05:40    Pg 27 of 29

EB-5 Loan.[6]

32.     Accordingly, for the foregoing reasons, the AP Defendants respectfully request that this Court enter an order (i) granting partial judgment on the pleadings in favor of the AP Defendants based on the mandatory subordination of Plaintiffs' claims; (ii) directing that the remaining proceeds from the Sale of the Hotel should be distributed first to WF Trust pursuant to the Plan; and (iii) granting such other and further relief as this Court may deem just and proper.


        Dated:          May 30, 2025

                                        **BUSH KORNFELD LLP**

                                        By     */s/ James L. Day*
                                              James L. Day, WSBA #20474
                                              Christine M. Tobin-Presser #27628
                                              Jason Wax, WSBA #41944
                                              *Attorneys for the Debtors*

                                        **EISENHOWER CARLSON PLLC**

                                        By     */s/ Darren R. Krattli*
                                              Darren R. Krattli, WSBA No. 39128
                                              909 A Street, Suite 600
                                              Tacoma, Washington 98402
                                              Telephone: (253) 572-4500
                                              Facsimile: (253) 272-5732
                                              Email: DKrattli@Eisenhowerlaw.com

---

[6]   Were the Court to grant partial judgment on the pleadings in the AP Defendants' favor on the Section 510(b) issue discussed herein, the AP Defendants believe that the litigation would be rendered moot, given that there would be no estate funds available for distribution to Plaintiffs following satisfaction of the Mezz Loan claims and payment of the remaining funds to the EB-5 Lender on account of the EB-5 Loan.

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 22

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

-and-

**MAYER BROWN LLP**

Thomas S. Kiriakos
Craig E. Reimer
71 S. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
Email: TKiriakos@mayerbrown.com
           CReimer@mayerbrown.com

-and-

Jason I. Kirschner
Alina Artunian
Danielle A. Sigal
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Email: JKirschner@mayerbrown.com
           AArtunian@mayerbrown.com
           DSigal@mayerbrown.com

*Counsel to WF CREL 2020 GRANTOR TRUST*

AP DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS —Page 23

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

25-80007-FPC    Doc 54    Filed 05/30/25    Entered 05/30/25 14:05:40    Pg 29 of 29